William A. Hector (SBN 298490)
  Email: wahector@venable.com
VENABLE LLP
101 California St., Suite 3800
San Francisco, CA 94111
415.653.3738
415.653.3755 - Facsimile

VENABLE LLP
Frank C. Cimino, Jr.
  Email: fccimino@Venable.com
Megan S. Woodworth
  Email: mswoodworth@Venable.com
600 Massachusetts Avenue, NW
Washington, DC  20001
202.344.4569
202.344.8300 – Facsimile

VENABLE LLP
Robert E. Bugg
  Email: rebugg@Venable.com
151 West 42nd Street
New York, NY 10036
212.370.6241

Attorneys for Non-Party
WARDELL STEPHEN CURRY II

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATHALONZ, LLC | Case No. 3:23-mc-80324 |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA OF NON-PARTY WARDELL STEPHEN CURRY II** |
| v. | |
| UNDER ARMOUR, INC. | [Filed concurrently with Bugg Declaration ISO Motion to Quash;  Austin Declaration ISO Motion to   Quash; Drew Declaration ISO Motion to  Quash; and [Proposed] Order Re Motion To Quash] |
| Defendant. | |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** as soon as the matter may be heard, at 450 Golden Gate Avenue, San Francisco, CA 94102, Non-Party Wardell Stephen Curry II ("Curry") will and hereby does move the United States District Court for the Northern District of California to quash the Subpoena to Testify at a Deposition and for Production of Documents in a Civil Action (the "Subpoena") served on Curry by Plaintiff Athalonz, LLC ("Athalonz") in the action entitled *Athalonz, LLC v. Under Armour, Inc.*, Case No. 2:23-cv-00193-JRG, pending in the United States District Court for the Eastern District of Texas. Athalonz's Subpoena notices Curry's deposition to occur within the Northern District of California at 100 Marine Pkwy Suite 300, Redwood City, CA 94065. Curry accordingly brings this Motion in the District Court for the Northern District of California pursuant to Federal Rule of Civil Procedure 45(d)(3)(a) directing Curry to file in the district where compliance is required. The courtroom, date, and time for the hearing on this Motion are pending assignment.

This motion is made pursuant to Federal Rules of Civil Procedure 26(c)(1) and 45(d)(3)(A)(iv) on the grounds that the noticed non-party deposition and production of requested documents would be harassing because they seek information and documents that are: (1) irrelevant; (2) not proportional to the needs of the case; and/or (3) more readily and properly obtained directly from a party to the Action, Under Armour, Inc. ("Under Armour"). For instance, the Subpoena seeks all documents relating to non-party Curry's role as President of the Curry Brand at Under Armour, the value and sales of Under Armour's Curry Products as compared to other Under Armour basketball shoes, and the market for basketball shoes in the United States, generally. The requests are not limited to documents related to the allegedly infringing features of the accused products, *i.e.* the shape and materials used in the accused shoe soles. Further, the requests are not limited in time or scope. As such, compliance would be unduly burdensome.

This motion is based on this Notice of Motion; the Memorandum of Points and Authorities; the Declaration of Robert E. Bugg and all exhibits thereto; the Declaration of Ryan

1  Drew; the Declaration of William J. Austin; the complete files and records in this action; any

2  facts of which this Court takes judicial notice; and such further oral and documentary evidence

3  and argument as may be presented prior to and at the hearing on this Motion.

4

5  Dated: December 8, 2023                    VENABLE LLP

6                                            By:    */s/ William A. Hector*
                                                    William A. Hector (SBN 298490)
7                                                   Frank C. Cimino, Jr. (*pro hac forthcoming*)
                                                    Megan S. Woodworth (*pro hac forthcoming*)
8                                                   Robert E. Bugg (*pro hac forthcoming*)

9                                                   Attorneys for Non-Party
10                                                  WARDELL STEPHEN CURRY II

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO QUASH SUBPOENA OF
NON-PARTY WARDELL STEPHEN CURRY II

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ..................................................................................................... 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................................ 3

    A.    The Curry Brand at Under Armour ................................................................ 3

    B.    Procedural History of the Underlying Action ............................................... 3

    C.    Discovery Remains at an Early Stage ............................................................ 4

III. ARGUMENT ........................................................................................................... 5

    A.    Legal Standard ............................................................................................... 5

    B.    Curry Does Not Uniquely Possess Any Relevant Information ........................ 7

    C.    The Subpoena Should be Quashed as It Imposes an Undue Burden
        on Non-Party Curry ..................................................................................... 10

        1.    Sitting for Deposition Would Be Burdensome for
             Curry ........................................................................................... 11

        2.    The Requests for Production of Documents Are
             Overbroad ................................................................................... 11

    D.    The Subpoena Fails to Provide Curry a Reasonable Time to
        Comply ......................................................................................................... 13

IV. CONCLUSION ...................................................................................................... 14

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
   300 F.R.D. 406 (C.D. Cal. 2014) .................................................................................... *passim*

5

*Avaya Inc. v. Pearce*,
   No. 19-cv-00565-SI, 2021 U.S. Dist. LEXIS 56013 (N.D. Cal. Mar. 24, 2021).......6, 7, 10, 11

6

7

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
   34 F.3d 774 (9th Cir. 1994) ..........................................................................................10

8

9

*Free Stream Media*, 2017 WL 6209309,
   No. 17-CV-02107-RS, 2017 WL 6209309, at *4 (N.D. Cal. Dec. 8, 2017)..........................14

10

*Genus Lifesciences Inc. v. Lannett Co.*,
   No. 18-cv-07603-WHO, 2019 U.S. Dist. LEXIS 222550 (N.D. Cal. Dec. 30,
   2019) .......................................................................................................................... *passim*

11

12

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006).....................................................................................5

13

14

*Gordon v. Sonar Capital Mgmt. LLC*,
   No. C 15-80080 LB, 2015 U.S. Dist. LEXIS 32047 (N.D. Cal. Mar. 15, 2015)....................13

15

16

*High Tech Med. Instrumentation, Inc. v. New Image Indus.*,
   161 F.R.D. 86 (N.D. Cal. 1995)......................................................................................11

17

*Kirschner v. Klemons*,
   No. 99 CIV. 4828 (RCC), 2005 WL 1214330 (S.D.N.Y. May 19, 2005) ...............................7

18

19

*Meier v. UHS of Del., Inc.*,
   No. 18-CV-00615, 2021 WL 1226619 (E.D. Tex. Apr. 1, 2021)............................6, 7, 10, 12

20

21

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) ....................................................................................11

22

23

*Natera, Inc. v. Caredx, Inc.*,
   No. 23-MC-80117-LJC, 2023 U.S. Dist. LEXIS 95161
   (N.D. Cal. May 31, 2023) .............................................................................................14

24

25

*Premium Serv. Corp. v. Sperry & Hutchinson Co.*,
   511 F.2d 225 (9th Cir. 1975) ...........................................................................................6

26

*Under Armour, Inc. v. Battle Fashions, Inc.*,
   No. 18-mc-80117-LB, 2018 U.S. Dist. LEXIS 130983 (N.D. Cal. Aug. 3,
   2018) ...................................................................................................................8, 10, 12

27

28

-ii-

*W. Pac. Kraft, Inc. v. Duro Bag Mfg. Co.*,
   No. CV 10-6017 DDP (SS), 2012 U.S. Dist. LEXIS 195292 (C.D. Cal. Aug.
   27, 2012) ...........................................................................................................7

**Statutes**

35 U.S.C. § 271 ....................................................................................................8

35 U.S.C. § 284 ....................................................................................................8

**Court Rules**

Fed. R. Civ. P. 26 .........................................................................................5, 6, 7, 12

Fed. R. Civ. P. 45 .............................................................................................6, 13, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Wardell Stephen Curry II ("Curry") is not a party to this litigation.  While his basketball team, the Golden State Warriors, are in the midst of their 2023-24 NBA season, Curry has been subpoenaed by Athalonz, LLC ("Athalonz"), demanding both documents and deposition testimony in short order, despite Curry's lack of knowledge and information relevant to the case.

The underlying case brought by Athalonz is a patent dispute involving certain Under Armour athletic shoes, including a line of basketball shoes specifically associated with  Curry. The claims and defenses at issue center on Under Armour's alleged infringement of Athalonz's patents—an issue of fact about which Curry can provide no relevant testimony or documents. Rather, the issue of infringement depends on specific design features of the soles of the accused shoes, including whether the soles have specific angular features or materials of differing compressibility in a particular arrangement.  Curry's role as an Under Armour sponsored athlete is entirely unrelated to these issues.

Athalonz has already identified five different Under Armour employees and past employees as witnesses it believes have relevant knowledge relating to the asserted patents and accused products.  Under Armour has also identified several additional employees as likely trial witnesses who have information pertaining to: (1) the design and development of the accused Under Armour Curry products; (2) marketing of the accused Under Armour Curry products; and (3) sales of the accused Under Armour Curry products.  Under Armour has also agreed to produce all design and technical documents for the accused products; all development documents for the accused products; all promotional documents for the accused products; all testing documents for accused products; sales and profit data for accused products; and all documents related to Curry's involvement in the design, development, or testing of the accused features of the accused products.

Athalonz has not, and cannot, establish that Curry's testimony or documents are relevant to this case.  Athalonz simply has no legitimate basis to subpoena Curry.

MOTION TO QUASH SUBPOENA OF
NON-PARTY WARDELL STEPHEN CURRY II

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

1    Courts recognize that discovery on non-parties is circumscribed and will quash discovery

2    that is irrelevant, unreasonable, duplicative, harassing, or that can be obtained from some other

3    source that is more convenient.  The Subpoena should be quashed for each of these reasons.  For

4    example, the Subpoena's document requests encompass broad, sweeping categories of

5    documents that are not limited in time or scope—*e.g.*, Request No. 4 seeks production of every

6    document or communication that relates to Curry's role in marketing, advertising, or promoting

7    Under Armour's Curry products, and Request No. 5 seeks production of every document and

8    communication that relates to Curry's role as President of the Curry brand at Under Armour.

9    Such requests are facially overbroad.  Furthermore, to the extent the Subpoena requests any

10   documents relevant to the issues in this litigation, Athalonz cannot show that those documents

11   are not also in the possession of Under Armour, such that they are not unreasonably duplicative

12   for Curry to search and produce.

13   Likewise, the deposition Athalonz seeks of Curry is improper.  There is nothing relevant

14   to this litigation that Curry could tell Athalonz that Under Armour's witnesses cannot provide.

15   Curry lacks unique personal knowledge of any material facts in the underlying action, including

16   facts relating to the allegedly infringing design of the accused products.  The burden to Curry, a

17   non-party witness, of disrupting his demanding schedule to prepare for and attend a deposition

18   on patent infringement issues of which he has no knowledge is unjustified, as any information

19   that Curry may have about the design and promotion of the Curry brand shoes at Under Armour

20   is more readily and properly obtained directly from Under Armour—the party that designed,

21   promotes and sells such products.

22   The Subpoena, served on November 21 also demands production of documents within

23   only seven business days—an unreasonable time to demand compliance by a third party.

24   For these reasons and the reasons set forth below, the Court should grant Curry's motion

25   to quash.

26   //

27   //

28   //

-2-

MOTION TO QUASH SUBPOENA OF
NON-PARTY WARDELL STEPHEN CURRY II

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  The Curry Brand at Under Armour

Under Armour is a well-known athletic brand that develops, markets, and distributes branded performance apparel, footwear and accessories for men, women and youth.  Declaration of Ryan Drew ("Drew Declaration"), ¶ 2.  Curry is a world-renowned professional basketball player in the NBA who plays for the Golden State Warriors based in Oakland, California.  Curry is not an owner, officer, director or employee of Under Armour.  *Id.*, ¶ 3.  Under Armour proposes, designs, develops, promotes, and sells the Under Armour products that are part of the Curry brand.  Drew declaration, ¶ 4; Declaration of William J. Austin ("Austin Declaration"), ¶ 3.  Under Armour also oversees and manages the manufacturing and production of all Curry brand products.  Austin Declaration, ¶ 3.  While Curry has several responsibilities associated with his role as President of the Curry brand at Under Armour, and in promoting his line of products, he had no involvement in the design of the specific accused features of the accused products.  *Id.*, ¶¶ 5-6; Austin Declaration, ¶ 4.

### B.  Procedural History of the Underlying Action

On April 26, 2023, Athalonz filed an action against Under Armour alleging infringement of the Asserted Patents, *Athalonz, LLC v. Under Armour, Inc.*, Case No. 2:23-cv-00193-JRG, in the United States District Court for the Eastern District of Texas (the "Action").  Declaration of Robert E. Bugg ("Bugg Declaration"), ¶¶ 4-5.  Under Armour denied that it infringes the Asserted Patents and moved to transfer the case to the District of Maryland pursuant to 28 U.S.C §1404(a).  *Id.*, ¶¶ 6-7.  The case is in its early stages.  Discovery has just begun, and the parties recently served infringement contentions and invalidity contentions on September 14, 2023, and November 30, 2023, respectively.  *Id.*, ¶ 16.  The deadline for the parties to substantially complete document production is not for another 8 months (August 7, 2024), with the *Markman* hearing scheduled in September 2024, close of fact discovery in October 2024, and trial set to occur in March 2025.  *Id.*

On November 21, 2023, Curry's counsel accepted service of the Subpoena, and counsel reserved all rights to object and move to quash.  The Subpoena included requests for production

1  of documents on December 1, 2023—a mere seven business days later and over the

2  Thanksgiving holiday, and noticed Curry's deposition for December 8, 2023.  *Id*., ¶ 8.

3  **C.    Discovery Remains at an Early Stage**

4  Athalonz seeks to obtain intrusive and burdensome discovery from non-party Curry prior

5  to obtaining the same information from Under Armour.  Under Armour has already agreed to

6  produce extensive categories of documents that Athalonz requested.  More specifically, Under

7  Armour has agreed to produce:

8    ➤ all technical documents, CAD files and specifications for the accused products;

9    ➤ all marketing and promotional documents for the accused products;

10    ➤ all development documents for the accused products;

11    ➤ all testing documents for accused products;

12    ➤ all sales and profit data for accused products; and

13    ➤ all documents related to the Curry's involvement in the design, development, or

14      testing of the accused features of the accused products.

15  *Id*., ¶ 11.

16  With respect to testimony, Athalonz has yet to seek a single individual or 30(b)(6)

17  deposition from Under Armour, despite having knowledge of at least eight current and former

18  Under Armour employees in possession of facts relevant to the claims in the underlying Action:[1]

19    ➤ Kevin Culley (former Director of Innovation)

20    ➤ Don Gibadlo (Director of Footwear Development)

21    ➤ David Stakel (Senior Director – Team Sports Footwear)

22

23

24

25  [1] Athalonz has known that Mr. Culley, Mr. Gibadlo, Mr. Stakel, Mr. Rattet and Mr. Foster may
    be in possession of relevant information since at least April 26, 2023, when it identified them by
26  name in its original Complaint in the underlying Action.  Athalonz has further known that Mr.
    Luedecke, Ms. Oles, and Ms. Fink are in possession of relevant information and are likely to be
27  called to testify as trial witnesses since at least August 30, 2023, when Under Armour identified
    them in its motion to transfer venue to the District of Maryland, and additionally since October
28  19, 2023, when Under Armour identified them in its initial disclosures.

1    ➢ Joshua Rattet (VP of Team Sports Footwear, Accessories and Equipment

2         Business Units)

3    ➢ Craig Foster (Director of Corporate Development)

4    ➢ Tom Luedecke (Design Director, Innovation, Footwear, relating to basketball)

5    ➢ Teresa Oles (Vice-President, Consumer Operations)

6    ➢ Katie Fink (Director, FP&A)

7         Collectively, Under Armour and the above witnesses are in possession of documents and

8    information rendering any information that Curry may be able to provide duplicative and

9    unnecessary.

10   **III.    ARGUMENT**

11        The Subpoena "imposes an undue burden and expense" on Curry, a non-party who has a

12   busy and demanding schedule, and who is at the pinnacle of his career.  The disruption it would

13   cause Curry vastly outweighs any information that he may possess regarding Under Armour's

14   shoe designs within the Under Armour Curry product line, and the proposed deposition is not

15   expected to reveal testimony that is material to the parties' claims or defenses.  The Subpoena's

16   demands are also disproportional to the needs of this case, as any information that Curry may

17   have about the accused shape and materials of the Under Armour Curry shoe soles is more

18   readily and properly obtained directly from Under Armour, through a Rule 30(b)(6) witness, or

19   otherwise.  As such, the deposition serves no legitimate discovery purpose.

20        **A.    Legal Standard**

21        Parties may not use discovery as a strategic tool to harass, burden, or otherwise gain

22   improper advantages in litigation.  The "scope of discovery through a subpoena is the same as

23   that applicable to Rule 34 and other discovery rules," including Federal Rule of Civil Procedure

24   26(b).  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679 (N.D. Cal. 2006) (quoting Fed. R. Civ. P.

25   45 advisory committee's note).  Rule 26 requires courts to limit discovery methods where:

26        (i)    the discovery sought is unreasonably cumulative or duplicative, or is obtainable

27             from some source that is more convenient, less burdensome, or less expensive;

28

      (ii)     the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

      (iii)    the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*Id.* at 680 (citing Fed. R. Civ. P. 26(b)(2)); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).

Federal Rule of Civil Procedure 45 provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (district court may quash an unreasonable or oppressive subpoena). Additionally, "[t]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Avaya Inc. v. Pearce*, No. 19-cv-00565-SI, 2021 U.S. Dist. LEXIS 56013, at *3 (N.D. Cal. Mar. 24, 2021) (citing *United States v. CBS, Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982)); *see also* Fed. R. Civ. P. 45(d)(2)(B)(ii) (the Court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance").

The "undue burden" in Rule 45(d)(3)(A)(iv) is a "case specific inquiry," and balances the need of the subpoenaing party for the information and burden on the non-party. *Amini Innovation Corp.*, 300 F.R.D. at 409. Specifically, to determine whether a subpoena poses an undue burden, courts consider factors such as relevance, the need of the party for the documents, and the hardship imposed on the third party. *Id.* at 409-10; *Meier v. UHS of Del., Inc.*, No. 18-CV-00615, 2021 WL 1226619, at *6 (E.D. Tex. Apr. 1, 2021). When documents are sought, courts also consider the breadth of the document requests, the time period covered by them, and the particularity with which the documents are described. *Amini Innovation Corp.*, 300 F.R.D. at 409-11; *Meier*, 2021 WL 1226619, at *6. A court "will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance." *W. Pac. Kraft, Inc. v. Duro Bag Mfg. Co.*, NO. CV 10-6017 DDP (SS), 2012 U.S. Dist. LEXIS

1    195292, at *7 (C.D. Cal. Aug. 27, 2012) (citation omitted).  Moreover, subpoenas pose an undue

2    burden when they are "facially overbroad."  *Meier*, 2021 WL 1226619, at *6 (explaining that

3    "[f]acially overbroad subpoenas include those that seek all documents concerning the parties to

4    the underlying action, regardless of whether those documents relate to that action and regardless

5    of date; the requests are not particularized; and the period covered by the requests is unlimited")

6    (internal revisions and quotations omitted).

7           This is particularly true where the requesting party "has not demonstrated why it needs to

8    seek information from the [non-party] prior to conducting any depositions of the defendants or

9    seeking the information from other sources."  *Avaya*, 2021 U.S. Dist. LEXIS 56013, at *3.

10   "When an opposing party and a non-party both possess documents, the documents should be

11   sought from the party to the case."  *Genus Lifesciences Inc. v. Lannett Co.*, No. 18-cv-07603-

12   WHO, 2019 U.S. Dist. LEXIS 222550, at *10-11 (N.D. Cal. Dec. 30, 2019) (internal citations

13   and quotations omitted).

14          Even where the burden upon the proposed deponent is not excessive or unusual, a lack of

15   relevance of the information sought may be independently determinative, mandating that a non-

16   party subpoena be quashed, as it is axiomatic that a party may only obtain discovery of

17   information "relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  The burden is

18   on the party seeking the deposition to demonstrate the relevance of the expected testimony of the

19   putative witness.  *Genus Lifesciences*, 2019 U.S. Dist. LEXIS 222550, at *9.  A subpoena that

20   "pursues material with little apparent or likely relevance to the subject matter" is "likely to be

21   quashed as unreasonable even where the burden of compliance would not be onerous."

22   *Kirschner v. Klemons*, No. 99 CIV. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19,

23   2005).

24          **B.    Curry Does Not Uniquely Possess Any Relevant Information**

25          Athalonz has no legitimate reason for deposing Curry.  Curry has not been retained by

26   Under Armour for any purpose related to this Action, and Under Armour does not intend to offer

27   Curry as a witness at trial.  Curry has no involvement with this litigation.

28

1    Athalonz can depose numerous Under Armour witnesses who have worked with Curry

2    and his team since the beginning of Curry's relationship with Under Armour.  Indeed, Athalonz

3    has known these witnesses' identities for months prior to serving the Subpoena.  *See* Section

4    II.C, *supra*.  And Under Armour's witnesses possess knowledge of the extent of Curry's

5    involvement in the design, development, testing, marketing, advertising, promotion, and sale of

6    the accused products, if any.  Drew Declaration, ¶ 7.

7    In this Action, Athalonz must prove that Under Armour makes, uses, offers to sell, or

8    sells products that infringe Athalonz's patents.  *See* 35 U.S.C. § 271.  Athalonz must also prove

9    that it is entitled to damages.  *See* 35 U.S.C. § 284.  The material sought by the Subpoena is

10   neither relevant, nor targeted, to these issues.  For example, with respect to Request No. 2, Curry

11   plays no role in the design or development of the accused features of the accused products (*i.e.*,

12   the shape and materials of the shoe sole).  *Id.*, ¶¶ 5-6; Austin Declaration, ¶ 4.  Nor is testimony

13   from Curry regarding his involvement with the accused products relevant to the issues in this

14   Action.  In a similar case involving alleged trademark infringement by Under Armour's Curry

15   products, this court granted a motion to quash a similar subpoena to Curry.  *Under Armour, Inc.*

16   *v. Battle Fashions, Inc*., No. 18-mc-80117-LB, 2018 U.S. Dist. LEXIS 130983 (N.D. Cal. Aug.

17   3, 2018).  There, the subpoena to Curry requested, *inter alia*, documents relating to Curry's

18   "participation in the collaborative effort between Under Armour and Steph Curry in the

19   development, design, sale, or promotion" of the allegedly infringing products.  *Id*. at *5.  When

20   quashing the subpoena, this Court held that "discovery about Mr. Curry's involvement in the

21   design of Under Armour products is at best of marginal relevance," noting that, like here, "Under

22   Armour is the one that is selling whatever products that Mr. Curry may or may not have

23   designed, and it is Under Armour against whom [Plaintiff] is litigating…." *Id*. *9

24   Similarly, in *Amini Innovation*, actress Jane Seymour who was identified as a "co-

25   designer" of Plaintiff Amini's Hollywood Swank Bedroom Collections, successfully moved to

26   quash her deposition subpoena.  300 F.R.D. at 408.  Plaintiff's furniture collection was the basis

27   of trade dress contentions in the action, and Seymour appeared in advertisements for the

28   Collections and promoted them on her website.  *Id.*  The Court's decision to quash the celebrity's

-8-

subpoena in *Amini* is instructive, finding:

> [E]ven if the record showed that Seymour had more involvement in the creation of the Collections, *it appears unlikely that evidence about her inspirations in the design process would be directly relevant to this trade dress action* . . . . [as] trade dress litigation involves an examination of a design's functionality, secondary meaning, and likelihood of confusion with the public . . . [and the Plaintiff] has not shown that Seymour is likely to possess information about these specialized topics. *The type of information Seymour may possess about the inspiration for a given design appears marginal to the issues in this action*, such as what the design actually is (regardless of its source), and how it is presented to and received by the public. Seymour is not an obvious witness to ask about survey evidence or the amount of Amini's sales and the number of Amini's customers. *Even if Seymour were somehow qualified to testify about these topics, any information Seymour could likely offer would seemingly be cumulative of the testimony of Amini witnesses versed in the technicalities of trade dress protection and litigation.* In addition, [Plaintiff] has not shown that Seymour even knows that [Plaintiffs] products exist, much less that she has any information or opinions bearing on whether [Plaintiff's] products infringe on Amini's trade dress.

*Id.* at 412 (emphases added).

The same is true here. Curry does not have unique personal knowledge of material facts bearing on whether the ***accused features*** of the Under Armour Curry products infringe the asserted patent claims. Nor does Curry have unique personal knowledge as to specific marketing, advertising, promotion or sale of the Under Armour Curry products that could bear on Athalonz's damages theories. Athalonz can and has learned about Under Armour's design, development, marketing, promotion and sales processes from Under Armour's documents and from deposing Under Armour's witnesses.

Additionally, with respect to Request Nos. 3-8 generally, although Curry is an Under Armour sponsored athlete, he lacks knowledge material to the underlying Action regarding: (1) the marketing, advertising and promotion of the accused products; (2) the comparative value or benefits of the accused products compared to other shoes; (3) the market for basketball shoes generally; and (4) Under Armour's pricing, margins, costs, sales strategies, or sales comparisons.

Even setting aside the minimal potential relevance to Athalonz's damages theories in the underlying Action,[2] to the extent Curry is in possession of such information, the same can be obtained from Under Armour.  Bugg declaration, ¶¶ 9-14.  Athalonz cannot show that any information Curry might have about those topics is not also in the possession of Under Armour, the company actually engaged in designing, advertising, selling and accounting for the accused products.

Curry should not be burdened with the third-party Subpoena when there is no indication that Curry's responses would be materially relevant, especially when Athalonz has other means to obtain the same information from parties and other witnesses which it has yet to explore.  *See, e.g.*, *Battle Fashions,* 2018 U.S. Dist. LEXIS 130983, at *9 (holding that discovery sought from Curry "is of little benefit compared to the burden on him and is cumulative or duplicative of discovery that Mr. Battle can or has obtained from Under Armour and other sources"); *Avaya*, 2021 U.S. Dist. LEXIS 56013, at *3 (denying request to subpoena non-parties prior to conducting depositions of the defendants); *Genus Lifesciences Inc.*, 2019 U.S. Dist. LEXIS 222550, at *13 (quashing subpoena for failure to obtain requested information from the opposing party).

## C.   The Subpoena Should be Quashed as It Imposes an Undue Burden on Non-Party Curry

The burden on Curry far outweighs Athalonz's need for the information sought by the Subpoena.  *See Battle Fashions*, 2018 U.S. Dist. LEXIS 130983, at *9 (granting motion to quash similar Curry subpoena as unduly burdensome); *Amini Innovation Corp.*, 300 F.R.D. at 411-13 (granting non-party actress's motion to quash); *Meier*, 2021 WL 1226619, at *6.

Courts have broad discretion to determine whether a subpoena is unduly burdensome. *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994).  "An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value

---

[2] *See e.g. Battle Fashions*, 2018 U.S. Dist. LEXIS 130983 at *12 (finding Curry's involvement in the marketing and promotion of Under Armour products and Curry's contract with Under Armour irrelevant to claims or defenses in the litigation).

-10-

of the information to the serving party."  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citation and alterations omitted).  And "[t]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts."  *Avaya Inc.*, 2021 U.S. Dist. LEXIS 56013, at *3; *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,* 161 F.R.D. 86, 88 (N.D. Cal. 1995) (noting that "the Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts").

### 1. Sitting for Deposition Would Be Burdensome for Curry

Curry has extensive commitments as a professional basketball player.  *See* Austin Declaration, ¶¶ 5-7.  Curry spends many hours each day participating in games, training, and/or doing physical therapy or maintenance treatments during the season.  *Id.*, ¶ 5.  Additionally, Curry's schedule is filled with Golden State Warrior team obligations, as well as endorsement, sponsorship, and charity commitments.  *Id.*  The NBA season (October-April) is the busiest time of year for NBA athletes, as their presence is needed by their teams on a daily basis.  *Id.*, ¶ 6. Indeed, across the 135 days between December 1, 2023 (the date noticed for production of documents) and April 14, 2024 (the last day of the NBA's regular season), the Golden State Warriors have regular season games scheduled on 63 separate days.  *Id.*, ¶ 7.  Furthermore, 32 of those games are "away" games that will necessitate substantial cross-country travel before and after the game.  *Id.*

### 2. The Requests for Production of Documents Are Overbroad

The Subpoena includes requests for production of documents that are overbroad, irrelevant and duplicative.  First, to the extent the requests are relevant, the vast majority are duplicative of requests propounded to Under Armour, and to which Under Armour has agreed to produce responsive documents.  Bugg Declaration, ¶¶ 8 (*see, e.g.*, Request Nos. 1-8), 10, 12, 14; *Genus Lifesciences Inc.*, 2019 U.S. Dist. LEXIS 222550, at *10-11 ("When an opposing party and a non-party both possess documents, the documents should be sought from the party to the case.").

Second, certain of the requests seek documents untethered to the claims and defenses in the Action.  For instance, the Subpoena seeks "[a]ll documents or communications . . . relat[ing]

-11-

to [Curry's] role as President of the Curry Brand at Under Armour," as well as "[a]ll contracts . . . related to [Curry's] role as a sponsor of the Accused Curry Products."  Bugg Declaration, ¶ 8 (*see, e.g.*, Request Nos. 5, 9).  Request No. 5, in particular, is not limited to documents relating to the specific accused products, and likely requires review and production of every document in Curry's possession relating to his work with Under Armour.  And regarding Request No. 9, Athalonz has failed to provide any legal authority supporting the relevance of Curry's sponsorship agreements with Under Armour, despite numerous requests from Under Armour to provide it.  Bugg declaration, ¶¶ 10, 12, 14; *Genus Lifesciences*, 2019 U.S. Dist. LEXIS 222550, at *9 ("the party issuing the subpoena must demonstrate that the discovery sought is relevant"); *see also Battle Fashions*, 2018 U.S. Dist. LEXIS 130983, at *12 (quashing subpoena requesting, *inter alia*, contracts between Curry and Under Armour regarding his promotion of Under Armour products accused of infringement).

Third, Athalonz's requests are facially overbroad.  For example, Request No. 2 seeks all documents relating to a party to the underlying Action.  And each request is overbroad for failure to be time-limited to a period relevant to the underlying Action.  This facially overbroad subpoena imposes an undue burden on Curry.  *See, e.g.*, *Meier*, 2021 WL 1226619, at *6 ("Facially overbroad subpoenas include those that seek all documents concerning the parties to the underlying action . . . [and those where] the time period covered by the requests is unlimited.").

Finally, the Subpoena seeks attorney-client privileged information outside the scope of permissible discovery.  For example, Request No. 10 seeks documents and communications between Curry and Under Armour or Venable LLP, the firm representing both Under Armour and Mr. Curry, relating to the Litigation.  Fed. R. Civ. P. 26(b)(1) ("the scope of discovery" is limited to "***nonprivileged*** matter that is relevant to any party's claim or defense") (emphasis added).

The *Battle Fashions* and *Amini* decisions are also instructive in the undue burden analysis.  In *Battle Fashions*, this Court agreed with Curry that a subpoena of similar scope was unduly burdensome where the "discovery [was] not related to Mr. Battle's trademark dispute

MOTION TO QUASH SUBPOENA OF
NON-PARTY WARDELL STEPHEN CURRY II

with Under Armour," was "overbroad," was "cumulative or duplicative of discovery that Mr.

Battle can or has obtained from Under Armour and other sources," and "of little benefit

compared to the burden on him."  2018 U.S. Dist. LEXIS 130983, at *9-12.  And unlike here,

that subpoena was served in the NBA offseason—a time when Curry has far fewer obligations to

his team.

Likewise, in *Amini*, the court quashed an unduly burdensome subpoena to the celebrity

non-party, Seymour, because the "value of Seymour's testimony in [a] trade dress action appears

to be low or at best unknown" and the information sought is "obtainable—and for many topics,

likely uniquely obtainable—from Amini and its officers."  *Id.* at 411.

This Court should quash the Subpoena for the same reasons.  The discovery sought is

overbroad and unrelated to the dispute; Curry lacks personal knowledge of the facts relevant to

the claims and legal contentions in the Action including, *inter alia*, whether the accused shape

and materials of the shoe soles infringe Athalonz's patents; and any documents or information

Curry has about the allegedly infringing features of the accused products, to the extent they exist,

is more readily and properly obtained directly from Under Armour.

There is little, if any, benefit to the Subpoena.  This is especially true considering that

Athalonz has sought the same materials and information from Under Armour, and Under Armour

has agreed to produce the materials relevant to the dispute.  *See Genus Lifesciences*, 2019 U.S.

Dist. LEXIS 222550, at *13 (granting motion to quash because the requested information "can

be obtained from the opposing party [] in a way that would be more convenient and less

burdensome").  As such, the motion to quash should be granted.

### D.    The Subpoena Fails to Provide Curry a Reasonable Time to Comply

Rule 45(d)(3) requires that a court "must quash … a subpoena that … fails to allow a

reasonable time to comply."  Fed. R. Civ. P. 45(d)(3)(A)(i).  "The question of whether the time

to comply with a subpoena is a fact-specific inquiry; courts generally have found that fewer than

ten days is not reasonable."  *Gordon v. Sonar Capital Mgmt. LLC*, No. C 15-80080 LB, 2015

U.S. Dist. LEXIS 32047, at *5 (N.D. Cal. Mar. 15, 2015) (citing *Anderson v. Dobson*, No. 06-02,

2006 U.S. Dist. LEXIS 98289, 2006 WL 3390631, at *3 (W.D.N.C. Nov. 22, 2006) (holding that

-13-

ten days was not an adequate time for compliance, noting that "the usual and customary 14 day objection period for the witness to move to quash the subpoena would not have even run….")

The Subpoena commanded Curry to search for and produce documents on or before December 1, 2023—only seven business days after the November 21st service of the Subpoena and overlapping with the Thanksgiving holiday. The subpoena also noticed Curry's deposition for December 8, 2023—12 business days after service. Courts have routinely granted a motion to quash in view of such a short deadline for compliance. *See, e.g., Free Stream Media Corp. v. Alphonso Inc.*, No. 17-CV-02107-RS (KAW), 2017 WL 6209309, at *4 (N.D. Cal. Dec. 8, 2017) ("[The subpoenaed non-party] had fewer than ten days to comply with the subpoena, a period of time that courts in [the Northern District of California] have found to be presumptively unreasonable."). Athalonz's demand for production of documents within seven business days does not even allow for the standard fourteen days to provide objections to a request for documents. *See* Fed. R. Civ. P. 45(d)(2)(B). This short deadline is particularly unreasonable because the Subpoena commands Curry to search for broad categories of documents and prepare to testify all within the short time frame. *See Free Stream Media*, 2017 WL 6209309, at *4 ("Regardless of whether [the subpoenaed non-party] had nine or ten days to comply with the subpoena, the Court also finds that the time for compliance was not reasonable given the timing and scope of the subpoena."); *Natera, Inc. v. Caredx, Inc.,* No. 23-mc-80117-LJC, 2023 U.S. Dist. LEXIS 95161, at *8-9 (N.D. Cal. May 31, 2023) ("The parties dispute whether the Court should consider the timeframe for compliance as nine business days or eleven calendar days. See Opp. at 8. The difference between the two is immaterial, because the Court finds that under either timeframe, Natera failed to give Eurofins a reasonable time to comply under Rule 45(d)(3)(A)(i).").

## IV.    CONCLUSION

For the foregoing reasons, Curry respectfully requests that the Court grant this Motion and quash the Subpoena.

1  Dated: December 8, 2023               VENABLE LLP

2                               By:     */s/ William A. Hector*

3                                     William A. Hector (SBN 298490)

4                                     Frank C. Cimino, Jr. (*pro hac forthcoming*)
                                      Megan S. Woodworth (*pro hac forthcoming*)

5                                     Robert E. Bugg (*pro hac forthcoming*)

6                                     Attorneys for Non-Party
                                     WARDELL STEPHEN CURRY II

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO QUASH SUBPOENA OF
NON-PARTY WARDELL STEPHEN CURRY II