1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    ATHALONZ, LLC,                          Case No.  23-mc-80324-LJC

8                        Plaintiff,
                                             **ORDER GRANTING MOTION TO**
9            v.                              **QUASH SUBPOENA**

10   UNDER ARMOUR, INC.,                      Re: Dkt. No. 1

11                       Defendant.

12   **I.      INTRODUCTION**

13           This miscellaneous case is before the Court on a Motion by Wardell Stephen (Steph) Curry

14   II to quash a subpoena issued by the Eastern District of Texas in a patent case regarding athletic

15   shoes.  ECF No. 1.  The Court held a hearing on February 13, 2024.  For the reasons discussed

16   below, the Court GRANTS the motion to quash, without prejudice to Plaintiff Athalonz, LLC

17   serving a renewed (and potentially revised) subpoena if discovery from Defendant Under Armour,

18   Inc. reveals that Curry is likely to possess relevant and non-duplicative information or documents.

19   **II.     BACKGROUND**

20           **A.      The Underlying Litigation**

21           Athalonz holds several patents related to the design of athletic shoes that purportedly

22   "shift[] athletes' weight so that they naturally adopt an athletic stance that efficiently transfers

23   force during movement."  ECF No. 1-1 at 5, 7 (Compl. ¶¶ 1, 8).  Athalonz's patents describe shoes

24   with soles that slope towards the front and inside edge of each foot and that have a gradient of

25   compressibility that varies across different portions of the sole.  *Id.* ¶¶ 15–18.

26           Athalonz has sued Under Armour in the Eastern District of Texas (Chief Judge Rodney

27   Gilstrap presiding) for selling shoes that allegedly infringe Athalonz's patents.  *See generally*

28   *Athalonz, LLC v. Under Armour, Inc.*, No. 2:23-cv-00193-JRG (E.D. Tex.).  The Complaint does

United States District Court
Northern District of California

not mention Steph Curry specifically, but it alleges that shoes Under Armour sold under the "Curry" brand infringe Athalonz's patents, including the Unisex Curry HOVR Splash Basketball Shoe and the Unisex Curry 4 FloTro Basketball Shoe. *Id.* ¶¶ 35, 38, 39, 47–50, 54–61, 66–69. Athalonz's infringement contentions list several other Curry-brand shoes as purportedly infringing Athalonz's patents. ECF No. 11-1 at 7–8.

The deadline for the parties to substantially complete document production in the underlying case is August 7, 2024. ECF No. 1-1 at 132. The close of fact discovery, as well as the deadline for expert disclosures by the party with the burden of proof, is October 15, 2024. *Id.* at 131. Dispositive motions are due November 25, 2024. *Id.* Certain claim construction deadlines occur somewhat earlier, but Athalonz has not argued specifically that discovery from Curry would be relevant to claim construction, and it is not apparent how that would be the case.

According to Curry, Athalonz had not sought any depositions of Under Armour or its employees as of December 8, 2023, when Curry filed his Motion to Quash. Mot. (ECF No. 1) at 4. Athalonz confirmed at the February 13, 2024 hearing that it has not yet pursued depositions of Under Armour employees because it is waiting for the Eastern District of Texas to rule on disputes regarding production of documents that may be relevant to those depositions.

**B.      Judge Gilstrap's Order Denying Under Armour's Motion to Transfer**

Under Armour filed a motion to transfer the underlying case from the Eastern District of Texas to the District of Maryland (where Under Armour is headquartered), which Judge Gilstrap denied. *Athalonz LLC v. Under Armour, Inc.*, No. 2:23-cv-00193-JRG, 2023 WL 8809293 (E.D. Tex. Dec. 20, 2023).

Judge Gilstrap afforded significant weight to marketing statements regarding professional golfer Jordan Spieth's involvement in designing Under Armour golf shoes that allegedly infringe Athalonz's patents. *Athalonz*, 2023 WL 8809293, at *5–6. Like Curry, Spieth wears allegedly infringing Under Armour shoes in competition and has made public statements indicating that he is involved in designing those shoes. *Id.* at *5. Judge Gilstrap held that "Spieth's testimony would be relevant and highly material to Athalonz's case" because it "may inform nonobviousness arguments and damages calculations." *Id.* Noting that Spieth resides in Texas relatively close to

United States District Court
Northern District of California

1  the Eastern District, and that the Eastern District (unlike the District of Maryland) therefore had

2  authority to compel Spieth's deposition, Judge Gilstrap held that the likely relevance of Spieth's

3  testimony weighed against transfer to Maryland.  *Id.* at *6.

4          Judge Gilstrap also briefly addressed Curry, holding that his potential testimony in the case

5  was not a relevant factor on the motion to transfer because he was "outside of the subpoena power

6  of both districts" and it was "highly unlikely that Stephen Curry, a major partner and sponsor of

7  Under Armour, is likely to willingly offer testimony that could impugn his business partner."  *Id.*

8  at *7 & n.15.[1]

9          **C.      Curry's Relationship with Under Armour**

10         A four-time NBA champion, Curry is among the most famous and accomplished

11 professional basketball players in the world.  Under Armour sells a number of products in

12 partnership with Curry, including basketball shoes, under the "Curry" brand.  Although an Under

13 Armour executive states that Curry "is not an owner, officer, director or employee of Under

14 Armour" (ECF No. 1-3, Drew Decl. ¶ 3), Curry holds the title of "President of Curry Brand" at

15 Under Armour, and Under Armour has issued him stock in the company worth many millions of

16 dollars.  ECF No. 11-1 at 133, 268, 293.

17         Curry, Under Armour, and various Under Armour employees have made public statements

18 indicating that Curry is involved with the design of Under Armour shoes sold under the Curry

19 brand.  *E.g.*, ECF No. 11-1 at 143 ("Curry says that . . . he remains intimately involved with the

20 creation of each sneaker [including] picking materials that will improve performance . . . ."); *id.* at

21 133 (Under Armour press release stating that Curry "provided key insights on Under Armour

_____

[1] This Court understands Judge Gilstrap's concern about Athalonz's potential difficulty deposing Spieth if the case were transferred to Maryland, and deposing Curry regardless of the outcome of the motion to transfer, as addressing only the enforcement power of the court where trial would be held.  Under Rule 45, a party may use a subpoena *issued* by the district court where an action is pending to compel a deposition elsewhere in the country, as *enforced* by the district court where the deposition is to occur.  *See generally Simon v. Taylor*, No. CIV 12-0096 JB/WPL, 2014 WL 6633917, at *14–19 (D.N.M. Nov. 18, 2014) (discussing 2013 amendments to Rule 45), *aff'd*, 794 F. App'x 703 (10th Cir. 2019).  "Under the current Rule 45, regardless of the venue in which a case is originally filed, parties may now secure the attendance of any non-party witnesses, at least in the form of taking the witnesses' deposition."  *VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (Gilstrap, J.).

product technologies"), *id.* at 150 ("[T]he lead designer for the Curry 3 . . . noted that Curry is heavily involved in the design of the shoes . . . ."), *id.* at 158 ("Steph is fully involved from start to finish."), *id.* at 175 (quoting Curry as stating, "When designing this shoe, we wanted athletes to have the ultimate experience on and off the court . . . .").  On the other hand, Under Armour's Vice President of the Curry Brand, Ryan Drew, states in a declaration that Drew (as opposed to Curry) "lead[s] the Curry Brand," and that Curry does neither "design[s] the shape of the sole, or any other component, of the accused Curry products" nor "choose[s] the materials used in the sole, or any other component, of the accused Curry products."  ECF No. 1-3 (Drew Decl.) ¶¶ 1, 5, 6.  Curry's agent William Austin, who oversees Curry's communications with Under Armour, similarly states that Curry "does not design or develop the shape of the soles of the [Curry] line of shoes, nor determine what materials are used in the soles."  ECF No. 1-2 (Austin Decl.) ¶¶ 2, 4.

Curry is represented here by the same counsel who represent Under Armour in the underlying litigation.

### D.    Athalonz's Subpoena

Athalonz's subpoena to Curry, which was provided to his counsel on November 17, 2023, demanded his videotaped deposition on December 8, 2023 at a law office in Redwood City, not far from Curry's home in Atherton, California.  ECF No. 1-1 at 80.  The notice provided to counsel indicated that the deposition would occur on December 8th "or at a mutually agreeable time and location."  ECF No. 1-1 at 78.

The subpoena also demanded production of the following documents by December 1, 2023:

> **REQUEST FOR PRODUCTION NO. 1**
> All Documents or communications that describe or refer to this Litigation, the Asserted Patents, or the Athalonz Products.
>
> **REQUEST FOR PRODUCTION NO. 2**
> All Documents or communications that describe or refer to Athalonz.
>
> **REQUEST FOR PRODUCTION NO. 3**
> All Documents or communications that describe, refer, or otherwise relate to Your role in the design, development, and testing of the

United States District Court
Northern District of California

4

1    Accused Curry Products.[2]

2    **REQUEST FOR PRODUCTION NO. 4**
3    All Documents or communications that describe, refer, or otherwise
     relate to Your role in the marketing, advertising, promotion, and/or
     sale of the Accused Curry Products.
4
     **REQUEST FOR PRODUCTION NO. 5**
5    All Documents or communications that describe, refer, or otherwise
     relate to Your role as President of the Curry Brand at Under Armour,
6    including the terms of any agreements with Under Amour relating to
     that role.
7
     **REQUEST FOR PRODUCTION NO. 6**
8    All Documents or communications that describe, refer, or otherwise
     relate to the value or benefits of the Accused Curry Products,
9    particularly as compared to other Under Armour basketball shoes or
     other basketball shoes available on the market.
10
     **REQUEST FOR PRODUCTION NO. 7**
11   All Documents or communications that describe or refer to the market
     for basketball shoes in the United States.
12
     **REQUEST FOR PRODUCTION NO. 8**
13   All Documents or communications that describe or refer to sales of
     the Accused Curry Products, including documents discussing pricing,
14   margins, costs, strategies for sales, as well as comparing sales of the
     Accused Curry Products against sales of other Under Armour
15   basketball shoes or competitive basketball shoes.

16   **REQUEST FOR PRODUCTION NO. 9**
     All contracts, draft agreements, and communications related to Your
17   role as a sponsor of the Accused Curry Products, including documents
     sufficient to show the amount and terms of payment You receive from
18   Under Armour. This request includes but is not limited to a copy of
     the Under Armour, Inc. Athlete Product, Brand, Ambassador, and
19   Endorsement Agreement entered into in 2023 between Curry and
     Under Armour.
20
     **REQUEST FOR PRODUCTION NO. 10**
21   All Documents and communications related to any agreements or
     potential agreements relating to the Litigation between You and
22   Under Armour or Venable LLP.

23   ECF No. 1-1 at 6–7.

24

25   _____

26   [2] The subpoena defines the "Accused Curry Products" as "the Under Armour shoes accused of
     infringement sponsored by Curry, including at least: UA Charged Curry, Curry 4 FloTro, Curry 1
     FloTro, Curry 2 FloTro, Curry 11, Curry 10, Curry 9, Curry 8, Curry HOVR Splash, Curry HOVR
27   Splash 2, Curry HOVR Splash 3," as well "all past and future releases of the same Accused
     Products that contain substantially the same features and infringe the Asserted Claims for
28   substantially the same reasons, as well as products with variations of size, color, model year,
     low/high version, version number, cleat or bottom pattern, etc."  ECF No. 1-1 at 86.

1   Curry served objections to all of these requests on December 1, 2023 based on relevance

2   and burden, among other grounds, and asserted that "[a]ny non-privileged documents responsive

3   to [each] Request would be in Under Armour's possession".  ECF No. 11-1 at 324–30.  Curry also

4   asserted that he was unaware of any documents (other than the subpoena itself) responsive to the

5   first and second requests, ECF No. 11-1 at 324–25, and Athalonz acknowledges that it is satisfied

6   with his responses to those requests, Opp'n (ECF No. 11) at 16.

7       **E.      The Parties' Arguments**

8   Curry argues that he does not have any unique relevant information that Athalonz could not

9   obtain from Under Armour.  Mot. at 7–10.  He asserts that he has no role in designing or

10  developing the shoe soles at issue in the underlying litigation, and that Under Armour's employees

11  can testify to not only the substantive issues in dispute, but also the extent to which Curry was or

12  was not involved in developing Under Armour's Curry brand shoes.  *Id.* at 8.  Under Armour cites

13  a 2018 decision by Judge Beeler quashing a subpoena that sought a deposition and documents

14  from Curry in a clothing seller's trademark dispute with Under Armour, as well as a decision from

15  the Central District of California quashing a subpoena served on actress Jane Seymour regarding

16  trade dress contentions implicating products that Seymour allegedly helped to design.  *Id.* at 8–9

17  (citing *Under Armour, Inc v. Battle Fashions, Inc.*, No. 18-mc-80117-LB, 2018 WL 3689664 (N.D.

18  Cal. Aug. 3, 2018); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406

19  (C.D. Cal. 2014)).  Curry also argues that he lacks relevant knowledge regarding the market at

20  issue or the comparative value of the product features in dispute, and that to the extent such

21  matters are relevant to the case, Athalonz can pursue discovery from Under Armour.  *Id.* at 9–10.

22  Athalonz relies on Under Armour's and Curry's public statements of Curry's role in the

23  design process, as well as Curry's title of President of Curry Brand at Under Armour, to argue that

24  Curry "has unique, relevant insight into those products and the value of the features in those

25  products."  Opp'n at 8, 11.  In Athalonz's view, Curry's testimony regarding the development

26  process for basketball shoes could also inform whether Athalonz's patents are valid as nonobvious

27  inventions.  *Id.* at 9–10.  Athalonz also argues that Curry has a unique perspective on the value of

28  the purportedly infringing aspects of Under Armour's shoes because Curry wears those shoes in

United States District Court
Northern District of California

6

1  competition.  *Id.* at 8–9.  Athalonz notes Judge Gilstrap's conclusion, in denying the motion to

2  transfer, that fellow professional athlete Jordan Spieth's testimony would be relevant based on

3  public statements that Spieth was involved in Under Armour's design process.  *Id.* at 10–11.

4  Athalonz asks the Court to disregard William Austin and Ryan Drew's declarations regarding

5  Curry's purported lack of relevant knowledge, arguing that they lack sufficient foundation to show

6  those witnesses know what features are at issue in this litigation, and that they contradict Under

7  Armour's public statements.  *Id.* at 11–13.  Athalonz contends that *Battle Fashions* is

8  distinguishable in that there is greater evidence of Curry's involvement here than in that case, and

9  that *Amini* differed from the case at hand with respect to both the timing of the subpoena and the

10  degree of involvement of the celebrity movant in the products at issue.  *Id.* at 13–14.

11      Curry argues in his Reply that this case is solely about the soles of shoes, and that he has

12  offered competent evidence that he was not involved in designing the soles of Under Armour's

13  shoes.  Reply (ECF No. 14) at 1–4.  Curry also argues that he lacks relevant knowledge of the

14  market for these products, and that his personal perception of the shoes he wears in competition is

15  not relevant to Athalonz's claims.  *Id.* at 4.  He contends that Judge Gilstrap's conclusions

16  regarding Jordan Spieth's relevance to the case were erroneous and based on an incomplete

17  record—unlike here, where Curry has offered declarations from Under Armour's employees to

18  explain Curry's limited involvement and knowledge.  *Id.* at 4–5.  Curry argues that Under Armour

19  has already identified relevant employee witnesses and either produced or agreed to produce

20  relevant documents in the underlying litigation.  *Id.* at 7–8.

21      Curry contends that sitting for a deposition would be unduly burdensome in light of his

22  schedule as a professional basketball player.  Mot. at 11.  Athalonz argues that Curry's game

23  schedule with the Golden State Warriors is less demanding than a typical five-day-a-week job, and

24  asserts that it is amenable to finding a mutually agreeable date for Curry's deposition.  Opp'n at

25  15.  Curry responds that he has significant commitments beyond the Warriors' games, both during

26  and outside of the NBA season.  Reply at 8–9.

27      Finally, Curry argues that Athalonz's document requests are overbroad, both as to subject

28  matter and for failure to specify a limited period of time, and that Athalonz failed to provide

United States District Court
Northern District of California

1    sufficient time for him to comply with those requests.  Mot. at 11–14.  Athalonz acknowledges that

2    Curry has responded sufficiently to its first two document requests (by asserting that he is unaware

3    of responsive documents), and argues that its remaining requests are relevant and could be further

4    tailored as needed.  Opp'n at 15–17.  Athalonz asserts that to the extent some responsive

5    documents might also be available from Under Armour, Curry's counsel (whom he shares with

6    Under Armour) could "easily coordinate to avoid unnecessary duplication."  *Id.* at 17.  Athalonz

7    also argues that the two weeks it allowed for production of documents was reasonable, but in any

8    event that the dates stated on the subpoena "were only meant to be placeholders and were subject

9    to negotiation."  *Id.* at 18–19.  Athalonz argues that quashing the subpoena for failure to provide

10   sufficient time would be inefficient, as that would only result in Athalonz serving a materially

11   identical subpoena with new compliance dates.  *Id.* at 19.  Curry's Reply generally renews the

12   arguments from his Motion regarding burden, overbreadth, and timing, and argues that his sharing

13   counsel with Under Armour does not negate the general rule that Athalonz should pursue

14   discovery from its party opponent before resorting to a subpoena to a non-party.  Reply at 8–10.

15   **III.    ANALYSIS**

16        **A.    Legal Standard**

17        A motion to quash a subpoena must be brought in the district where compliance is

18   required, and may be transferred to the issuing district only upon either consent of the recipient of

19   the subpoena or a showing of exceptional circumstances.  Fed. R. Civ. P. 45(d)(3), (f).

20        A court must quash a subpoena that "fails to allow a reasonable time to comply" or

21   "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(i), (iv).  "Although irrelevance is

22   not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have

23   incorporated relevance as a factor [related to undue burden] when determining motions to quash a

24   subpoena."  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).

25        "The scope of discovery under Rule 45 is the same as under Rule 26(b)."  *Waymo LLC v.*

26   *Uber Techs., Inc.*, No. 17-cv-00939-WHA(JSC), 2017 WL 2929439, at *2 (N.D. Cal. July 7,

27   2017).  That said, the "Ninth Circuit has long held that nonparties subject to discovery requests

28   deserve extra protection from the courts."  *Maplebear Inc. v. Uber Techs., Inc.*, No. 21-mc-80007-

SK, 2021 WL 1845535, at *1 (N.D. Cal. Mar. 23, 2021) (citation omitted); *High Tech Med.*

*Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing *United*

*States v. C.B.S.*, 666 F.2d 364, 371–72 (9th Cir. 1982)).

> "In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests." *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (collecting cases). When the requesting party has "not shown [that it] attempted to obtain documents from the [opposing party] in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party." *Id.* Further, "when an opposing party and a non-party both possess documents, the documents should be sought from the party to the case." *Soto*, 282 F.R.D. at 505.

*Genus Lifesciences Inc. v. Lannett Co., Inc.*, No. 18-cv-07603-WHO, 2019 WL 7313047, at *4

(N.D. Cal. Dec. 30, 2019) (quashing a subpoena where the requesting party had not first sought

the same materials from the opposing party, who would have been expected to have them).

### A.    Athalonz Has Not Shown Curry Has Unique and Relevant Knowledge

Ascertaining the nature of the underlying litigation is a useful starting point to assessing the relevance of potential discovery from Curry, and thus whether any burden of allowing Athalonz to pursue that discovery is warranted.  This case is about soles.

Athalonz argues that its claims and infringement contentions are not limited to the shape and materials of shoe soles, but instead that each of its patents "broadly claim[s] and cover[s] an entire athletic shoe".  ECF No. 11 (Opp'n) at 2–3.  The patent claim that Athalonz quotes to support that argument, however, reads as follows:

> A shoe comprises:
>
>> an upper section;
>>
>> a midsole coupled to the upper section;
>>
>> an insole positioned proximal to the midsole and within the upper section; and
>>
>> a bottom outsole coupled to the midsole, wherein a combination of the midsole, the insole, and the bottom outsole form an athletic positioning shape, wherein the athletic positioning shape has:
>>
>>> a first height at an inside edge and at an outside edge of the shoe along a heel section of the shoe,

United States District Court
Northern District of California

> a second height on the outside edge of the shoe at a toe section of the shoe,
>
> a third height on the inside edge of the shoe at the toe section of the shoe, and
>
> the first height being greater than the second height and the second height being greater than the third height, wherein a first slope is formed by the first height and the second height, wherein a second sloped is formed by the first height and the third height, and
>
> wherein a third slope is formed by the second height and the third height.

Opp'n at 3 (quoting ECF No. 11-1 at 130, U.S. Patent No. 11,013,291 at 43:13–36).

Other than the recitation of a generic "upper section" of the shoe in the first six words of the claim, this patent claim focuses entirely on the sole. There is no indication that the existence of an "upper section" of Under Armour's shoes is in dispute. The dependent claims of that patent, which Athalonz asserts "add further limitations," only describe additional features of the "athletic positioning shape" created by the various parts of the sole. ECF No. 11-1 at 130. Athalonz's complaint similarly describes the technology at issue as related to the shape and compressibility of athletic shoes' soles. ECF No. 1-1 at 8–11, 13–15 (Compl. ¶¶ 15–18, 23–24). Athalonz has not included any of the other patents at issue in the record before this Court, and has not shown that this case relates to any feature of Under Armour shoes besides their soles.

It is not unreasonable for Athalonz to have understood press coverage and Under Armour's public statements as indicating that Curry is meaningfully involved in the design and development of Under Armour's shoes. *E.g.*, ECF No. 11-1 at 143 ("Curry says that . . . he remains intimately involved with the creation of each sneaker [including] picking materials that will improve performance . . . ."). There is perhaps even some indication that he played a role in developing those shoes' soles. *E.g.*, ECF No. 11-1 at 157 ("And the last thing that's always important to Curry is traction, right?"); *id.* at 175 (quoting Curry as stating, "When designing this shoe, *we* wanted athletes to have the ultimate experience . . . when it comes to comfort and to traction . . . ." (emphasis added)). As Athalonz notes, Judge Gilstrap previously indicated that similar public statements regarding Jordan Spieth's involvement in designing Under Armour shoes supported finding Spieth's testimony relevant to the case.

United States District Court
Northern District of California

1    Curry, however, has offered evidence that he is *not* involved with that design process.  ECF

2    No. 1-2 (Austin Decl. ¶ 4); ECF No. 1-3 (Drew Decl. ¶¶ 5–6).  This record here therefore differs

3    from the motion to transfer, where Judge Gilstrap relied on Athalonz's allegations and Spieth's

4    public statements to assess Spieth's potential relevance, apparently without evidence to the

5    contrary from Under Armour.  *See Athalonz*, 2023 WL 8809293, at *3, *5.

6    Athalonz is entitled to test the accuracy of the declarations Curry offers, but it can do so in

7    the first instance through discovery from its party opponent, Under Armour.  As a general rule,

8    parties must pursue discovery from other parties before issuing subpoenas to non-parties, at least

9    where a party could reasonably be expected to have the same information.  *See Genus*

10   *Lifesciences*, 2019 WL 7313047, at *4.  Requiring Athalonz to exhaust party discovery first is

11   particularly appropriate here, given that Athalonz will need to review documents and depose

12   witnesses from Under Armour regarding the design and development of Under Armour's shoes

13   regardless of whether Curry is also a relevant witness.  (Athalonz has sued Under Armour, not

14   Curry, for infringement, and neither Athalonz nor the public sources of information on which it

15   relies suggest that Curry developed the shoes at issue independently, without involvement by

16   Under Armour.)  Such discovery can be expected to reveal any involvement that Curry might have

17   had in developing the allegedly infringing soles of Under Armour's shoes.

18   It is not clear that Curry's personal experience wearing Under Armour shoes in competition

19   sheds meaningful light on the economic value of Athalonz's claimed invention.  To the extent that

20   purportedly infringing features may have contributed to sales of Under Armour's shoes, as might

21   be relevant to Athalonz's damages, that is more likely to be shown through the manner in which

22   Under Armour marketed its shoes or through comparisons to sales of other products not alleged to

23   infringe Athalonz's patents.  Whether Under Armour's marketing highlighted the purportedly

24   infringing features, and whether Curry played any role in such marketing, are matters that

25   Athalonz can and should explore through discovery from Under Armour before resorting to a

26   subpoena to a non-party.  Even assuming for the sake of argument that Curry's own perception of

27   the value of certain design features were relevant and sufficient to warrant Curry's deposition,

28   efficiency would still favor requiring Athalonz to pursue discovery from Under Armour as to

1   Curry's role in the design and marketing of the shoes before any such deposition takes place, so

2   that the Court could make an informed decision as to whether any limits on the scope of that

3   deposition (and any accompanying document requests) are appropriate to avoid undue burden.

4          Athalonz also argues that Curry's perspective is relevant to assessing the level of skill of a

5   "person of ordinary skill in the art" (POSITA) and whether such a person would have considered

6   Athalonz's claimed inventions obvious, a consideration relevant to patent validity.  Opp'n at 10

7   (citing 35 U.S.C. § 103(a)).  Curry's primary profession is playing basketball, not designing shoes.

8   Under Armour presumably employs many shoe designers who are skilled in the art and whom

9   Athalonz can depose through party discovery.  If discovery from Under Armour reveals—contrary

10  to the declarations Curry has submitted—that Curry played a meaningful role in designing the

11  allegedly infringing features of Under Armour's shoes, then questions to Curry regarding the

12  POSITA inquiry could perhaps be relevant.  But Athalonz should first make such a showing

13  through party discovery.

14         Fact discovery does not close in this case until October 15, 2024.  ECF No. 1-1 at 131.

15  Even allowing for a somewhat earlier practical deadline that would allow discovery from Curry to

16  factor into Athalonz's expert disclosures due that same day, *see id.*, there is ample time for

17  Athalonz to pursue depositions and document discovery from Under Armour that will help assess

18  whether Curry could be expected to offer uniquely relevant testimony.  At the hearing, Athalonz's

19  counsel asserted that Athalonz has not pursued party depositions because it is awaiting a decision

20  from Judge Gilstrap on disputes over potentially relevant document requests.  Even if Athalonz

21  has good reasons to wait before taking those depositions, that is no reason why Curry's third-party

22  deposition must proceed now, before Athalonz has determined what information—both as to the

23  merits of its claims and as to Curry's potential role—can be obtained from a party opponent.

24         The Court therefore GRANTS Curry's Motion to quash Athalonz's subpoena to the extent

25  it seeks Curry's deposition, without prejudice to Athalonz serving a new subpoena if it still

26  believes Curry's testimony is relevant after completing relevant discovery from Under Armour in

27  the Eastern District of Texas, including depositions of Under Armour employees responsible for

28  the design, development, and marketing of the Curry-brand shoes at issue.

United States District Court
Northern District of California

12

1

**B.      Athalonz Has Not Shown Curry Has Unique and Relevant Documents**

2

For much the same reasons that a deposition of Curry would be premature, Athalonz

3

should also be required to pursue discovery from Under Armour before seeking documents from

4

Curry.

5

As a threshold issue, it is not obvious that there is a ripe dispute over the document

6

requests, since Curry served timely objections to all such requests and Athalonz has not brought a

7

motion to compel.  That said, efficiency favors reaching the propriety of Athalonz's document

8

requests, which both parties seem to agree is properly before the Court.

9

Athalonz does not seem to dispute that most of the documents it seeks from Curry are

10

likely also, if not exclusively, in Under Armour's possession.  The fact that some such documents,

11

like Under Armour's contracts with its sponsored athletes, are the subject of pending discovery

12

disputes in the Eastern District of Texas, *see* ECF No. 14-2 at 7–8 (Under Armour's opposition to

13

Athalonz's pending motion to compel), both confirms that Athalonz expects Under Armour to

14

have such documents and raises questions of whether Athalonz hopes to use this subpoena as an

15

end run around a potentially adverse discovery ruling from the presiding judge.[3]

16

The Court therefore GRANTS the Motion to quash Athalonz's subpoena to the extent that

17

it seeks documents from Curry, without prejudice to Athalonz serving a renewed subpoena if and

18

only if discovery from Under Armour indicates that Curry is likely to possess relevant and non-

19

duplicative documents.  The Court does not reach the parties' arguments regarding specific

20

discovery requests or the time that Athalonz provided for Curry to respond.  If Athalonz

21

determines that a renewed subpoena is necessary, the parties are instructed to meet and confer as

22

to an appropriate deadline to respond.

23

**IV.      CONCLUSION**

24

For the reasons discussed above, the Court GRANTS Curry's Motion to Quash, without

25

prejudice to Athalonz serving a renewed subpoena after it has conducted relevant discovery from

26

Under Armour to determine whether Curry is likely to have relevant and non-duplicative

27

28

---

[3] As of February 13, 2024, Judge Gilstrap has not decided the motion to compel.

United States District Court
Northern District of California

1    knowledge or documents.

2           At the hearing, Curry's counsel agreed to accept service of any such subpoena.  If a

3    renewed subpoena is served, the parties are instructed to follow Section F.5 of the Court's

4    standing order for raising any dispute with the Court, and to file any joint discovery letter

5    involving a dispute either to enforce or to quash that subpoena in this case (23-mc-80324-LJC).

6    The Clerk shall close the case, without prejudice to reopening it if a joint discovery letter is filed.

7           **IT IS SO ORDERED.**

8    Dated: February 14, 2024

9

10

11                                                          LISA J. CISNEROS
                                                            United States Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California