Jennifer Estremera (CA Bar No. 251076)
jestremera@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Connor S. Houghton (*pro hac vice*)
choughton@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7311
Facsimile: (650) 623-1449

Attorneys for Plaintiff
*Athalonz, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ATHALONZ, LLC, | Case No. 3:23-mc-80324-LJC |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE** |
| UNDER ARMOUR, INC., | |
| Defendant. | |

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

**PLEASE TAKE NOTICE THAT** Plaintiff Athalonz, LLC hereby moves the Court for a *de*

3

*novo* determination of those portions of the Magistrate Judge's Order Granting Motion to Quash

4

Subpoena to which Athalonz objects (Dkt. 23). Judge Cisneros issued the order being objected to on

5

February 14, 2024, which terminated civil miscellaneous case number 3:23-mc-80324, originally

6

filed on December 8, 2023. Athalonz seeks de novo review from the General Duty Judge on the date

7

the motion to quash was filed at a date and time convenient to the Court.

8

Athalonz's motion is made pursuant to Federal Rule of Civil Procedure 72(b), Civil Local

9

Rule 72-3, and the Court's General Order No. 44 regarding civil miscellaneous case assignments.

10

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities,

11

the record before and considered by the Magistrate Judge, further briefing in reply to any opposition

12

by Mr. Curry, and any other matters of which the Court may take notice. As set forth below, the order

13

was based on a legal and factual error: the order failed to consider the patented *invention as a whole*,

14

in contravention of black letter law, and thus relied on a misunderstanding of Athalonz's patent claims

15

and the products they cover. Athalonz therefore seeks *de novo* determination and an order denying

16

Mr. Curry's motion to quash the deposition subpoena.

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED ................................................. 2

III.    STATEMENT OF JURISDICTION ................................................................. 2

IV.     FACTUAL BACKGROUND ............................................................................ 4

V.      OBJECTIONS TO MAGISTRATE JUDGE'S ORDER ................................. 5

        A.     Legal standard. ...................................................................................... 5

        B.     The court's conclusion that "this case is about soles" is erroneous. ........................... 6

        C.     Without that erroneous finding, the motion to quash should be denied because Mr.
               Curry has unique, relevant information. ................................................. 8

VI.     CONCLUSION ................................................................................................. 11

PLAINTIFF'S MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
Case No. 3:23-mc-80324-LJC

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*CF & I Steel Corp. v. Mitsui & Co. (U.S.A.),*
5
    713 F.2d 494 (9th Cir. 1983)...............................................................................................2

6

*Athalonz LLC v. Under Armour, Inc.,*
    2023 WL 8809293 (E.D. Tex. Dec. 20, 2023)......................................................................9

7

*Audatex N. Am. Inc. v. Mitchell Int'l, Inc.,*
8
    2014 WL 6469425 (S.D. Cal. Nov. 14, 2014)......................................................................7

9

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.,*
10
    809 F.3d 1295 (Fed. Cir. 2015).............................................................................................8

11

*CPC Pat. Techs. Pty Ltd. v. Apple, Inc.,*
    34 F.4th 801 (9th Cir. 2022) .................................................................................................3

12

*Exxon Chem. Pats., Inc. v. Lubrizol Corp.,*
13
    64 F.3d 1553 (Fed. Cir. 1995).............................................................................................6

14

*General Foods Corp. v. Studiengesellschaft Kohle mbH,*
15
    972 F.2d 1272 (Fed. Cir. 1992)...........................................................................................7

16

*In re Hiniker Co.,*
    150 F.3d 1362 (Fed. Cir. 1998)...........................................................................................6

17

*Hologram USA, Inc. v. Pulse Evolution Corp.,*
18
    2016 WL 3353935 (D. Nev. June 10, 2016)........................................................................7

19

*ICON Health & Fitness, Inc. v. Horizon Fitness, Inc.,*
20
    2009 WL 10677745 (E.D. Tex. Mar. 16, 2009)...................................................................7

21

*Indacon, Inc. v. Facebook, Inc.,*
    2012 WL 12538968 (W.D. Tex. Feb. 14, 2012)..................................................................7

22

*Jones v. PGA TOUR, Inc.,*
23
    668 F. Supp. 3d 907 (N.D. Cal. 2023) .............................................................................3, 5

24

*Kyocera Wireless Corp. v. ITC,*
    545 F.3d 1340 (Fed. Cir. 2008)...........................................................................................6

25

*Micro Motion, Inc. v. Kane Steel Co.,*
26
    894 F.2d 1318 (Fed. Cir. 1990)...........................................................................................3

27

*Multiform Desiccants, Inc. v. Medzam, Ltd.,*
28
    133 F.3d 1473 (Fed. Cir. 1998)...........................................................................................6

*Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC*,
    2016 WL 5930289 (N.D. Cal. Oct. 11, 2016) ........................................................... 5

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ............................................................................ 8

**Federal Statutes**

28 U.S.C. § 636(c) ...................................................................................................... 4

**Rules**

Fed. R. Civ. P. 72 ............................................................................................... *passim*

Local Civil Rule 72-2 ................................................................................................ 4

Local Civil Rule 72-3 ............................................................................................. 2, 3

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    INTRODUCTION

3        The order quashing Athalonz's subpoena to Mr. Curry rests entirely on a fundamental error:

4   "This case is about soles." Dkt. 23 at 9. The court therefore erroneously concluded that the case does

5   not involve "any feature of Under Armour shoes besides their soles," *id.* at 10.  The court ultimately

6   granted the motion to quash based on hearsay declarations from Mr. Curry's agent and a previously-

7   unidentified Under Armour employee, stating that Mr. Curry is not involved in designing the *soles* of

8   Under Armour's shoes.

9        But this case is about much more than "soles." The underlying patent infringement case

10  pending between Athalonz and Under Armour is about athletic shoes—as relevant here, Stephen

11  Curry's signature Curry-brand shoes. Those products infringe Athalonz's five asserted patents which

12  undisputedly claim and cover "shoes"—not "soles." The court's decision to limit discovery to only

13  the "soles" of Under Armour's infringing shoes—which is the "starting point" of its analysis—is

14  contrary to black-letter patent law. As the Federal Circuit has made clear in case after case, "[t]he

15  name of the game is the claim." When a patent claims an entire product (like a shoe), the court cannot

16  limit discovery to only the allegedly novel individual features (like the shape and material of the

17  shoe's sole). Such a rule would lead to absurd results in almost every case. Defendants would never

18  need to produce information about their products, and instead could unilaterally limit the case to a

19  single limitation of a patent claim standing in isolation, without reference to what the claim as a whole

20  covers. Here, such a rule would bar, for example, discovery into Curry's undisputed role testing how

21  the shoe performs *as a whole* (which inherently includes how the sole performs), as long as he never

22  referred to the sole in isolation. That is not—and cannot be—how discovery (or patent law) works.

23  Instead, courts regularly grant discovery even for *products* that are not accused of infringement due

24  to their relationship with those that are, let alone *features* of products that are accused of infringement.

25        Once the court's erroneous "starting point" is put aside, the rest of its order makes clear that

26  the motion to quash should be denied. There is no legitimate dispute in this case that Mr. Curry is

27  intimately involved in the design, development, marketing, and advertising of the Curry-brand shoes

28  accused of patent infringement, and thus has relevant and unique knowledge. Mr. Curry has unique,

relevant information about the Curry products that is relevant to Athalonz's damages claims and to the validity of its patents. Athalonz cannot get that information from any UA witnesses, who have not worn the Curry products in a professional sports environment and who do not have the first-hand knowledge of the value and benefits the Curry products bring to the market as compared to other shoes. Further discovery from UA will not and cannot shed light on what exactly Mr. Curry was thinking when designing the Curry products, why he wanted particular features, and how those features benefitted him personally in his professional basketball career. Significantly, the court in the underlying case has already recognized that Under Armour's sponsored athletes like Mr. Curry are key witnesses for Athalonz's claims and that their testimony will be relevant and highly material to Athalonz's claims. And that court has already rejected similar attempts by Under Armour to distance its sponsored athletes, including Mr. Curry and Jordan Spieth, from this case due to their alleged lack of involvement in the "accused features."

The court's denial of Athalonz's ability to take important discovery from Mr. Curry is highly prejudicial, and because it rests on a fundamental error, should be reversed on a *de novo* review. Even if the Court is inclined to order Athalonz to take additional discovery from UA before re-serving a subpoena on Mr. Curry, it should correct the opinion's errors so that Athalonz can present evidence of Mr. Curry's relevance under the correct framework next time around.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should grant Athalonz's objections to the order granting Mr. Curry's motion to quash, and on *de novo* review, deny the motion to quash.

## III.    STATEMENT OF JURISDICTION

Athalonz files this Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge pursuant to Federal Rule of Civil Procedure 72(b) and Local Civil Rule 72-3. The underlying litigation giving rise to this subpoena is pending in the Eastern District of Texas: *Athalonz, LLC v. Under Armour, Inc.*, No. 2:23-cv-00193-JRG (E.D. Tex.). This case arises from Mr. Curry's motion to quash a subpoena, filed on December 8, 2023 as new civil miscellaneous matter number 3:23-mc-80324 (N.D. Cal).

Judge Cisneros' order quashing Mr. Curry's subpoena in this miscellaneous case is a final, dispositive order that would otherwise be appealable if issued by a District Judge. *See CF & I Steel Corp. v. Mitsui & Co. (U.S.A.)*, 713 F.2d 494, 496 (9th Cir. 1983) ("[W]here as here, the district court granting the motion to quash is in a different district from the court hearing the merits, the order is reviewable before final judgment."); *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1320 (Fed. Cir. 1990) ("An order quashing a subpoena in an ancillary proceeding not only terminates that proceeding but also is unreviewable on appeal of the final judgment in the principal action. Thus, such order is deemed a final order and is immediately appealable as of right.") (citation omitted). However, this case was assigned to a Magistrate Judge and resulted in an order on a "pretrial matter dispositive of a claim or defense," i.e. the entire miscellaneous case. *See* Fed. R. Civ. P. 72(b). General Order No. 44 states that the following assignment plan applies to civil miscellaneous matters filed in this Court:

> Upon filing, unless exempted by Local Rule, order of a judge of this court, or other provision of this general order, all civil miscellaneous matters will be randomly assigned in the first instance to a magistrate judge who will either resolve the matter or, if necessary, prepare a report and recommendation and request assignment of the matter to the district judge who was the general duty judge on the date the miscellaneous matter was filed. Any objections to the magistrate judge's order or report and recommendation will be resolved by that district judge. *See* Fed. R. Civ. P. 72.

*See* N.D. Cal. General Order No. 44, § E.3 (amended Jan. 1, 2018).

In this case, Mr. Curry filed a motion to quash on December 8, 2023, initiating a new miscellaneous case. As set forth in General Order No. 44, this case was automatically assigned to Magistrate Judge Lisa Cisneros on intake. Dkt. 4. Judge Cisneros issued a final order on February 14, 2024, which granted Mr. Curry's motion to quash and terminated this proceeding. Dkt. 23. While that order does not specify whether or not it is a report and recommendation or advise the parties of their rights to object, because the order is dispositive and would otherwise be appealable, it cannot be "resolve[d]" by a Magistrate Judge without consent of both parties and must be treated as a report and recommendation pursuant to Federal Rule of Civil Procedure 72(b) and Local Civil Rule 72-3. *See Jones v. PGA TOUR, Inc.*, 668 F. Supp. 3d 907, 916 (N.D. Cal. 2023) (a decision on a motion to quash by a Magistrate "raised in a separate miscellaneous action" is "fully dispositive of the discovery

obligations between the only parties to that action, triggering application of Rule 72(b)."); *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 807-08 (9th Cir. 2022) (finding that a ruling on a "freestanding subpoena request" filed on its own apart from another federal lawsuit and assigned to a Magistrate by default under General Order 44 § E.3 "necessarily disposes of the ultimate relief sought in the federal case" and therefore must be treated as a dispositive matter).[1]

Athalonz was never directed to or given the opportunity to consent or decline to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c); as a result, Athalonz did not consent to Magistrate Judge jurisdiction. On December 18, 2023, two notices were put on the docket, directing that "Party Wardell Stephen Curry II shall file a consent or declination to proceed before a magistrate judge." The first notice directed consent/declination by December 22, 2023, Dkt. 5, and the second notice directed consent/declination by January 2, 2024, Dkt. 6. However, both notices were removed from the docket and a note was added stating "***DISREGARD, FILED IN ERROR.***". On January 2, 2024, Mr. Curry did file a consent to a magistrate judge. Dkt. 10. However, according to General Order No. 44, such consent was not contemplated in this case, regardless of Mr. Curry's filing, and in any event was never given by Athalonz—therefore the court had no authority to proceed under 28 U.S.C. § 636(c). The procedure in General Order No. 44 instead states that all civil miscellaneous matters are automatically assigned to a Magistrate Judge who "will either resolve the matter or, if necessary, prepare a report and recommendation," and permits objections to the order or report and recommendation that will be resolved by the general duty judge on the date the miscellaneous matter was filed. Athalonz's motion here is brought according to that procedure.

Thus, the Court has jurisdiction over Athalonz's motion filed here and should review the order granting the motion to quash and issue a *de novo* determination.

## IV.    FACTUAL BACKGROUND

The factual background relevant to this Motion is set forth in detail in Athalonz's opposition to Mr. Curry's motion to quash. *See* Dkt. 11 at 2-6. Briefly, Athalonz and UA are involved in patent litigation in the Eastern District of Texas, where Athalonz accuses UA of willfully infringing five of

---

[1] To the extent the Court believes the order granting the motion to quash is instead a non-dispositive matter, Athalonz requests that the Court consider its motion under Fed. R. Civ. P. 72(a) and L.R. 72-2.

its patents. About half of the Accused Products are within UA's Curry Brand. Stephen Curry is the President of UA's Curry Brand, and Athalonz presented extensive evidence showing Mr. Curry is deeply involved in the design, development, and marketing of his signature Curry-brand basketball shoes. *See* Dkt. 11-1, Exs. C-H. Based on that involvement, Athalonz served a subpoena on Mr. Curry in November 2023, seeking a deposition and document production.

As particularly relevant here, Athalonz explained in detail in the opposing Mr. Curry's motion to quash why "neither Athalonz's patent claims nor its infringement contentions are limited to 'specific accused features' relating only to the shape and materials of the sole of a shoe." *Id.* at 2-3. Athalonz also explained Mr. Curry's involvement in the Accused Products and why his unique knowledge was significant to Athalonz's claims. Dkt. 11 at 8-14.

Mr. Curry filed this motion to quash, initiating a new civil miscellaneous case, on December 8, 2023. Judge Cisneros issued an order granting Mr. Curry's motion to quash without prejudice on February 14, 2024. Dkt. 23.

## V.     OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

Athalonz objects pursuant to Fed. R. Civ. P 72(b) to Section III.A of the court's order (Dkt. 23 at 9-12), which improperly granted the motion to quash Mr. Curry's deposition subpoena based on an erroneous understanding of the scope of Athalonz's patent claims and related discovery. At this time, while Athalonz disagrees with its conclusions, it does not object to Section III.B of the order, and instead intends to follow the order's directions to wait for document discovery from Under Armour before renewing its document subpoena to Mr. Curry if necessary.

### A.     Legal standard.

"If a magistrate judge enters a recommended disposition on pretrial matters that are dispositive of a claim or defense, any party may file written objections to the proposed findings and recommendations." *Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC*, 2016 WL 5930289, at *5 (N.D. Cal. Oct. 11, 2016) (citing Fed. R. Civ. P. 72(b)); *see also Jones*, 668 F. Supp. 3d at 916 (N.D. Cal. 2023) (a decision on a motion to quash by a Magistrate in a separate miscellaneous matter

triggers application of Rule 72(b))[2] "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**B.    The court's conclusion that "this case is about soles" is erroneous.**

Here, the court's decision to quash Athalonz's deposition subpoena to Mr. Curry is based on the flawed premise that "[t]his case is about soles." Dkt. 23 at 9. This mistaken understanding of the claims formed the court's "starting point" for its "assess[ment] [of] the relevance of potential discovery from Curry, and thus whether any burden of allowing Athalonz to pursue that discovery is warranted." *Id.* That is, the court's analysis was premised on its determination that "[t]his case is about soles." *Id.* But the court's conclusion overlooks the actual language of the patent claims that define the scope of the invention and instead improperly focuses on what Mr. Curry alleges is *new* in the individual claim elements, as opposed to what they cover *as a whole*. As explained in the next section, once the claim is considered *as a whole*, the court's remaining analysis shows that Mr. Curry has unique, relevant information, and thus the motion to quash should be denied.

In patent cases, "the name of the game is the claim." *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998) (quoting Giles Sutherland Rich, Extent of Protection and Interpretation of Claims—American Perspectives, 21 Int'l Rev. Indus. Prop. & Copyright L. 497, 499 (1990)). "The claims are concise statements of the subject matter for which the statutory right to exclude is secured by the grant of the patent." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1476 (Fed. Cir. 1998). The court "does not interpret claim terms in a vacuum, devoid of the context of the claim as a whole," *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340 (Fed. Cir. 2008), and "must give meaning to all the words in [the] claims," *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995). Indeed, the Federal Circuit has described the impropriety of the type of analysis done in this case:

---

[2] To the extent the Court believes this motion is an objection to a non-dispositive pretrial matter, "the district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

> That being the essential nature of patent claims, it follows that each claim is an entity which must be considered as a whole. It cannot be said-though it often is, incorrectly, by the uninitiated-that a part of a claim is "claimed" subject matter. For example, a claim to a process comprising the step A followed by step B followed by step C defines, as a matter of law, only the A-B-C process and one cannot properly speak of any single step as being "claimed," for it is not; all that is claimed is the process consisting of the combination of all three steps. Such a claim, therefore, creates no patent right or monopoly in step A, no right to prevent others from using step A apart from the combination of steps A-B-C. Step A is not "patented."

> Another way of stating the legal truism is that patent claims, being definitions which must be read as a whole, do not "claim" or cover or protect all that their words may disclose. Even though the claim to the A-B-C combination of steps contains a detailed description of step A, that does not give the patentee any patent right in step A and it is legally incorrect to say that step A is "patented."

*General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274-75, (Fed. Cir. 1992).

Extending this principle, discovery in patent cases should relate to the accused products that are claimed in the patents, and not particular features that are mere limitations within those patents. *See, e.g.*, *Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*, 2014 WL 6469425, at *4 (S.D. Cal. Nov. 14, 2014) (holding that "under the broad scope of discovery, Plaintiff has established that it is entitled to the requested (and ordered) discovery relating to all of the components" of the accused product); *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2016 WL 3353935, at *4 (D. Nev. June 10, 2016) (collecting cases where "the scope of discovery is limited to **products** specifically identified in the infringement contentions." (emphasis added)); *Indacon, Inc. v. Facebook, Inc.*, 2012 WL 12538968, at *5 (W.D. Tex. Feb. 14, 2012) (ordering discovery directed on Facebook's overarching system, and not limited to an individual accused feature, because "plaintiff is not alleging that a single isolated component of Facebook's system infringes upon its patent, but rather tha[t] core features of Facebook's system infringe upon plaintiff's patents"); *ICON Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 WL 10677745, at *3 (E.D. Tex. Mar. 16, 2009) (ordering discovery relating to all research and development documents and all marketing documents for all Accused Products and any products "reasonably similar").

Here, Athalonz's patent claims plainly each cover "shoes" and are not limited to "soles" of shoes. *See* Dkt. 11-1, Ex. B (U.S. Patent No. 11,013,291, claim 1: "A shoe comprises…"); *see also*

-7-

Dkt. 11 at 3 (quoting the other four Asserted Patents, which also claim "a shoe comprises," "a pair of shoes comprises," "an athletic shoe comprises," and "an athletic shoe comprises"). Despite this language, however, the court improperly considered only certain limitations of the claims and concluded "[t]his case is about soles." Dkt. 23 at 9. The court reached its conclusion about the scope of the claims without citing any supporting legal authority. But that conclusion is contradicted by clear Federal Circuit precedent that every word in the claim must be given meaning—the court cannot simply choose (as it did here) to ignore the first six words of a claim. Significantly, nowhere in the order does the court cite any law on claim construction, claim scope, or claim coverage. This error permeates the court's entire approach to resolving Mr. Curry's motion, and as a result, should be set aside on *de novo* review.

Even if the Court believes the soles are the most *important* individual features in the claims as a whole, discovery relating to the entire Accused Products from Mr. Curry is still necessary to properly apportion Athalonz's damages. "[A]ll expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (citing *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014)). Here, even if the court believes the soles are the only infringing features of the Accused Products, Athalonz is still entitled to take discovery relating to the other, purportedly unclaimed features in the patents and their value to the Accused Products. Significantly, the "soles" are not a product themselves, and are not sold separately.  Discovery as to all of the features of the Accused Products—shoes—is critical to damages.  Again, the court's opinion did not take this into account at all when considering Mr. Curry's motion, instead finding that only discovery relating to the infringing features was relevant.

### C. Without that erroneous finding, the motion to quash should be denied because Mr. Curry has unique, relevant information.

Once the legally erroneous finding that "[t]his case is about soles" is removed from the order, the rest of the record makes clear that Mr. Curry's motion to quash should be denied. Athalonz set forth compelling evidence showing that Mr. Curry has deep involvement in the design and development of the Curry-brand shoes accused of patent infringement. For instance, Mr. Curry is

"intimately involved with the creation of each sneaker in his line," including in "picking materials that will improve performance." Dkt. 11-1, Ex. D; *see also*, *e.g.*, *id.*, Ex. E ("Curry is heavily involved in the design of the shoes"); *id.*, Ex. F ("Steph is fully involved from start to finish"). Mr. Curry was recently named "President of the Curry Brand" where he is involved in "product development," including by "provid[ing] key insights on Under Armour product technologies such as UA Charged, UA HOVR, UA Warp, and UA Flow." *Id.*, Ex. C. UA Flow is the new material used in the sole of certain Curry-brand products accused of infringement. *Id.*

All of this involvement is significant, because it means Mr. Curry has unique knowledge about the Curry-brand products and the value and benefit of particular features of those products to the marketplace. Mr. Curry has a unique position as both the President of the Curry Brand and the NBA player that inspired and helped design the accused products—that means he has knowledge of how and why the accused products have been successful, what features and benefits are beneficial to users of those products, and what advantages his shoes have over other, non-infringing shoes on the market. All of this is highly relevant to damages and the *Georgia-Pacific* factors. Moreover, Mr. Curry also has unique information relevant to secondary considerations of non-obviousness, including long-felt need, failure of others, and commercial success. This is relevant to validity.

In the underlying litigation, Judge Gilstrap has recognized the significance of the type of information uniquely possessed by Mr. Curry. In denying UA's motion to transfer the underlying litigation from Texas to Maryland, the court agreed with Athalonz that Jordan Spieth—another UA sponsored athlete involved in designing and developing certain accused products—was a "key witness" for Athalonz's claims. *See Athalonz LLC v. Under Armour, Inc.*, 2023 WL 8809293, at *5 (E.D. Tex. Dec. 20, 2023). In particular, the court held that, similar to Mr. Curry, "Mr. Spieth allegedly helped Under Armour design the accused products, and he has advertised the shoes by wearing them at tournaments, putting them in the public's eye and promoting them before hundreds of thousands of people . . . Mr. Spieth's testimony would be relevant and highly material to Athalonz's case." *Id.*

Significantly, in resolving that earlier motion, the court rejected UA's attempts to make the ***same arguments*** made by Mr. Curry here. In particular, the court found that while UA claimed Mr.

Spieth's testimony was not material or relevant, its arguments were "unconvincing given the evidence from Mr. Spieth's own website where it states he was involved in designing the accused products." *Id.* at *6. In doing so, the court disposed of an attempt to distance both Mr. Spieth and Mr. Curry from the "accused features." Specifically, UA stated in its briefing that "Mr. Spieth and Mr. Curry did not design the features accused of infringement—Under Armour's designers did." *See Athalonz*, No. 2:23-cv-00193-JRG, Dkt. 29 (E.D. Tex. Oct. 5, 2023). Rejecting this argument, the court stressed that more general acts related to the products, like Mr. Spieth's acts of wearing the shoes at tournaments and putting them in the public's eye, as well as helping design the products, made him a key witness. *Id.* Judge Gilstrap was well aware of Athalonz's patent claims when he issued that decision, having presided over the case for nearly a year, and was not remotely moved by this same "accused features" argument.[3]

Tellingly, Mr. Curry had no answer to any of the evidence cited above—his reply brief did not address it other than brushing it off as only providing "high-level descriptions" of his involvement. Dkt. 14 at 2. Instead, the sole evidence Mr. Curry relied on was two declarations submitted by his agent and a UA employee—neither of whom were identified in discovery by UA in the underlying case as possessing relevant information. However, those declarations support only one point: that Mr. Curry does not design or develop the shape or materials used in the *soles* of the Curry shoes. *See* Dkt. 23 at 11 (citing Dkt. 1-2 ¶ 4; Dkt. 1-3 ¶¶ 5-6). The court's order relied on those declarations heavily in finding that Mr. Curry did not have unique, relevant information. But for the reasons above, Mr. Curry's involvement (or lack of involvement) in a single feature of the shoes accused of infringement is simply irrelevant—there is no legitimate dispute that he has unique, relevant information about the products as a whole.

Moreover, even assuming Mr. Curry was not involved in the "shape" or "material" chosen for the sole of the shoes does not mean he lacks relevant information. Clearly, Mr. Curry tested the accused products and gave feedback—there is no dispute about that, in the declarations or elsewhere.

---

[3] Under Armour has also resisted discovery on this basis, refusing to produce documents relating to the sponsored athletes (including Mr. Curry) beyond those related to what it unilaterally defines as "the accused features." Athalonz's motion to compel this information remains pending before Judge Gilstrap. *See* Dkt. 11-1, Ex. K at 5-7.

In doing so, of course Mr. Curry tested the shoe sole, including its shape and materials. Under Armour's own articles indicate that its product technologies like UA Flow that are used in the sole of the Curry shoes are "industry-leading" and significant to the products. Dkt. 11-1, Ex. C. At bottom, there is ample record support to meet the threshold finding of relevance necessary to show Athalonz is entitled to Mr. Curry's testimony. And further still, Mr. Curry's unique knowledge of the products as a whole and the value each of the features of those products brings to the market is highly relevant to apportionment, as UA's apparent position that only the soles of the shoes are patented means that all other allegedly valuable features must be accounted for in a reasonable royalty calculation.

Finally, even if this Court is inclined to order Athalonz to take additional discovery before re-serving a subpoena on Mr. Curry, it should correct these errors in the opinion. As it stands, because the opinion rests on the assumption that "this case is about soles" and that no other features of the UA products matter, Athalonz will presumably only succeed in defeating Mr. Curry's inevitable second motion to quash if it can satisfy the court that Mr. Curry was in fact responsible for developing the soles of the Curry-brand shoes. But as set forth above, that conclusion simply cannot stand. Athalonz has already presented extensive evidence showing Mr. Curry's involvement and unique information relating to the design, development, testing and marketing of the Curry-brand accused products as a whole. While Athalonz believes that should be sufficient to defeat the motion to quash at this stage, to the extent the Court agrees additional discovery from UA must be taken before deposing Mr. Curry, it should still correct the opinion's errors so that Athalonz can seek necessary discovery later applying the correct legal and factual framework.

## VI.    CONCLUSION

Athalonz respectfully requests that the Court grant Athalonz's objections, and on *de novo* review, deny Mr. Curry's motion to quash.

1  Dated: February 27, 2024                Respectfully submitted,

2

3                                          REICHMAN JORGENSEN LEHMAN &
                                           FELDBERG, LLP
4

5                                          By  */s/ Jennifer Estremera*
                                           _____
6                                          Attorneys for Plaintiff
                                           ATHALONZ, LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28