William A. Hector (SBN 298490)
  Email: wahector@venable.com
VENABLE LLP
101 California St, Suite 3800
San Francisco, Ca 94111
415.653.3738

VENABLE LLP
Frank C. Cimino, Jr.
  Email: fccimino@venable.com
Megan S. Woodworth
  Email: mswoodworth@venable.Com
600 Massachusetts Avenue, NW
Washington, DC  20001
202.344.4569

VENABLE LLP
Robert E. Bugg
  Email: rebugg@venable.com
151 West 42nd Street
New York, NY 10036
212.370.6241

Attorneys for Non-Party
WARDELL STEPHEN CURRY II

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ATHALONZ, LLC<br><br>            Plaintiff,<br><br>       v.<br><br>UNDER ARMOUR, INC.<br><br>            Defendant. | Case No. 3:23-mc-80324-LJC<br><br>**NON-PARTY WARDELL STEPHEN CURRY II'S OPPOSITION TO PLAINTIFF'S MOTION FOR DE NOVO DETERMINATION** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I.     JUDGE CISNEROS' DECISION STANDS UNLESS IT IS CLEARLY ERRONEOUS OR CONTRARY TO LAW .................................................................. 1

II.    THE UNDERLYING LITIGATION REVOLVES AROUND THE ACCUSED SHOES' SOLES ........................................................................................ 3

III.   MR. CURRY LACKS UNIQUE RELEVANT INFORMATION ................................ 6

IV.   CONCLUSION ................................................................................................................ 8

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*,
   2014 WL 6469425 (S.D. Cal. Nov. 14, 2014) .......................................................................... 5

*Ceiva Logic, Inc. v. Amazon.com, Inc.*,
   No. 2:19-cv-09129, 2021 U.S. Dist. LEXIS 145299 (C.D. Cal. June 16, 2021) ............... 4, 5, 7

*Collision Commc'ns, Inc. v. Nokia Sols. And Networks*,
   No. 2:21-cv-00308-JRG, Dkt. 96 (E.D. Tex. Aug. 10, 2022) ............................................... 4, 7

*Devenzeio v. First Pac. Bank*,
   No. 91-56429, 1993 U.S. App. LEXIS 14840 (9th Cir. June 11, 1993) .................................. 2

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
   64 F.3d 1553 (Fed. Cir. 1995) .................................................................................................. 4

*Flam v. Flam*,
   788 F.3d 1043 (9th Cir. 2015) .................................................................................................. 2

*Genus Lifesciences Inc. v. Lannett Co.*,
   No. 18-cv-07603-WHO, 2019 U.S. Dist. LEXIS 222550 (N.D. Cal. Dec. 30,
   2019) ......................................................................................................................................... 8

*Hologram USA, Inc. v. Pulse Evolution Corp.*,
   No. 2:14-CV-00772, 2016 WL 3353935 (D. Nev. June 10, 2016) .......................................... 6

*ICON Health & Fitness, Inc. v. Horizon Fitness, Inc.*,
   No. 5:08-CV-00026, 2009 WL 10677745 (E.D. Tex. Mar. 16, 2009) ..................................... 6

*Indacon, Inc. v. Facebook, Inc.*,
   No. SA-10-CA-966-OLG, 2012 WL 12538968 (W.D. Tex. Feb. 14, 2012) ........................... 5

*Nypl v. JP Morgan Chase & Co.*,
   No. 18-mc-80209-JCS, 2019 U.S. Dist. LEXIS 23752 (N.D. Cal. Feb. 13,
   2019) ......................................................................................................................................... 2

*Painters Dist. Council No. 58 v. JohnEd, Inc.*,
   No. 4:17-CV-1271 JMB, 2021 U.S. Dist. LEXIS 154701 (E.D. Mo. Aug. 17,
   2021) ......................................................................................................................................... 2

*Ransom v. Lee*,
   No. CV 14-600-DSF (KK), 2018 U.S. Dist. LEXIS 101679 (C.D. Cal. June
   15, 2018) ................................................................................................................................... 2

-iv-

*Roell v. Withrow*,
    538 U.S. 580, 123 S. Ct. 1696, 155 L. Ed. 2d 775 (2003)..........................................................3

*SEC v. CMKM Diamonds, Inc.*,
    No. 11-mc-80214 JSW, 2011 U.S. Dist. LEXIS 131759 (N.D. Cal. Nov. 15,
    2011) ................................................................................................................................2

*SEVEN Networks, LLC v. Google LLC*,
    No. 2:17-cv-00442-JRG, Dkt. 210 (E.D. Tex. June 29, 2018) ...................................................4

*ViaTech Techs., Inc. v. Microsoft Corp.*,
    No. 17-570, 2018 U.S. Dist. LEXIS 146691 (D. Del. Aug. 28, 2018) ......................................4

**Court Rules**

Fed. R. Civ. P. 72.........................................................................................................................1, 2

# INTRODUCTION

It is undisputed that the only novel feature described or claimed in the Asserted Patents is the design of the shoe's sole. So, when Judge Cisneros concluded that "the case is about soles," she was right. Here, there are sworn declarations demonstrating that Mr. Curry is uninvolved with the design and development of the accused shoes' soles, and thus, an improper target of Athalonz's subpoena. In stark contrast to Athalonz's overly-broad and duplicative discovery requests to Mr. Curry, courts consistently limit discovery to information relating to the accused features or functionality at issue.

Even if the Court were to determine that discovery related to non-accused features of the Curry shoes is warranted, Athalonz still fails to demonstrate that Mr. Curry possesses information that Under Armour—the party to the litigation—does not possess. Athalonz also fails to address the undue burden the subpoena places on Mr. Curry and the fact that Athalonz failed to provide a reasonable time to comply.

The Court should overrule Athalonz's objection to Judge Cisneros' order. Athalonz is not entitled to de novo review, but rather to review for clear error. And here, Judge Cisneros correctly determined that Athalonz failed to show that Mr. Curry has unique and relevant information or documents and granted Mr. Curry's motion to quash without prejudice to Athalonz serving a renewed subpoena after it has conducted relevant discovery from Under Armour.

# ARGUMENT

## I. JUDGE CISNEROS' DECISION STANDS UNLESS IT IS CLEARLY ERRONEOUS OR CONTRARY TO LAW

On a non-dispositive ruling by a Magistrate Judge, a litigant is entitled to relief only where the decision is "clearly erroneous" in its findings of fact, or "contrary to law." Fed. R. Civ. P. 72(a). Athalonz contends that Judge Cisneros' decision receives de novo review under Federal Rule 72(b) because it is a dispositive ruling. Athalonz is wrong.

Judge Cisneros' Order is not a dispositive ruling. Rather, courts in this District often treat orders by a Magistrate Judge quashing a subpoena in a civil miscellaneous matter as non-

-1-

**VENABLE LLP**
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

dispositive pretrial matters under Rule 72(a).  *See Nypl v. JP Morgan Chase & Co.*, No. 18-mc-80209-JCS, 2019 U.S. Dist. LEXIS 23752, at *1 (N.D. Cal. Feb. 13, 2019) (upholding Magistrate Spero's "non-dispositive' order "granting a motion to quash subpoena" in "civil miscellaneous matter"); *SEC v. CMKM Diamonds, Inc*., No. 11-mc-80214 JSW, 2011 U.S. Dist. LEXIS 131759, at *1 (N.D. Cal. Nov. 15, 2011) (overruling third-party objections to Magistrate Judge LaPorte's order on "non-dispositive" "motion to quash").  This is especially true here, where the subpoena was quashed "*without prejudice* to Athalonz serving a renewed subpoena after it has conducted relevant discovery from Under Armour."  Dkt. 23 at 13.  *See Painters Dist. Council No. 58 v. JohnEd, Inc*., No. 4:17-CV-1271 JMB, 2021 U.S. Dist. LEXIS 154701, at *4 (E.D. Mo. Aug. 17, 2021) ("the orders at issue here, granting *without prejudice* a motion to quash a subpoena and to reconsider its ruling on the motion to quash, are discovery orders which are generally considered *not final and not immediately appealable*.") (emphasis added).  Courts in this Circuit have "adopted a functional approach that looks to the effect of the motion" when determining whether a motion is dispositive.  *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015).  Here, "the Order on its face shows it is not final" as it "was conditional and without prejudice."  *Devenzeio v. First Pac. Bank*, No. 91-56429, 1993 U.S. App. LEXIS 14840, at *3 (9th Cir. June 11, 1993); *see also*, *Ransom v. Lee*, No. CV 14-600-DSF, 2018 U.S. Dist. LEXIS 101679, at *6 (C.D. Cal. June 15, 2018) ("Orders granting Plaintiff's request for extension of time and denying appointment of counsel *without prejudice are not final decisions* ….") (emphasis added) (citing *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1024 (9th Cir. 2010) ("A final decision is one that ends the litigation on the merits.").  Thus, the *CF & I Steel*, *Micro Motion*, *Jones* and *CPC Pat*. cases cited by Athalonz involving prejudicial final decisions (Dkt. 24 at 3-4) are inapposite.

      Athalonz's attempt to post-facto decline magistrate jurisdiction also fails.  In a similar case, a court in this District found that because "[t]he instant 'case' is not a 'civil case' under General Order 44.E.1 but instead a 'civil miscellaneous matter' under General Order 44.E.3," consent or declination of magistrate jurisdiction is irrelevant.  *Nypl*, 2019 U.S. Dist. LEXIS 23752, at *2 (upholding Magistrate Judge Spero's order granting motion to quash despite Plaintiff's attempts to decline magistrate jurisdiction and move for reassignment to an Article III

-2-

1 judge).  Regardless, Athalonz's silence regarding magistrate jurisdiction constitutes implied

2 consent.  Athalonz could have objected to magistrate jurisdiction or moved for reassignment to

3 an Article III judge.  Instead, Athalonz stayed silent on the issue, "waiting for the outcome," and

4 improperly saving the argument as a backup plan to argue for de novo review; thus, "[i]nferring

5 consent in these circumstances" is appropriate to reduce "the risk of gamesmanship by depriving

6 parties of the luxury of waiting for the outcome before denying the magistrate judge's authority."

7 *Roell v. Withrow,* 538 U.S. 580, 590, 123 S. Ct. 1696, 1703, 155 L. Ed. 2d 775 (2003).

## II. THE UNDERLYING LITIGATION REVOLVES AROUND THE ACCUSED SHOES' SOLES

10     Judge Cisneros' conclusion that this case is "about soles" (Dkt. 23 at 9) is entirely

11 accurate.  As previously explained, the entire specification of the Asserted Patents is directed to

12 the allegedly novel "athletic positioning" design of a shoe's sole, and not once do any of the

13 Asserted Patents generally—or the asserted claims specifically—describe any other potentially

14 novel feature.  *See* Dkt. 14 at 1-2.  Nothing more than a generic "upper" is claimed in addition to

15 the allegedly novel design features of the shoe's sole among all asserted claims.  *Id*.  Athalonz

16 has also consistently described its "patented technology" as the "shape and compressibility" of

17 the shoe's sole (*id*.), and even now, Athalonz does not dispute the fact that the sole is the only

18 arguably inventive feature described in any of its patents.  The Asserted Patents even

19 acknowledge that all prior art athletic shoes, including tennis shoes, golf shoes, running shoes,

20 cross training shoes, hiking shoes, basketball shoes and baseball spikes include an "upper shoe

21 portion."  Dkt. 11-1, Ex. B, '291 patent, 1:48-61.  And Athalonz does not dispute Judge

22 Cisneros' conclusion that "there is no indication that the existence of an 'upper section' of Under

23 Armour's shoes is in dispute."  Dkt. 23 at 10.

24     Athalonz's suggestion that a party can seek unlimited discovery on a product, regardless

25 of the accused functionality (Dkt. 24 at 7), is wrong.[1]  Courts routinely deny discovery in patent

---

[1] The *Hiniker, Multiform Desiccants, Kyocera, Exxon* and *General Foods* cases (Dkt. 24 at 6-7) all address infringement and/or claim construction analysis in patent cases—not discovery.

1  cases where the requested information is overly broad, going beyond the accused features or
2  functionality of the product(s) at issue. *See Collision Commc'ns, Inc. v. Nokia Sols. And*
3  *Networks*, No. 2:21-cv-00308-JRG, Dkt. 96 at 3-4 (E.D. Tex. Aug. 10, 2022) (attached as
4  Exhibit 1) (denying motion to compel for "fail[ure] to demonstrate how the requested
5  documents—which Collision admits are unrelated to the accused features—are probative");
6  *SEVEN Networks, LLC v. Google LLC,* No. 2:17-cv-00442-JRG, Dkt. 210 at 2 (E.D. Tex. June
7  29, 2018) (attached as Exhibit 2) (denying motion to compel where the requests were "not
8  limited to the accused functionalities"); *Ceiva Logic, Inc. v. Amazon.com, Inc.*, No. 2:19-cv-
9  09129, 2021 U.S. Dist. LEXIS 145299, at *18 (C.D. Cal. June 16, 2021) ("Plaintiff's
10 identification of Accused Products is so broad that to permit discovery regarding every aspect of
11 such products—including aspects of the products that have nothing to do with Plaintiff's
12 allegations of infringement—would not be proportional to the needs of the case."); *ViaTech*
13 *Techs., Inc. v. Microsoft Corp*., No. 17-570, 2018 U.S. Dist. LEXIS 146691, at *10 n.5 (D. Del.
14 Aug. 28, 2018) ("Defendants are not generally required to provide discovery on non-accused
15 features."). Despite the asserted claims in these cases broadly covering the accused products or
16 including generic components found in the accused products, the Courts limited discovery to the
17 accused features or functionality that was allegedly novel.
18      For example, in *Collision*, Plaintiff sought all marketing documents related to Nokia's
19 accused cellular base stations, including those that did not explicitly reference the accused
20 features, arguing that they were relevant to its indirect infringement and damages theories.
21 *Collision*, No. 2:21-cv-00308-JRG, Dkt. 96 (Ex. 1) at 1-3; Complaint, Dkt. 1 (E.D. Tex, Aug. 10,
22 2021) (attached as Exhibit 3) at ¶ 74. But the Court denied discovery of these documents unless
23 they related to the accused functionality, despite the asserted claims broadly claiming "a system

---

Likewise, Athalonz's suggestion that "every word in the claim must be given meaning" (*Id*. at 8) references the Federal Circuit's *Exxon* decision regarding claim construction. *See Exxon Chem. Patents, Inc. v. Lubrizol Corp*., 64 F.3d 1553, 1557 (Fed. Cir. 1995).

-4-

1  for digital communications" (claim 3 of U.S. Patent No. 7,724,851, attached as Exhibit 4); "a
2  digital communication system" (claim 10 of U.S. Patent No. 7,724,851, (Ex. 4)); and "a cellular
3  communications system" (claims 1, 12, 23 of U.S. Patent No. 9,888,479, attached as Exhibit 5;
4  claims 1, 13, 25 of U.S. Patent No. 10,477,561, attached as Exhibit 6), each of which describes
5  and covers the accused base stations.

6       Likewise, in *Ceiva*, the plaintiff accused Amazon's Fire tablets, Kindle e-book readers
7  and Echo Show displays of infringement. *Ceiva*, 2021 U.S. Dist. LEXIS 145299, at *4. Plaintiff
8  sought discovery related to the accused products generally that it alleged was necessary to prove
9  infringement and damages. *Id*. *9. But the Court held that the discovery requests "are relevant
10 and proportional under Rule 26(b)(1) only insofar as those requests seek information related to
11 specifically accused features, services, and functionalities of the Accused Products" (*id*. *15),
12 despite the asserted claims broadly claiming "an apparatus for displaying content … on a display
13 screen" as well as generic components such as a "display screen," "a central processing unit," "a
14 video controller," and "a memory" (claim 1 of U.S. Patent No. 9,654,562, attached as Exhibit 7);
15 and a "digital display apparatus" that included "an image display region," "a processor," and
16 "communication circuitry" (claim 1 of U.S. Patent No. 9,203,930, attached as Exhibit 8), found
17 in each of the accused devices. Judge Cisneros' conclusion regarding the proper scope of
18 discovery based on the accused features and Athalonz's claims is directly in line with this
19 precedent.

20      The cases Athalonz cites regarding the scope of permissible discovery in patent cases
21 (Dkt. 24 at 7) are easily distinguishable. *Audatex* relates only to the production of "financial
22 information and sales data" associated with the accused products. *Audatex N. Am. Inc. v.*
23 *Mitchell Int'l, Inc*., 2014 WL 6469425, at *1-2 (S.D. Cal. Nov. 14, 2014). Here, Under Armour
24 has already agreed to produce, and has produced, financial, sales and profit data for all accused
25 shoes. In *Indacon*, the Court justified discovery of information relating to Facebook's system
26 generally because the accused features and functionality were not "a single isolated component"
27 but rather, "the core features of the Facebook social network system," and Plaintiff alleged
28 infringement based on the accused system's methods "for locating, indexing, and accessing ***all***

-5-

1   *information,* as well as its system and method for acquiring, creating, manipulating, indexing,
2   and perusing **all data.**"  *Indacon, Inc. v. Facebook, Inc*., No. SA-10-CA-966-OLG, 2012 WL
3   12538968, at *5 (W.D. Tex. Feb. 14, 2012) (emphasis added).
4         The *Hologram* and *ICON* cases are likewise inapposite as they fail to address discovery
5   relating to unaccused features, but instead address whether certain products were properly
6   accused, e.g. identified in infringement contentions vs. in discovery responses (*ICON Health &*
7   *Fitness, Inc. v. Horizon Fitness, Inc*., No. 5:08-CV-00026, 2009 WL 10677745, at *2-3 (E.D.
8   Tex. Mar. 16, 2009)), and hold that defendants need not produce information relating to non-
9   accused products.  *See Hologram USA, Inc. v. Pulse Evolution Corp*., No. 2:14-CV-00772, 2016
10  WL 3353935, at *4-5 (D. Nev. June 10, 2016).
11        Since Athalonz does not dispute that the only novel and accused features are the soles of
12  the shoes, and Mr. Curry has demonstrated that he is not involved in the design or development
13  of the Curry shoe soles, the order quashing the subpoena was proper.
14  **III.  MR. CURRY LACKS UNIQUE RELEVANT INFORMATION**
15        Even if the Court finds that the "shoes" recited in the preamble, and admittedly non-
16  inventive "upper" in claim 1 are relevant to the scope of discovery, Mr. Curry still lacks unique,
17  relevant information.  While Athalonz again points to vague public statements relating to Mr.
18  Curry's role with respect to the Curry products (Dkt. 24 at 8-9), Athalonz fails to address that
19  Under Armour has already identified multiple witnesses that possess the same information which
20  have not yet been deposed, and that Under Armour has already agreed to produce, and/or has
21  produced, any relevant and responsive documents.  See Dkt. 1 at 1, 4-5; Dkt. 14 at 7-8.
22        Athalonz also ignores the fact that Mr. Curry has stated that he lacks knowledge with
23  respect to Request Nos. 3-8, including (1) the marketing, advertising, and promotion of the
24  accused products; (2) the comparative value or benefits of the accused products compared to
25  other shoes; (3) the market for basketball shoes generally; and (4) Under Armour's pricing,
26  margins, costs, sales strategies, or sales comparisons.  Dkt. 14 at 7-8.  And for **all** Requests, Mr.
27  Curry has explained that any responsive non-privileged documents in his possession would also
28  "be in Under Armour's possession; therefore, discovery should be requested from Under

1  Armour, the proper party, not non-party Curry." *Id*.

2  The irrelevant documents that Under Armour has not agreed to produce, *e.g*., the
3  sponsorship agreement(s) between Curry and Under Armour that fall within the scope of Request
4  Nos. 5 and 9, are also the subject of a motion to compel, so if the E.D. Tex. Court deems that
5  these documents are somehow relevant, Under Armour will produce them. *Id*. at 8.
6  Furthermore, Athalonz's suggestion that Under Armour has wrongfully limited its production to
7  only produce documents related to Mr. Curry's role relating to the "accused features of the
8  accused products" (Dkt. 24 at 10) is incorrect. In fact, "Under Armour ... previously agreed to
9  produce all technical drawings, internal specifications, business plans, marketing plans,
10 promotional materials, development documents and testing documents for the Accused Products.
11 … By nature, these agreed categories include any sponsored athlete's involvement in said
12 design, development, testing, marketing, advertising or promotion." Dkt. 14 at 8.

13 Mr. Curry has also explained that any testimony of his regarding "how and why the
14 Accused Curry Products have been successful, what features and benefits are beneficial to users
15 of those products, and what advantages his shoes have over other … shoes" (Dkt. 24 at 9) would
16 be entirely speculative. Dkt 14 at 4. More importantly, Mr. Curry has already stated that he is
17 "not responsible for assessing the value or benefits of the Accused Curry Products" and lacks
18 knowledge with respect to the comparative value or benefits of the accused products compared to
19 other shoes. *Id*. Athalonz's claim that the subpoena is needed for damages purposes (Dkt. 24 at
20 2, 8-11) is directly refuted by the *Ceiva* and *Collision* cases that denied discovery despite similar
21 allegations. *See Ceiva*, 2021 U.S. Dist. LEXIS 145299, at *4; *Collision*, No. 2:21-cv-00308-
22 JRG, Dkt. 96 (Ex. 1) at 1-3. Rather, as Judge Cisneros concluded, "[i]t is not clear that Curry's
23 personal experience wearing Under Armour shoes in competition sheds meaningful light on the
24 economic value of Athalonz's claimed invention." Dkt. 23 at 11. Nor does Athalonz refute
25 Judge Cisneros' conclusion that "most of the documents [Athalonz] seeks from Curry are likely
26 also, if not exclusively, in Under Armour's possession." *Id*., at 13.[2]

27 _____
28 [2] Athalonz's effort to portray Mr. Curry's alleged knowledge of the shoes as unique because he

-7-

      The law in this district is clear that "[w]hen an opposing party and a non-party both possess documents, the documents should be sought from the party to the case." *Genus Lifesciences Inc. v. Lannett Co.*, No. 18-cv-07603-WHO, 2019 U.S. Dist. LEXIS 222550, at *10-11 (N.D. Cal. Dec. 30, 2019) (internal citations and quotations omitted). Following this law, Magistrate Judge Cisneros appropriately held that Athalonz "must pursue discovery from other parties before issuing subpoenas to non-parties," and that "[r]equiring Athalonz to exhaust party discovery first is particularly appropriate here, given that Athalonz will need to review documents and depose witnesses from Under Armour regarding the design and development of Under Armour's shoes regardless of whether Curry is also a relevant witness." Dkt. 23 at 11.

      Under Armour has already addressed Judge Gilstrap's order regarding transfer (Dkt. 14 at 4-5) and Athalonz cannot refute that Judge Gilstrap's decision was based on an incomplete record and assumptions about Jordan Spieth's involvement based solely on Athalonz's allegations, unlike here, where we have sworn declarations explicitly describing Mr. Curry's role. Finally, Athalonz fails to address the undue burden the subpoena places on Mr. Curry and the fact that Athalonz failed to provide a reasonable time to comply, as described in Mr. Curry's Motion (Dkt. 1 at 10-14) and Reply (Dkt. 14 at 8-10).

**IV.  CONCLUSION**

      For all of these reasons, Athalonz has not shown that a different result is appropriate and certainly not that Magistrate Judge Cisneros' order was clearly erroneous or contrary to law. Mr. Curry respectfully requests that the Court overrule Athalonz's objections to Judge Cisneros' order.

---

has "worn the Curry products in a professional sports environment" also fails because nothing in either the infringement or damages analysis relates to such an environment; if anything, this makes Mr. Curry's personal opinions on the shoe less relevant, since the relevant sales market is not professional athletes.

| | | |
|---|---|---|
| Dated: March 12, 2024 | | VENABLE LLP |
| | By: | */s/ William A. Hector* |
| | | William A. Hector (SBN 298490) |
| | | Frank C. Cimino, Jr. (*pro hac vice*) |
| | | Megan S. Woodworth (*pro hac forthcoming*) |
| | | Robert E. Bugg (*pro hac forthcoming*) |
| | | |
| | | Attorneys for Non-Party |
| | | WARDELL STEPHEN CURRY II |