Jennifer Estremera (CA Bar No. 251076)
jestremera@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
Facsimile: (650) 623-1449

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Connor S. Houghton (*pro hac vice*)
choughton@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
1909 K Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7311
Facsimile: (650) 623-1449

Attorneys for Plaintiff
*Athalonz, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ATHALONZ, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>UNDER ARMOUR, INC.,<br><br>        Defendant. | Case No. 3:23-mc-80324-LJC<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE** |

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   ATHALONZ IS ENTITLED TO DE NOVO REVIEW ............................................. 1

III.  THIS CASE IS ABOUT SHOES, NOT JUST SOLES ............................................... 4

IV.   MR. CURRY'S TESTIMONY IS CRUCIAL BECAUSE HE HAS UNIQUE,
      RELEVANT INFORMATION ...................................................................................... 6

V.    CONCLUSION .............................................................................................................. 8

PLAINTIFF'S REPLY ISO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
Case No. 3:23-mc-80324-LJC

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Athalonz LLC v. Under Armour, Inc.*,
   2023 WL 8809293 (E.D. Tex. Dec. 20, 2023) .......................................................................... 8

*Borntrager v. Cent. States, Southeast & Southwest Areas Pension Fund*,
   425 F.3d 1087 (8th Cir. 2005) ................................................................................................. 2

*Ceiva Logic, Inc. v. Amazon.com, Inc.*,
   2021 U.S. Dist. LEXIS 145299 (C.D. Cal. June 10, 2021) .................................................. 4, 5

*Collision Commc'ns, Inc. v. Nokia Sols. and Networks*,
   No. 2:21-cv-00308-JRG, Dkt. 96 (E.D. Tex. Aug. 10, 2022) ............................................... 4, 5

*CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*,
   34 F.4th 801 (9th Cir. 2022) ................................................................................................ 1, 2

*Devenzeio v. First Pac. Bank*,
   1993 U.S. App. LEXIS 14840 (9th Cir. June 11, 1993) .......................................................... 2

*Flam v. Flam*,
   788 F.3d 1043 (9th Cir. 2015) ................................................................................................. 2

*In re Grand Jury Subpoenas*,
   472 F.3d 990 (8th Cir. 2007) ................................................................................................... 2

*Indacon, Inc. v. Facebook, Inc.*,
   2012 WL 12538968 (W.D. Tex. Feb. 14, 2012) ...................................................................... 6

*Jones v. PGA TOUR, Inc.*,
   668 F. Supp. 3d 907 (N.D. Cal. 2023) ..................................................................................... 1

*Lampman v. United States Dist. Court for Cent. Dist.*,
   418 F.2d 215 (9th Cir. 1969) ................................................................................................... 2

*Nypl v. JP Morgan Chase & Co.*,
   2019 U.S. Dist. LEXIS 23752 (N.D. Cal. Feb. 13, 2019) .................................................... 1, 3

*Painters Dist. Council No. 58 v. JohnEd, Inc.*,
   2021 U.S. Dist. LEXIS 154701 (E.D. Mo. Aug. 17, 2021) ...................................................... 2

*Ransom v. Lee*,
   2018 U.S. Dist. LEXIS 101679 (C.D. Cal. June 15, 2018) .................................................. 2, 3

*SEC v. CMKM Diamonds, Inc.*,
   2011 U.S. Dist. LEXIS 131759 (N.D. Cal. Nov. 15, 2011) ..................................................... 1

*SEVEN Networks, LLC v. Google LLC*,
    No. 2:17-cv-00442-JRG, Dkt. 169 (E.D. Tex. May 11, 2018) .............................................. 4, 5

*ViaTech Techs., Inc. v. Microsoft Corp.*,
    2018 U.S. Dist. LEXIS 146691 (D. Del. Aug. 28, 2018) ....................................................... 5, 6

**Rules**

Fed. R. Civ. P. 72(b) ................................................................................................................... 3

## I. INTRODUCTION

Mr. Curry's opposition cannot rationalize the fundamental issues with the order quashing his subpoena. It remains the case that the court's conclusion that "this case is about soles" is simply incorrect and improperly limits the scope of discovery. And it remains the case that once that error is put aside, the rest of Mr. Curry's arguments fall flat. Athalonz accuses certain Curry Brand shoes of infringing its patents, all of which claim and cover entire athletic shoes, and not simply their soles. There is no basis to prohibit Athalonz from taking Mr. Curry's deposition to learn about his unique knowledge of the overall design, development, testing, and marketing of his signature Curry Brand shoes. The Court should therefore grant Athalonz's objections to the underlying order and on de novo review, deny Mr. Curry's motion to quash.

## II. ATHALONZ IS ENTITLED TO DE NOVO REVIEW

Mr. Curry's assertion that Athalonz is entitled only to clear error review is wrong. Mr. Curry does not even attempt to address the controlling case law cited in Athalonz's motion making clear that a magistrate judge's ruling on a freestanding subpoena in a miscellaneous case assigned under this Court's General Order 44 § E.3 is a dispositive matter. *See CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 807-08 (9th Cir. 2022); *see also Jones v. PGA TOUR, Inc.*, 668 F. Supp. 3d 907, 916 (N.D. Cal. 2023). Instead, Mr. Curry cites older district court cases that treated orders granting motions to quash as non-dispositive. Those cases do not control, as they all came before the Ninth Circuit's ruling in *CPC*, and in any event are distinguishable.

For instance, in *Nypl v. JP Morgan Chase & Co.*, No. 18-mc-80209-JCS, 2019 U.S. Dist. LEXIS 23752, at *1 (N.D. Cal. Feb. 13, 2019), the plaintiff sought review under the clear error standard—it did not ask for de novo review of a dispositive matter. *See Nypl*, No. 18-mc-80209-JCS, Dkt. 23 (Feb. 1, 2019) (attached as Ex. A) (filing Motion for Relief from Non-Dispositive Pretrial Order of a Magistrate Judge). The plaintiff there also incorrectly sought to vacate the underlying order on the grounds that it declined consent to a magistrate judge, disregarding General Order 44 § E.3 which automatically assigns civil miscellaneous matters to a magistrate judge and sets the framework for seeking de novo review of dispositive matters. *Id.* Similarly, in *SEC v. CMKM Diamonds, Inc.*, No. 11-mc-80214 JSW, 2011 U.S. Dist. LEXIS 131759, at *1 (N.D. Cal. Nov. 15, 2011), the objection

-1-

1  to the magistrate judge's order was filed as a "Motion for Relief From Nondispositive Order of
2  Magistrate Judge." *See* Dkt. 19 (Oct. 31, 2011) (attached as Ex. B). And more importantly, in that
3  case, the objection sought relief because the magistrate **denied** the motion to quash—there is no
4  dispute that orders **denying** motions to quash subpoenas are, in fact, non-dispositive matters. *E.g.*,
5  *Lampman v. United States Dist. Court for Cent. Dist.*, 418 F.2d 215, 216 (9th Cir. 1969).

6    Mr. Curry next shifts to arguing the order at issue here is non-dispositive because it granted
7  his motion to quash without prejudice. That too is wrong. The only case Mr. Curry cites for this
8  proposition is an out-of-circuit district court case where the court mentioned, when deciding a motion
9  for reconsideration, that the court's own prior order granting without prejudice a motion to quash a
10 subpoena was the kind of discovery order that is "generally" considered not final and not appealable.
11 *See Painters Dist. Council No. 58 v. JohnEd, Inc.*, No. 4:17-CV-1271 JMB, 2021 U.S. Dist. LEXIS
12 154701, at *4 (E.D. Mo. Aug. 17, 2021). There, the order at issue was not a freestanding subpoena
13 request in a different district (like this case), and in any event, only relied on cases finding that
14 discovery orders like **denial** of motions to quash subpoenas are not final, appealable orders. *Id.* (citing
15 *In re Grand Jury Subpoenas*, 472 F.3d 990, 1000 (8th Cir. 2007) ("The denial of a motion to quash a
16 subpoena is not a final order reviewable by this court, as the right of review attaches only if the target
17 of the subpoena fails to comply and is found in contempt."), and *Borntrager v. Cent. States, Southeast*
18 *& Southwest Areas Pension Fund*, 425 F.3d 1087, 1093 (8th Cir. 2005) ("pre-trial discovery orders
19 are almost never immediately appealable")).

20   Mr. Curry's citation of *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015), proves Athalonz's
21 point. The Ninth Circuit explicitly analyzed and considered *Flam* recently in *CPC* when it determined
22 that an order granting a motion to quash a freestanding subpoena request **was** a dispositive matter
23 because it denied the ultimate relief sought in a federal court proceeding. *See CPC*, 34 F.4th at 808
24 (applying the "functional approach" from *Flam*). Mr. Curry's citation to the non-precedential opinion
25 in *Devenzeio v. First Pac. Bank*, 1993 U.S. App. LEXIS 14840, *3 (9th Cir. June 11, 1993) changes
26 nothing; that case stands for the unremarkable proposition that dismissal of a complaint without
27 prejudice does not give rise to appellate rights. Nor does *Ransom v. Lee*, 2018 U.S. Dist. LEXIS
28 101679, at *6 (C.D. Cal. June 15, 2018) move the needle. There, the court simply found that orders

denying a request for extension of time and to appoint counsel without prejudice—routine, interlocutory discovery matters—are not final, appealable decisions. *Id.* Neither of those cases bear any resemblance to the situation here, where the order terminated the case and resolved all outstanding issues with regard to the subpoena Athalonz served on Mr. Curry in November. That the court did not foreclose Athalonz's ability to serve a ***new*** subpoena on Mr. Curry later in discovery, at which time the court would take up a ***new*** motion to quash if Mr. Curry filed one, does not somehow turn its dispositive order into a non-dispositive one. Indeed, as the docket shows, the court here closed this miscellaneous case with its order—it could not be much clearer that the court's decision was final.

Mr. Curry also confusingly claims Athalonz is attempting to "post-facto decline magistrate jurisdiction." Opp. at 2. Not so. Athalonz made clear that it filed this motion pursuant to Federal Rule of Civil Procedure 72(b) and the Court's General Order 44, which automatically assigned this miscellaneous case to a magistrate judge on filing. The fact that this case was assigned to a magistrate judge cannot—and does not—change the Article III limits on the ability of magistrate judges to resolve dispositive matters, which is why General Order 44 § E.3 explicitly provides for de novo review in cases like these. Regardless, there was no opportunity for Athalonz (or Mr. Curry) to consent or decline to magistrate judge jurisdiction—as Mr. Curry's own authority makes clear, when a case is automatically assigned to a magistrate like this was, the provision "concerning declination to a magistrate judge does not apply." *Nypl*, 2019 U.S. Dist. LEXIS 23752, at *2. Athalonz merely pointed out in its motion that Mr. Curry's choice to *sua sponte* consent to a magistrate judge does not change the procedures for Athalonz seeking review of the order. Mr. Curry's claim that Athalonz implied consent to a magistrate judge is also wrong. There was no need or opportunity to consent or decline to a magistrate judge because this case is proceeding under General Order 44 § E.3. *See id.*

The Court should therefore apply the de novo review standard for this motion. But regardless of the standard applied, as set forth in the initial motion and further below, the court's order quashing Mr. Curry's subpoena was "contrary to law" as it fundamentally misunderstood the scope of the claims of Athalonz's patents, and should therefore be corrected under either a clear error or de novo standard of review.

### III. THIS CASE IS ABOUT SHOES, NOT JUST SOLES

Mr. Curry's argument—adopted by the order below—is that discovery in patent cases is per se limited to only the "accused features" as defined by the defendant. According to Mr. Curry, a party is prohibited from taking discovery about any part of an accused product that is not allegedly a "novel" feature claimed in the patent. To be clear, Athalonz has never stated or agreed that the soles of UA's accused shoes are the only "accused features" in this case—that terminology is entirely of UA's making. This case is about UA's shoes, of which the soles are an important part—but that does not mean that Mr. Curry can avoid a deposition simply because two declarations from third-parties (not from Mr. Curry himself) says that Mr. Curry did not individually decide which materials or shape to make the sole of the shoes. Athalonz does not seek "unlimited discovery" on a product "regardless of the accused functionality," Opp. at 3—it seeks relevant, important testimony from the President of the Curry Brand who undisputedly played an important role in designing, developing, and marketing the products accused of infringement.

In any event, this exact issue—whether discovery is appropriately limited to the "accused features" as UA has unilaterally defined them—is already pending in Athalonz's motion to compel before Judge Gilstrap in the underlying case. *See* Dkt. 11-1, Ex. K (Motion to Compel). Indeed, in opposing Athalonz's motion, UA cited **exactly the same** cases Mr. Curry does here. *See* Dkt. 14-2, Ex. 12 at 6-7 (UA's opposition to Athalonz's motion to compel, citing *Collision*, *SEVEN*, and *Ceiva* for the proposition that discovery should be limited to the "accused features" as defined by UA).[1] This Court thus may find Judge Gilstrap's impending resolution of Athalonz's motion to compel (which has been fully briefed and pending for three months) to be helpful guidance on the issues raised here, particularly where two of the primary cases UA is relying on (*Collision* and *SEVEN*) are prior Judge Gilstrap decisions that he will presumably be able to easily compare to the facts here.

On the merits, Mr. Curry's case law is inapposite. In *Collision* (and unlike here), the Plaintiff specifically accused particular "Accused Functionalities" of the Defendant's products of infringement. In its motion to compel, Plaintiff sought documents that it admitted "are unrelated to

---

[1] This overlap is unsurprising, given that Mr. Curry is represented here by UA's lawyers in the underlying case.

the accused features." The court denied the motion to compel there because, "based on the specific facts of this particular case . . . Collusion's arguments asking this Court to compel Nokia to produce large quantities of information based on broadly worded requests near the close of fact discovery should not be granted." *Collision Commc'ns, Inc. v. Nokia Sols. and Networks*, No. 2:21-cv-00308-JRG, Dkt. 96 at 4 (E.D. Tex. Aug. 10, 2022) (Opp. Ex. 1). The court specifically noted that "had Collision tailored their broad discovery requests, even modestly, a different result might have been achieved." *Id.* at n.1. *Collision* does not stand for any bright line rule that all discovery must be limited to accused features.

*Ceiva* is similarly unhelpful to Mr. Curry. There, the court relied in large part on the fact that Plaintiff's discovery requests were so broad, they would require Amazon to search for "requested documents from thousands of engineers working on different features of the Accused Products, which would take several months." *Ceiva Logic, Inc. v. Amazon.com, Inc.*, 2021 U.S. Dist. LEXIS 145299, at *10 (C.D. Cal. June 10, 2021). The court there also permitted discovery into all "features, services, and functionalities of the Accused Products" that were identified in Plaintiff's infringement contentions. *Id.* Here, the same concerns about the discovery taking months to gather do not hold—Athalonz seeks a single deposition of a single witness. Moreover, there is no dispute that Athalonz's infringement contentions *do* specifically identify all aspects of the Curry Brand Accused Products—the entire shoes, and not just the soles. Thus, even applying the limited scope of discovery permitted in *Ceiva*, Athalonz would be entitled to Mr. Curry's deposition.

The two other cases cited by Mr. Curry similarly fail to support limiting discovery here. Like in *Collision*, the Plaintiff in *SEVEN* sought extremely broad discovery on products and features that everyone agreed were not accused. *See SEVEN Networks, LLC v. Google LLC*, No. 2:17-cv-00442-JRG, Dkt. 169 (E.D. Tex. May 11, 2018) (attached as Ex. C) (Defendant's opposition explaining Plaintiff was requesting "every type of advertising revenue generated from any Google service, including Search and YouTube (neither of which is accused)."). It was unsurprising that the court therefore found those document requests overbroad and limited discovery to documents showing revenue from features that were specifically accused of infringement. *Id.*, Dkt. 210 at 2. *ViaTech* is even farther afield—there, the court found in a footnote that because claim preclusion applied to

-5-
PLAINTIFF'S REPLY ISO MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER
Case No. 3:23-mc-80324-LJC

Plaintiff's claims against features of accused products that could have been, but were not, accused in a prior infringement complaint, discovery on those non-accused features were irrelevant to the current case. *ViaTech Techs., Inc. v. Microsoft Corp.*, 2018 U.S. Dist. LEXIS 146691, *10 n.5 (D. Del. Aug. 28, 2018). At bottom, nowhere in any of Mr. Curry's cases does the court limit discovery to "accused features or functionality that was allegedly novel." Opp. at 4.

Further, that Athalonz cited some cases regarding "infringement and/or claim construction analysis in patent cases," Opp. at 3 n.1, does not somehow make those cases irrelevant. Instead, claim construction and infringement are ultimately the issues the Court and the jury are going to decide in this case—the standards applied in properly interpreting claims to determine infringement are of the utmost importance in deciding how discovery should proceed.

As explained in Athalonz's motion, this case is much closer to *Indacon, Inc. v. Facebook, Inc.*, No. SA-10-CA-966-OLG, 2012 WL 12538968, at *5 (W.D. Tex. Feb. 14, 2012). There, Facebook made exactly the argument Mr. Curry (and UA) make here—it claimed infringement would turn on "a few specific features of Indacon's patent claims," and therefore discovery must be limited to those "accused features" and could not be taken on Facebook's entire system. *Id.* The court there readily rejected that argument. Instead, the court found that the infringement allegations went to the "heart of Facebook's" system and that "Plaintiff is not alleging that a single isolated component of Facebook's system infringes upon its patent." *Id.* So too here—it is entirely improper to limit discovery to "soles" of a shoe when the claims indisputably cover the entire shoe.

IV.   **MR. CURRY'S TESTIMONY IS CRUCIAL BECAUSE HE HAS UNIQUE, RELEVANT INFORMATION**

Mr. Curry's claim that he lacks relevant information focuses almost entirely on Athalonz's document requests. *See* Opp. at 6-8 (complaining about overlap in document requests with documents in UA's possession). But Mr. Curry either forgets—or willfully ignores to bury the significance of his testimony—that Athalonz **did not object** to the court's ruling on its document subpoena to Mr. Curry. *See* Mot. at 5 ("At this time, while Athalonz disagrees with its conclusions, it does not object to Section III.B. of the order, and instead intends to follow the order's directions to wait from document discovery from Under Armour before renewing its document subpoena to Mr. Curry if

1  necessary."). Mr. Curry's arguments relating to the document requests are simply irrelevant to the
2  issues before the Court now.
3        Putting aside the document requests, Mr. Curry's conclusory arguments as to why his
4  deposition testimony is irrelevant all fail. Once again (as he did below), Mr. Curry tries to brush off
5  the detailed evidence Athalonz cited in opposing the motion to quash showing his significant
6  involvement in the Curry products as "vague public statements." Opp. at 6. Athalonz's evidence is
7  not "vague"—Mr. Curry just doesn't like what it says. For instance, UA's public statements make
8  clear that Mr. Curry was involved in "picking materials that will improve performance" in his shoes,
9  Dkt. 11-1, Ex. D; that his role as President of Curry Brand involves "product development" and
10 providing "key insights on Under Armour Product technologies such as . . . UA Flow," which is the
11 material in the sole of the Accused Products, *id.*, Ex. C; and that Mr. Curry is "heavily involved in
12 the design of the shoes," *id.*, Ex. E. These are not generic marketing statements—they are press
13 releases and interviews from UA itself that explain to the public the importance of Mr. Curry's
14 involvement in his Curry-branded shoes. This evidence could not be much clearer in highlighting the
15 importance of Mr. Curry's role.
16       The only contrary evidence Mr. Curry presented consists of two conclusory declarations from
17 previously-unidentified witnesses (and not from Mr. Curry himself) stating he was not involved in
18 picking the materials or shape of the sole of the Curry shoes. Those declarations are far from enough
19 to support quashing the subpoena here. As discussed above in detail, even if Mr. Curry was not
20 involved specifically in choosing the material or shape of the soles of the Accused Products (which
21 Athalonz's evidence contradicts), that does not mean he has no relevant knowledge. This case is about
22 more than just those features, and Mr. Curry clearly has significant involvement in the Accused
23 Products as a whole, including their design, development, testing, marketing, and sale.
24       Mr. Curry's also claims that he lacks knowledge of how and why the shoes have been
25 successful, which features are beneficial to users, and what advantages they present. Opp. at 7. But
26 his claims are unsupported and contradicted by Athalonz's evidence. For example, Mr. Curry claims
27 he has "already stated that he is 'not responsible for assessing the value of benefits of the Accused
28 Curry Products' and lacks knowledge with respect to the comparative value or benefits of the accused

1  products compared to other shoes." Opp. at 7 (citing Dkt. 14 at 4, in turn citing Dkt. 11-1, Ex. P). The
2  only support for this statement is Mr. Curry's attorney's objections to Athalonz's document requests.
3  There is simply no factual basis for such a sweeping claim of lack of knowledge—it is not in any
4  declaration or sworn statement and comes only from attorney argument. To the contrary, Athalonz's
5  extensive evidence cited in opposition to the motion shows Mr. Curry is highly likely to possess
6  unique, relevant knowledge on all of these subjects.

7  Finally, Mr. Curry claims that "Under Armour has already addressed Judge Gilstrap's order
8  regarding transfer . . . and Athalonz cannot refute that Judge Gilstrap's decision was based on an
9  incomplete record and assumptions about Jordan Spieth's involvement based solely on Athalonz's
10 allegations . . . ." Opp. at 8. This too is incorrect. Judge Gilstrap's transfer order directly addressed
11 the same arguments made by Mr. Curry here—"Under Armour's dismissal of the materiality and
12 relevance of Jordan Spieth's potential testimony is unconvincing given the evidence from Mr.
13 Spieth's own website where it states he was involved in designing the accused products." *Athalonz*
14 *LLC v. Under Armour, Inc.*, 2023 WL 8809293, at *6 (E.D. Tex. Dec. 20, 2023). UA had a full chance
15 to respond to Athalonz's allegations in its opposition to transfer regarding the importance of Mr.
16 Spieth's testimony and chose not to attach conclusory declarations like it did here—that does not
17 make the record "incomplete." Further, Athalonz has also issued a subpoena to Jordan Spieth, who
18 has also moved to quash, and that motion is pending and fully briefed in the Eastern District of Texas.
19 *See Athalonz, LLC v. Under Armour, Inc.*, No. 4:24-mc-00026 (E.D. Tex.).[2] Thus, the Court may also
20 find the upcoming decision in that case to be helpful.

21 **V.   CONCLUSION**

22 For the reasons set forth in its motion and above, Athalonz respectfully requests that the Court
23 grant its objections, and on *de novo* review, deny Mr. Curry's motion to quash.

---

[2] Mr. Spieth filed his motion to quash in a different division of the Eastern District of Texas, likely because of Judge Gilstrap's prior order addressing the significance of his testimony. The motion may be transferred to Judge Gilstrap's court, but in any event, will be resolved by the Eastern District of Texas where the underlying case is pending.

| | |
|---|---|
| Dated: March 19, 2024 | Respectfully submitted, |
| | REICHMAN JORGENSEN LEHMAN & FELDBERG, LLP |
| | By /s/ *Jennifer Estremera* |
| | Attorneys for Plaintiff<br>ATHALONZ, LLC |