EXHIBIT A

JOSEPH M. ALIOTO (SBN 42680)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA 94104
(415) 434-8900
(415) 434-9200
Email: jmalioto@aliotolaw.com

LINGEL H. WINTERS (SBN 37759)
LAW OFFICES OF LINGEL H. WINTERS
388 Market Street, Suite 900
San Francisco, CA  94111
(415) 398-2941
Email: sawmill2@aol.com

*ATTORNEYS for Nypl Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE* SUBPOENA<br>TO SIMON FOWLES, Non-Party | Misc Case No. 18 80209-JCS<br><br>**MOTION FOR RELIEF FROM<br>NONDISPOSITIVE PRETRIAL<br>ORDER OF A MAGISTRATE JUDGE**<br><br>**[FED. R. CIV. P. 72(A); CIV. L.R. 72-2]** |
| JOHN NYPL, et al.<br><br>          Plaintiffs,<br><br>v.<br><br>JP MORGAN CHASE & CO., et al.<br><br>          Defendants. | Underlying Action:<br>Case No. 1:1 5-cv-09300-LGS<br>U.S. District Court (S.D.N.Y.)<br>Judge: Hon. Lorna 0. Schofield |

Pursuant to Fed. R. Civ. P. 72(a) and Civil Local Rule 72-2, the *Nypl* Plaintiffs respectfully submit objections to an order by Magistrate Judge Joseph C. Spero granting the motion to quash subpoena to non-party Simon Fowles and denying the *Nypl* Plaintiffs' motion to compel. (Dkt. No. 19 and Dkt. No. 22 at p. 16:21-22).

The subpoena at issue seeks the deposition of whistleblower Simon Fowles, a resident of the Northern District of California, and the former Head of FX ("foreign currency") trading at Wells Fargo Bank, N.A. on whom the *Nypl* Plaintiffs served a deposition subpoenas set for November 28, 2018 and for December 19, 2018, issued from the Southern District of New York in *Nypl v. JP Morgan Chase & Co. et al.* No. 15-cv-9300 (LGS). (Dkt. No. 9, Exhibits A and G). The subpoena sought the following information from Mr. Fowles:

Schedule A. Topics of Deposition - Topic No. 1: "The reasons given by Mr. Simon Fowles in support of his complaint filed on April 11, 2018."

Schedule B. Requests for Documents and Things - Request No. 1 - "any and all documents, things, communications, and information that support his allegations, including notes, memoranda, or other documents."

*(Id.* at Schedule A).

The *Nypl* Plaintiffs' Third Amended Complaint ("TAC") alleges a conspiracy in restraint of trade among major banks to rig and fix the benchmark exchange rates and prices of foreign exchange ("FX"), through various price manipulations by competitor banks in chat rooms, which the banks sold to consumers and business end-users at inflated prices in violation of the Sherman Act, the Cartwright Act and the California Unfair Competition Act. (Dkt. No. 3, Exhibit B). See *Nypl* Court's Opinions denying motions to dismiss under Fed R. Civ. P. 12(b)(6) and granting leave to file the Third Amended Complaint.

Discovery in the *Nypl* action has revealed hundreds of pages of documents that show that Wells Fargo Bank per Thomas Kiefer was an active participant in the FX chat rooms with competitor banks in which the manipulation and price-fixing of foreign exchange rates took place.[1] (A sample of some of the beginning Bates numbers for these documents are RBS_NYPL,0030046 etc., RBS_NYPL-0030099 etc., RBS_NYPL-0031417 etc.) (Dkt. No. 9, ¶ 8).

On April 11, 2018, Deponent Simon Fowles filed his Complaint against Wells Fargo Bank in the San Francisco Superior Court, removed to the Northern District of California and assigned to the Hon. Edward M. Chen, alleging, *inter alia*:

> Plaintiff had made repeated, strident, clear and unambiguous complaints to many members of the Well[s] Fargo's upper level management team about the significant risks of illegal activity, mail and wire fraud, unlawful profiteering, and regulatory violations that would inevitably and certainly result from the compensation plan used by Wells Fargo to compensate members of the FX Sales and Trading Teams.

(Dkt. No. 9, Exhibit F, ¶3). Fowles continued to allege that:

> In mid-September of 2017, Plaintiff made it very clear to upper management that he intended to inform federal regulators of the significant ethical, legal, and regulatory issues he had noted and been complaining about concerning the FX Sales teams' use of the cash-based incentive program..."

Mr. Fowles was terminated by Wells Fargo Bank, along with other FX executives on October 17, 2017. (Dkt. No. 9, Exhibit F, ¶¶24-26).

On November 28, 2018, Wells Fargo, joined by Fowles, filed a motion to quash the subpoena. (Dkt. Nos. 1 and 15). On December 5, 2018, the *Nypl* Plaintiffs filed an opposition and a motion to compel the deposition of Fowles. (Dkt. No. 6).

On January 18, 2019, Magistrate Judge Spero granted the motion to quash the deposition

---

[1] These documents are under protective order in the *Nypl* case, but may be submitted to the Court for an in-camera review should the Court so request.

subpoena and denied the *Nypl* Plaintiffs' motion to compel on the erroneous grounds that, "The unlawful conduct that's referred in the Fowles' complaint is unrelated to that -- that matter of the benchmark price and is not related to a price-fixing conspiracy." (Dkt. No. 22 at p. 5:11-13). Magistrate Judge Spero granted the motion to quash without any evidence or declaration from Wells Fargo or Fowles making such a claim.

## I.  THE *NYPL* PLAINTIFFS DECLINED AND SPECIFICALLY DID NOT CONSENT A MAGISTRATE JUDGE

As a threshold matter, the *Nypl* Plaintiffs never consented to have a magistrate judge hear the matter. Indeed, they specifically declined a magistrate judge. Under 28 U.S.C. 636(c), "Upon the consent of the parties, a …United States magistrate judge… may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case…" General Order No. 44(E)(3) of this Court states that "unless exempted by another provision" of that General Order, miscellaneous matters shall be assigned to a Magistrate Judge. General Order No. 44 (E)(1)(c) states that, "If a party declines to consent to a United States magistrate judge, the Clerk shall reassign the case to a district judge on a random basis…" Thus, under General Order No. 44(E)(1)(c), any miscellaneous case that is initially assigned to a magistrate judge should be reassigned to a district judge if a party declines to consent to a magistrate judge.

On November 30, 2018, the *Nypl* Plaintiffs submitted a Declination of Magistrate Form to the Court because they did not consent to a magistrate judge. The submission of that form was rejected by the Clerk. (Winters Decl. ¶ 2). The rejection of the *Nypl* Plaintiffs' Declination of Magistrate Form violates this Court's General Order No. 44(E)(3), General Order No. (E)(1)(c), and 28 U.S.C. § 636(c).

In addition, on November 30, 2018, Plaintiffs filed a Motion for an Order Re-Assigning the Case to District Judge Chen, who issued the protective order in the Fowles' case before it

Case 3:18-md-02329-JCS Document 273 Filed 02/01/24 Page 6 of 21

was remanded to state court.  (Dkt. No. 4).  That protective order was implicated by Wells Fargo/Fowles in the briefing on the motion to quash.  (Dkt. No. 1 at p. 9).  Nevertheless, Magistrate Judge Spero denied that Motion on December 6, 2018.  (Dkt. No. 7).

Thus, because this case should have been re-assigned to a District Judge when the *Nypl* Plaintiffs submitted the Declination of Magistrate Form to the Court, Magistrate Judge Spero's decision should now be vacated.

## II.  THE *NYPL* PLAINTIFFS ESTABLISHED THE RELEVANCE OF FOWLES TESTIMONY

Magistrate Judge Spero granted the motion to quash and denied the motion to compel on the grounds that "The unlawful conduct that's referred in the Fowles' complaint is unrelated to that -- that matter of the benchmark price and is not related to a price-fixing conspiracy."  (Dkt. No. 22 at p. 5:11-13).  But the allegations in the Fowles' Complaint are broader than read by the Magistrate Judge, alleging that Wells Fargo's FX Sales Incentive Compensation Program motivated and produced "unethical and potentially illegal behavior."  (Dkt. No. 11, Exhibit F, ¶ 3).  Price fixing, a violation of § 1 of the Sherman Act, 15 U.S.C. § 1, clearly constitutes "unethical and potentially illegal behavior."   Plaintiffs possess evidencing linking Wells Fargo to the price fixing conspiracy alleged by the *Nypl* Plaintiffs.  (*See, supra* at 2:1-7).  Fowles was the former Head of FX Trading for Wells Fargo Bank for the period April, 1996- October, 2017, substantially overlapping the *Nypl* class period from 2007-2013.  Further, the Fowles Complaint also alleges that, Wells Fargo claimed that the, "FX ICP Plan was why the FX group had been so successful over the years."  (*Id*. at ¶ 8).  It defies logic to conclude that Wells Fargo's FX ICP Plan was the reason why Wells Fargo "was so successful over the years" in the absence of Wells Fargo's parallel participation in the foreign currency exchange rate price fixing conspiracy that was in effect at the very same time.

Indeed, Magistrate Judge Spero acknowledged that Judge Schofield, the District Judge overseeing the benchmark exchange rate price fixing cases in the Southern District of New York, found Mr. Fowles testimony to be relevant but rescinded her order compelling the deposition for other reasons:

> THE COURT: Well, I don't know that. That's not entirely correct. If she [Judge Schofield] thought it was irrelevant, they wouldn't have issued the first order so, you know, this is an excellent judge in New York. She doesn't do things without thinking about them. She obviously thought about it and knows this is a nonparty and thought it was relevant. And she may have been persuaded afterwards that someone else should make that decision, and I respect that.

(Dkt. No. 22, p. 16:5-12). Thus, even though Magistrate Judge Spero recognized that Judge Schofield found the testimony to be relevant to the *Nypl* Plaintiffs' claims, he gave the determination of the District Judge overseeing the antitrust conspiracy proceedings no weight.

But most tellingly, neither Wells Fargo nor Fowles submitted any sworn testimony or other evidence disavowing any connection between the unlawful conduct alleged by Fowles and the price fixing claims in the *Nypl* Plaintiffs' TAC. Nevertheless, Magistrate Judge Spero erroneously granted the motion to quash by making an unsupported factual finding with regard to the claims in Mr. Fowles' Complaint.

## CONCLUSION

In light of the foregoing, the *Nypl* Plaintiffs respectfully request that this Court grant the Motion for Relief from Non-Dispositive Pretrial Order of a Magistrate Judge, vacate the decision of Magistrate Judge Spero, and compel the deposition of Simon Fowles.

Dated: February 1, 2019        Respectfully submitted:

       *s/ Joseph M. Alioto*
       JOSEPH M. ALIOTO
       ALIOTO LAW FIRM
       *Attorneys for Nypl Plaintiffs*

EXHIBIT B

Case 3:18-mc-80209-JCS Document 27-3 Filed 03/18/24 Page 9 of 21

JOSEPH M. ALIOTO (SBN 42680)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA 94104
(415) 434-8900
(415) 434-9200
Email: jmalioto@aliotolaw.com

LINGEL H. WINTERS (SBN 37759)
LAW OFFICES OF LINGEL H. WINTERS
388 Market Street, Suite 900
San Francisco, CA 94111
(415) 398-2941
Email: sawmill2@aol.com

*ATTORNEYS for Nypl Plaintiffs*

**FILED**

NOV 3 0 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE* SUBPOENA<br>TO SIMON FOWLES, Non-Party | Misc Case No. 18 80 209-JCS<br><br>**MOTION FOR ORDER REASSIGNING CASE TO JUDGE CHEN** |
| JOHN NYPL, et al.<br><br>     Plaintiffs,<br><br>v.<br><br>JP MORGAN CHASE & CO., et al.<br><br>     Defendants. | Underlying Action:<br>Case No. 1:1 5-cv-093 00-LGS<br>U.S. District Court (S.D.N.Y.)<br>Judge: Hon. Lorna O. Schofield |

*Nypl* Plaintiffs, the issuers of a subpoena to Simon Fowles move the court for an order reassigning the instant Wells Fargo Bank's motion to quash the subpoena served on Simon Fowles to the Honorable Edward M Chen who issued the underlying protective order in *Simon Fowles v. Wells Fargo Bank, N. A.* 3:18-cv-02794-EMC, attached as Exhibit A which Wells Fargo Bank cites in support of its motion to quash the deposition of Simon Fowles at page 5 lines 13-21 of its Memorandum of Points and Authorities in support of its motion to quash subpoena to non-party Simon Fowles, herein.

Dated: November 30, 2018

Respectfully submitted:

*s/ Lingel H. Winters*
LINGEL H. WINTERS
LAW OFFICES OF LINGEL H. WINTERS

*s/ Joseph M. Alioto*
JOSEPH M. ALIOTO
ALIOTO LAW FIRM

*Attorneys for Nypl Plaintiffs*

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIMON FOWLES,

                Plaintiff,

    v.,

WELLS FARGO BANK, N.A.,

                Defendant.

Case No.   3:18-cv-02794-EMC

**[PROPOSED] STIPULATED PROTECTIVE ORDER FOR STANDARD LITIGATION**

1.    <u>PURPOSES AND LIMITATIONS</u>

       Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2.    <u>DEFINITIONS</u>

2.1   <u>Challenging Party</u>: a Party or Non-Party that challenges the designation of information or items under this Order.

     2.2   <u>"CONFIDENTIAL" Information or Items</u>: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

*Ex. 7*

2.3     Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff).

2.4     Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

2.5     Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.6     Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action.

2.7     House Counsel: attorneys who are employees of a party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.8     Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.9     Outside Counsel of Record: attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.10     Party: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.11     Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.12     Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.13     Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.14     Receiving Party: a Party that receives Disclosure or Discovery Material from a

2

1    Producing Party.

2    3.    <u>SCOPE</u>

3           The protections conferred by this Stipulation and Order cover not only Protected Material (as

4    defined above), but also (1) any information copied or extracted from Protected Material; (2) all

5    copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony,

6    conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

7    However, the protections conferred by this Stipulation and Order do not cover the following

8    information: (a) any information that is in the public domain at the time of disclosure to a Receiving

9    Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of

10    publication not involving a violation of this Order, including becoming part of the public record

11    through trial or otherwise; and (b) any information known to the Receiving Party prior to the

12    disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the

13    information lawfully and under no obligation of confidentiality to the Designating Party. Any use of

14    Protected Material at trial shall be governed by a separate agreement or order.

15    4.    <u>DURATION</u>

16           Even after final disposition of this litigation, the confidentiality obligations imposed by this

17    Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order

18    otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and

19    defenses in this action, with or without prejudice; and (2) final judgment herein after the completion

20    and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the

21    time limits for filing any motions or applications for extension of time pursuant to applicable law.

22    5.    <u>DESIGNATING PROTECTED MATERIAL</u>

23           5.1    <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each Party or

24    Non-Party that designates information or items for protection under this Order must take care to

25    limit any such designation to specific material that qualifies under the appropriate standards. The

26    Designating Party must designate for protection only those parts of material, documents, items, or

27    oral or written communications that qualify – so that other portions of the material, documents,

28    items, or communications for which protection is not warranted are not swept unjustifiably within

1   the ambit of this Order.

2        Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown

3   to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily

4   encumber or retard the case development process or to impose unnecessary expenses and burdens on

5   other parties) expose the Designating Party to sanctions.

6   If it comes to a Designating Party's attention that information or items that it designated for

7   protection do not qualify for protection, that Designating Party must promptly notify all other Parties

8   that it is withdrawing the mistaken designation.

9        5.2   <u>Manner and Timing of Designations.</u>  Except as otherwise provided in this Order

10  (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered,

11  Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so

12  designated before the material is disclosed or produced.

13       Designation in conformity with this Order requires:

14       (a)  for information in documentary form (e.g., paper or electronic documents, but

15  excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party

16  affix the legend "CONFIDENTIAL" to each page that contains protected material. If only a portion

17  or portions of the material on a page qualifies for protection, the Producing Party also must clearly

18  identify the protected portion(s) (e.g., by making appropriate markings in the margins).

19  A Party or Non-Party that makes original documents or materials available for inspection need not

20  designate them for protection until after the inspecting Party has indicated which material it would

21  like copied and produced. During the inspection and before the designation, all of the material made

22  available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has

23  identified the documents it wants copied and produced, the Producing Party must determine which

24  documents, or portions thereof, qualify for protection under this Order. Then, before producing the

25  specified documents, the Producing Party must affix the "CONFIDENTIAL" legend to each page

26  that contains Protected Material. If only a portion or portions of the material on a page qualifies for

27  protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making

28  appropriate markings in the margins).

(b) for testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3    Inadvertent Failures to Designate.  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6,    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1    Timing of Challenges.  Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2    Meet and Confer.  The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and

must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3  Judicial Intervention.  If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.  ACCESS TO AND USE OF PROTECTED MATERIAL

7.1  Basic Principles.  A Receiving Party may use Protected Material that is disclosed or

6

produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately

1  bound by the court reporter and may not be disclosed to anyone except as permitted under this

2  Stipulated Protective Order.

3         (g)  the author or recipient of a document containing the information or a custodian or

4  other person who otherwise possessed or knew the information.

5  8.     PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER

6         LITIGATION

7         If a Party is served with a subpoena or a court order issued in other litigation that compels

8  disclosure of any information or items designated in this action as "CONFIDENTIAL," that Party

9  must:

10        (a)  promptly notify in writing the Designating Party. Such notification shall include a

11  copy of the subpoena or court order;

12        (b)  promptly notify in writing the party who caused the subpoena or order to issue in the

13  other litigation that some or all of the material covered by the subpoena or order is subject to this

14  Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

15        (c)  cooperate with respect to all reasonable procedures sought to be pursued by the

16  Designating Party whose Protected Material may be affected.

17        If the Designating Party timely seeks a protective order, the Party served with the subpoena

18  or court order shall not produce any information designated in this action as "CONFIDENTIAL"

19  before a determination by the court from which the subpoena or order issued, unless the Party has

20  obtained the Designating Party's permission. The Designating Party shall bear the burden and

21  expense of seeking protection in that court of its confidential material – and nothing in these

22  provisions should be construed as authorizing or encouraging a Receiving Party in this action to

23  disobey a lawful directive from another court.

24  9.     A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS

25         LITIGATION

26        (a)  The terms of this Order are applicable to information produced by a Non-Party in this

27  action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in

28  connection with this litigation is protected by the remedies and relief provided by this Order.

1  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional

2  protections.

3         (b)  In the event that a Party is required, by a valid discovery request, to produce a Non-

4  Party's confidential information in its possession, and the Party is subject to an agreement with the

5  Non-Party not to produce the Non-Party's confidential information, then the Party shall:

6         (1)  promptly notify in writing the Requesting Party and the Non-Party that some or

7  all of the information requested is subject to a confidentiality agreement with a Non-Party;

8         (2)  promptly provide the Non-Party with a copy of the Stipulated Protective Order in

9  this litigation, the relevant discovery request(s), and a reasonably specific description of the

10  information requested; and

11         (3)  make the information requested available for inspection by the Non-Party.

12         (c)  If the Non-Party fails to object or seek a protective order from this court within 14

13  days of receiving the notice and accompanying information, the Receiving Party may produce the

14  Non-Party's confidential information responsive to the discovery request. If the Non-Party timely

15  seeks a protective order, the Receiving Party shall not produce any information in its possession or

16  control that is subject to the confidentiality agreement with the Non-Party before a determination by

17  the court.  Absent a court order to the contrary, the Non-Party shall bear the burden and expense of

18  seeking protection in this court of its Protected Material.

19  10.  UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

20         If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected

21  Material to any person or in any circumstance not authorized under this Stipulated Protective Order,

22  the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized

23  disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c)

24  inform the person or persons to whom unauthorized disclosures were made of all the terms of this

25  Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to

26  Be Bound" that is attached hereto as Exhibit A.

27  11.  INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED

28         MATERIAL

1  Receiving Party must return all Protected Material to the Producing Party or destroy such material.

2  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations,

3  summaries, and any other format reproducing or capturing any of the Protected Material. Whether

4  the Protected Material is returned or destroyed, the Receiving Party must submit a written

5  certification to the Producing Party (and, if not the same person or entity, to the Designating Party)

6  by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material

7  that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies,

8  abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected

9  Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all

10  pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda,

11  correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant

12  and expert work product, even if such materials contain Protected Material. Any such archival copies

13  that contain or constitute Protected Material remain subject to this Protective Order as set forth in

14  Section 4 (DURATION).

15  IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

16

17  DATED:  6/21/18 _____   _____
                                       Attorneys for Plaintiff

18

19

20  DATED:  6/23/18 _____   _____
                                       Attorneys for Defendant

21

22

23  PURSUANT TO STIPULATION, IT IS SO ORDERED.

24

25  DATED:  _____6/26/2018_____

26                                  _____
                                    Judge Edward M. Chen

27

28                                       11