William A. Hector (SBN 298490)
  Email: wahector@venable.com
VENABLE LLP
101 California St, Suite 3800
San Francisco, Ca 94111
415.653.3738

Frank C. Cimino, Jr. (*pro hac vice*)
  Email: fccimino@venable.com
Megan S. Woodworth (*pro hac* forthcoming)
  Email: mswoodworth@venable.cm
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
202.344.4569

Robert E. Bugg (*pro hac* forthcoming)
  Email: rebugg@venable.com
VENABLE LLP
151 West 42nd Street
New York, NY 10036
212.370.6241

Attorneys for Non-Party
WARDELL STEPHEN CURRY II

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ATHALONZ, LLC<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNDER ARMOUR, INC.<br><br>　　　　　Defendant. | Case No. 3:23-mc-80324-LJC<br><br>**NON-PARTY WARDELL STEPHEN CURRY II'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION** |

## I. DE NOVO DETERMINATION SHOULD BE BASED UPON THE RECORD OF THE PROCEEDINGS BEFORE JUDGE CISNEROS

Athalonz's supplemental brief addressing new exhibits not of record in the proceedings before Magistrate Judge Cisneros is improper. As Local Rule 72 explains, "[e]xcept when the Court grants a motion under Civil L.R. 72-3(b), the Court's review and determination of a motion filed pursuant to Civil L.R. 72-3(a) shall be upon ***the record of the proceedings before the Magistrate Judge***." Civil L.R. 72-3(c) (emphasis added); *see also Facebook, Inc. v. Banana Ads LLC*, No. 11-CV-03619-YGR, 2013 WL 12308492, at *4 (N.D. Cal. Oct. 24, 2013) ("This Court is required to conduct its de novo review of the Motion for Default Judgment 'upon the record of the proceedings before the Magistrate Judge.'"); *Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC*, No. 15-CV-00797-JST, 2016 WL 5930289, at *9 (N.D. Cal. Oct. 11, 2016) ("Unless the court grants an administrative motion to augment the record, the court's review is limited to the record of the proceedings before the magistrate judge."). Accordingly, the Court's review is confined to the record before Magistrate Judge Cisneros, upon which she issued the Order quashing Mr. Curry's subpoena.

Moreover, even if Athalonz has sought to "augment the record," there is no basis to do so. This Court "has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation." *United States v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000). "The discretion to consider new evidence should be ***exercised rarely*** because the purpose of referral to a magistrate judge is to reduce the evidence and issues that must be considered by the district court." *Shenzhenshi,* 2016 WL 5930289, at *9 (emphasis added) (citing *Borden v. Sec'y of Health & Human Servs*., 836 F.2d 4, 6 (1st Cir. 1987). As explained below, Athalonz lacks good cause for supplementing the record under the current facts. Thus, Athalonz's motion for leave should be denied.

## II. ATHALONZ CANNOT SHOW GOOD CAUSE UNDER RULE 7-3(D).

Even if the Court were to consider the merits of Athalonz's motion under Rule 7-3(d), Athalonz fails to demonstrate good cause. While Athalonz suggests that it would be "unfair" to prevent it from addressing this additional evidence, Athalonz's problem is entirely of its own

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

1. making. Athalonz chose to file a subpoena against non-party Stephen Curry ("Mr. Curry") at the
2. beginning of the discovery period and before it sought adequate discovery from Under Armour,
3. the party to the case. The supplemental evidence (Exhibits D-J) are documents produced in
4. response to Athalonz's Interrogatory No. 6, served February 16, 2024. See Ex. 9 at 6-15. The
5. Subpoena to Mr. Curry was served on November 21, 2023—almost three months prior, and the
6. Motion to Quash was granted by Judge Cisneros on February 14, 2024, before interrogatory No.
7. 6 was even propounded.
8.     The supplemental evidence cited in Exhibits D-J is also similar to the evidence Athalonz
9. relied on in its Opposition and considered but found unpersuasive by Judge Cisneros. These
10. documents do not "directly contradict" prior statements, as Athalonz suggests. Supplemental
11. Brief at 1. Rather, they show that Mr. Curry was involved in the development process and
12. provided feedback to Under Armour on the design—facts that Mr. Curry did not dispute and that
13. Athalonz already argued before the Magistrate. See Dkt. 11 at 4-5. And as Mr. Curry and Under
14. Armour have explained in sworn declarations, it is Under Armour—not Mr. Curry—that designs
15. and develops the shape of the soles of the accused Curry products and ultimately "determines"
16. and "chooses" what materials end up in the shoes. Dkt. 1-2 ¶¶ 3-4; Dkt. 1-3 ¶¶ 4-6. Many of the
17. supplemental documents simply discuss Under Armour's incorporation of UA Flow—a
18. proprietary foam developed *by Under Armour* in partnership with Dow chemical—into the Curry
19. shoes, and Mr. Curry's involvement in that decision. That fact does not undercut any of the
20. Magistrate's findings in granting the motion to quash. Thus, Athalonz's suggestions that the use
21. of Flow somehow shows that Mr. Curry was "deeply involved" in "designing and developing the
22. accused features" (Dkt. 28 at 2), and that Mr. Curry "attributed significant value to the patented
23. features" (Exhibit 1 at 6) are wrong.
24.     As properly found by Magistrate Judge Cisneros, "Athalonz's patents describe shoes with
25. soles that slope towards the front and inside edge of each foot and that have a gradient of
26. compressibility that varies across different portions of the sole." Dkt. 23 at 1; *see also* Dkt. 1 at
27. 1 ("the issue of infringement depends on specific design features of the soles of the accused
28. shoes, including whether the soles have specific angular features or materials of differing

1  compressibility in a particular arrangement."). Athalonz refers to these features as the "athletic
2  positioning" aspects of the sole, Dkt. 14 at 1-2; Amended Complaint, Ex. 10 at 4-12. More
3  specifically, each of the asserted claims of U.S. Patent Nos. 10,674,786; 11,013,291 and
4  11,064,760 require that the sole of the shoe be sloped downward from the heel section to the toe
5  section, and downward from the outside edge of the shoe to the inside edge of the shoe in the toe
6  section. Amended Complaint, Ex. 10 at 17-27; Dkt 23 at 1. Each of the asserted claims of U.S.
7  Patent Nos. 11,510,456 and 11,375,768 require that the forefoot platform be constructed such
8  that the sole is more compressible near its inner edge than its outer edge. Amended Complaint,
9  Ex. 10 at 28-37; Dkt 23 at 1. Nothing in Exhibits D-J suggests that the accused Curry products
10 have these features, let alone that Mr. Curry had any involvement in suggesting or requesting
11 such features. Regardless, as Mr. Drew explained, "Under Armour employees possess
12 knowledge of the extent of Curry's involvement in the design, development [and] testing" of the
13 accused Curry Products (Dkt. 1-3, Par. 7), and can testify regarding the same.
14        Furthermore, none of the supplemental evidence alters Judge Cisneros' reasoning or
15 conclusion that:

16 ➤ "Athalonz is entitled to test the accuracy of the declarations Curry offers, but it
17 can do so in the first instance through discovery from … Under Armour" and that "parties must
18 pursue discovery from other parties before issuing subpoenas to non-parties, at least where a
19 party could reasonably be expected to have the same information." (Dkt. 23 at 11);

20 ➤ "Requiring Athalonz to exhaust party discovery first is particularly appropriate
21 here, given that Athalonz will need to review documents and depose witnesses from Under
22 Armour … regardless of whether Curry is also a relevant witness" and nothing suggest[s] that
23 Curry developed the shoes at issue independently, without involvement by Under Armour." (*Id*.);

24 ➤ "Curry's personal experience wearing Under Armour shoes" fails to "shed[]
25 meaningful light on the economic value of Athalonz's claimed invention." (*Id*.);

26 ➤ "Even assuming … Curry's own perception of the value of certain design features
27 were relevant and sufficient to warrant Curry's deposition, efficiency would still favor requiring
28 Athalonz to pursue discovery from Under Armour as to Curry's role in the design and marketing

1  of the shoes before any such deposition takes place, so that the Court could make an informed
2  decision as to whether any limits on the scope of that deposition … are appropriate to avoid
3  undue burden." (*Id*. at 11-12);

4  ➢ "If discovery from Under Armour reveals … that Curry played a meaningful role
5  in designing the allegedly infringing features of Under Armour's shoes, then questions to Curry
6  regarding the POSITA inquiry could perhaps be relevant. But Athalonz should first make such a
7  showing through party discovery." (*Id*. at 12); and

8  ➢ "There is ample time for Athalonz to pursue depositions and document discovery
9  from Under Armour that will help assess whether Curry could be expected to offer uniquely
10 relevant testimony. [There] is no reason why Curry's third-party deposition must proceed now,
11 before Athalonz has determined what information … can be obtained from a party opponent."
12 (*Id*.).

### III. CONCLUSION

For these reasons, Mr. Curry respectfully requests that the Court deny Athalonz's motion for leave to file a supplemental brief.

Dated: April 22, 2024                          VENABLE LLP

                                               By:   */s/ William A. Hector*
                                                     William A. Hector (SBN 298490)
                                                     Frank C. Cimino, Jr. (*pro hac vice*)
                                                     Megan S. Woodworth (*pro hac forthcoming*)
                                                     Robert E. Bugg (*pro hac forthcoming*)

                                                     Attorneys for Non-Party
                                                     WARDELL STEPHEN CURRY II