**EXHIBIT 9**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ATHALONZ, LLC, | § | |
| | § | |
| *Plaintiff,* | § | Case No. 2:23-cv-00193-JRG |
| | § | |
| v. | § | **DEMAND FOR JURY TRIAL** |
| | § | |
| UNDER ARMOUR, INC., | § | |
| | § | |
| *Defendant.* | § | |

## DEFENDANT UNDER ARMOUR, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES (NOS. 6-10)

In accordance with the Federal Rules of Civil Procedure, Defendant Under Armour, Inc. ("Under Armour") hereby objects and responds to Plaintiff Athalonz, LLC's ("Athalonz") Second Set of Interrogatories (Nos. 6-10) (the "Interrogatories") as follows.

Discovery is ongoing in this case and Under Armour's own investigation is ongoing. The following responses are based upon information and documentation that is currently available and specifically known to Under Armour following a reasonable and ongoing investigation, and are given without prejudice to Under Armour's right to produce or rely on subsequently discovered, uncovered, or learned information or documents. It is anticipated that further discovery, independent investigation, and analysis may lead to the discovery of additional documents, supply additional facts, and add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to additions to, changes to, or variations from the information set forth herein. The responses herein reflect Under Armour's good faith effort to provide responsive information and documents now known to Under Armour, but Under Armour specifically reserves the right both to supplement and amend any of the responses set forth

below and to utilize at trial any further information or documents revealed by further discovery, independent investigation, and analysis.

Under Armour's response to any Interrogatory is not an admission or acknowledgment that such information is relevant to this action or, where appropriate, that any particular information or documents exist, are non-privileged, or are admissible in evidence. Under Armour's response shall not prejudice its right to assert at the time of taking testimony, in argument, or at any other subsequent proceeding in this action, that such information or documents are inadmissible, irrelevant, immaterial, or not the proper basis for discovery, and Under Armour's response is without prejudice to any objection to any future use of such information or documents that Under Armour may make.

## **GENERAL OBJECTIONS**

The following General Objections and statements shall be incorporated into Under Armour's response to each Interrogatory, whether or not mentioned expressly in any particular response. Under Armour does not waive any of its General Objections by stating specific objections to any particular Interrogatory. Under Armour also reserves the right to make additional objections as the need may arise.

1.      Under Armour objects to the Interrogatories, and to each definition and instruction, to the extent they seek to impose obligations on Under Armour that are different from or greater than those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Texas, the individual rules and practices of the presiding Judge and/or Magistrate Judge, applicable standing orders, case law, and other applicable rules (collectively, the "Rules"), or the Scheduling Order governing this action.

2.      Under Armour objects to these Interrogatories to the extent they seek information or production of documents related to aspects of Under Armour's business and technology that are

unrelated to the subject of the present dispute. Such information and documents are neither relevant to the subject matter of this dispute nor proportional to the needs of the case.

3.      Under Armour objects to the Interrogatories to the extent that they seek information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. Such information will not be provided in response to the Interrogatories. No response from Under Armour to any Interrogatory constitutes a waiver of any such applicable privilege, protection or immunity. The inadvertent production of any privileged information shall not be a waiver of privilege or any other ground for objecting to discovery with respect to such response.

4.      Under Armour objects to the Interrogatories to the extent they call for a legal opinion, interpretation, or conclusion.

5.      Under Armour objects to the Interrogatories, including the definitions and instructions incorporated therein, to the extent that they are overly broad, unduly burdensome, not properly limited in time and/or scope, and/or seek information that is neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

6.      Under Armour objects to the Interrogatories to the extent that they seek the identity of documents or information that is outside of Under Armour's possession, custody, or control.

7.      Under Armour objects to each Interrogatory to the extent that the discovery sought is unreasonably cumulative or duplicative, and/or is obtainable by Athalonz from some other source that is more convenient, less burdensome and/or less expensive.

8.      Under Armour objects to each Interrogatory to the extent it calls for information that consists of proprietary business information or other confidential information. To the extent such information exists, it will only be provided at a secure location, and disclosure of these

responses shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s) and are to be used for purposes of this litigation only.

9.      Under Armour objects to the Interrogatories to the extent that they seek information that is subject to an obligation of confidentiality to a third party. Such information will not be provided unless the terms of the obligation have been satisfied to permit this.

10.      Under Armour objects to the Interrogatories to the extent they seek information that is in the public domain or equally available to Athalonz on the basis that it is equally convenient for Athalonz to compile and/or obtain such material.

11.      Under Armour objects to each Interrogatory as premature to the extent that a response would require, or is more properly addressed by, expert discovery. Expert discovery has not yet begun. Under Armour reserves the right to supplement its responses following expert discovery and/or as required by the Federal Rules of Civil Procedure or the Scheduling Order governing this action.

12.      Under Armour objects to each Interrogatory as premature to the extent that a response would require claim construction.

13.      Under Armour objects to each Interrogatory that includes more than one separately stated interrogatory. In such cases, each subpart will be counted as a separate Interrogatory.

14.      Under Armour objects to each interrogatory to the extent that it is vague, ambiguous, incomprehensible or contains terms whose meanings are undefined or unclear.

15.      Under Armour specifically objects to the following Definitions:

i.      Under Armour objects to the definitions of "Defendant," "Under Armour," "UA," "You," and "Your" as overly broad, unduly burdensome and beyond the obligations

imposed by the Federal Rules of Civil Procedure. Under Armour will respond to the Interrogatories only on behalf of itself.

      ii.    Under Armour objects to the definition of "Accused Products" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and beyond the obligations imposed by the Federal Rules of Civil Procedure. Under Armour limits its responses herein to only those products specifically accused in Athalonz's infringement contentions served on September 14, 2023.

      iii.    Under Armour objects to the definitions of "communications," "document," "documents," "person," "refer," "relate to," and "concerning," on the grounds that these definitions are vague and ambiguous, overly broad and unduly burdensome, and impose obligations on Under Armour greater than or different from the Rules.

      iv.    Under Armour objects to the definitions of "Identify" to the extent it imposes obligations on Under Armour that are greater than or different from those imposed in the Rules, and on the ground that its uses terms and phrases that are vague, ambiguous, overly broad, and unduly burdensome. Under Armour further objects to this definition to the extent it calls for Under Armour to speculate about unknown facts. Under Armour further objects to this definition on the ground that it calls for Privileged Information; Under Armour will not disclose Privileged Information in response to these Interrogatories. To the extent Under Armour identifies anything in response to these Interrogatories, it will do so in a manner reasonably appropriate in the circumstances of any particular Interrogatory.

    16.    Under Armour objects to Instruction No. 1 to the extent that it seeks information that is subject to an obligation of confidentiality to a third party. Such information will not be provided unless the terms of the obligation have been satisfied to permit this. Under Armour further

objects to Instruction No. 1 to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

17.     Under Armour objects to Instruction No. 3, as Under Armour's search for responsive documents and information is ongoing, and it cannot identify at the time these objections and responses are served, each privileged document that it may uncover through its investigation.

### SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 6:

Identify and describe the involvement and role that each of the Sponsored Athletes have had and currently have with each of the Accused Products, including but not limited to: i) an explanation of each of the Sponsored Athletes' responsibilities, tasks, and role with regard to the design, development, marketing, advertisement, and sale of each of the Accused Products, and ii) an identification of each meeting each of the Sponsored Athletes had with Under Armour employees regarding any of the Accused Products, which employees attended that meeting, and what was discussed at that meeting. Your answer should include an identification of all documents and communications related to Your answer (by Bates range) and the persons most knowledgeable about Your answer.

### RESPONSE TO INTERROGATORY NO. 6:

In addition to its General Objections incorporated herein by reference, Under Armour objects to this Interrogatory as overly broad, unduly burdensome, vague and ambiguous, and requiring Under Armour to speculate as to scope with respect to the phrases "each of the Sponsored Athletes' responsibilities, tasks, and role with regard to the design, development, marketing, advertisement, and sale of each of the Accused Products," "each meeting each of the Sponsored Athletes had with Under Armour employees regarding any of the Accused Products, which employees attended that meeting, and what was discussed at that meeting," and "identification of … the persons most knowledgeable about Your answer."  Under Armour further objects to this Interrogatory to the extent it calls for information irrelevant to any party's claims or defenses in this action and/or is not proportional to the needs of this case.  Under Armour further objects to

this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product privilege. Under Armour further objects to this Interrogatory to the extent that it seeks documents or information that are outside of Under Armour's possession, custody, or control.

Subject to and without waiving its foregoing General and Specific Objections, Under Armour responds as follows. For each season of footwear, Mr. Curry is generally involved in the development process starting in July of the year prior to the release. Mr. Curry typically provides feedback on the current model, including what he likes and doesn't like, and an Under Armour designer will start a creative brief for the new Curry shoe(s). Four to six weeks later, an Under Armour designer will show Mr. Curry the initial designs and tweak the designs with any aesthetic feedback provided by Mr. Curry. Two to three months later, Under Armour would present a sample for Mr. Curry to perform a fit test and get approval on the design from Mr. Curry. After Mr. Curry's approval, salesman samples would be built, after which no significant design changes to the shoe would be made. Mr. Curry typically provides the most attention to the signature footwear (i.e., the Curry 8, 9, 10, 11, etc.). Mr. Curry does not design or develop the shape of the soles, or any other component of the Curry products, nor does he determine what materials are used in the soles, or any other component, of the Curry products.

After a reasonable and diligent search, Under Armour has identified the following specific meetings with Mr. Curry:

- February 20, 2019

    o Location: The Practice Facility in Walnut Creek, California.

    o Attendees: Stephen Curry, David Bond - former General Manager of Curry, Fred Dojan - former footwear innovation teammate, Tom Ludecke - Sr. Director, Development and Design, Innovation.

- o Details: Under Armour presented four prototypes that included Under Armour Flow technology first introduced in the Curry 8.

- March 22, 2019

  - o Location: Warriors Practice Facility in San Francisco, California.

  - o Attendees: Stephen Curry, Craig Nomi - Director, Footwear Development, Chris Stone - former Sports Marketing teammate.

  - o Details: showed Mr. Curry Under Armour Flow footwear prototypes.

- May 17-18, 2019

  - o Location: Under Armour offices in Portland, Oregon.

  - o Attendees: Stephen Curry, Tom Ludecke, Fred Dojan, Chris Stone.

  - o Details: discussed Flow footwear technology.

- June 24, 2019

  - o Location: Four Seasons, ShenZhen, China.

  - o Attendees: Stephen Curry, David Bond and Under Armour's Asia innovation team.

  - o Details: discussed Flow footwear technology.

- August 20, 2019

  - o Location: Under Armour Headquarters in Baltimore, Maryland.

  - o Attendees: Stephen Curry, David Bond, Steve Seagers - PLM for Curry, Chris Stone, Clay Dean – Chief Innovation Officer, Tom Luedecke.

  - o Details: Discussed Curry business and Curry footwear for upcoming seasons.

- November 26, 2019

  - o Location: restaurant in Stanford, California.

  - o Attendees: Stephen Curry, Tom Ludecke, David Bond, Steve Seagers.

  - o Details: discussed Curry Flow shoes.

- January 20, 2020

  - o Location: Under Armour offices in Portland, Oregon.

- o Attendees: Stephen Curry, Tom Ludecke, Fred Dojan, Rob Lanzer - Sr. Manager, Biomechanics Researcher, Innovation.

- o Details: Meeting with Under Armour Biomechanics and Innovation Teams.

- March 3, 2021

  - o Location: Virtual.

  - o Attendees: Stephen Curry, Nick DePaula – consultant to SC30 Inc., Chris Stone.

  - o Details: discussed Curry 9 design and feedback from Mr. Curry after a wear test.

- March 18, 2021

  - o Location: Virtual.

  - o Attendees: Stephen Curry, Ryan Drew – GM of Curry Brand, Fred Dojan, Rob Lanzer, Chris Stone, Tom Luedecke, Monie Gaba – Footwear Development Director - Innovation.

  - o Details: Innovation Athlete Interview Webex

- August 2022

  - o Location: Curry Camp, Menlo Park, California.

  - o Attendees: Stephen Curry, Ed Wallace – Senior Footwear Designer, Steve Seagers and other Under Armour teammates.

  - o Details: showed sample footwear to Mr. Curry.

- September 30, 2022

  - o Location: Under Armour office in Portland, Oregon.

  - o Attendees: Stephen Curry, Ryan Drew, Steve Seagers and Tom Ludecke.

  - o Details: Discussed Curry 9 and Curry 10 shoes and development.

- July 2023

  - o Location: San Francisco, California.

  - o Details: Content shoot for the Curry 11 focused solely on content creating. No discussion of footwear.

- August 2023

    o Location: Curry Camp, Menlo Park, California.

    o Attendees: Stephen Curry, Steve Seagers, Ed Wallace, Gabe Heller – Director Footwear – Curry Brand, UA Basketball, Volleyball, Nana Dadzie - head of global marketing.

    o Details: Discussed upcoming Curry products, Mr. Curry may have tried on shoes to get a feel for the sizing.

- September 2023

    o Location: Baltimore, Maryland.

    o Attendees: Steve Seagers, Ryan Drew and other Under Armour teammates.

    o Details: showed Mr. Curry upcoming product including the Curry 12 and Curry golf apparel.

- December 2023

    o Attendees: Stephen Curry, Ed Wallace and Steve Seagers.

    o Details: showed Mr. Curry final samples of Curry 12, new samples of Curry 13 and Curry Cozy 2.

- October or November 2023

    o Attendees: Stephen Curry, Stephanie Linartsz – Under Armour CEO, Steve Seagers, Ryan Drew, Gabe Heller, and Nan Dasidi.

    o Details: Quarterly Business Review. Discussed marketing, sales, and the Curry business.

- February 2024,

    o Location: Virtual.

    o Attendees: Steve Seagers, Ryan Drew, Gabe Heller, Nan Dasdi, Stephanie Linartz, Jim Dausch - Chief Consumer Officer.

    o Details: Quarterly Business Review. Discussed marketing, sales, and the Curry business.

For each season of footwear, Mr. Harper is generally involved in the development process starting in July of the year prior to the release. Footwear-specific meetings typically occur two or

three times a year, wherein Mr. Harper typically confirms styles, colorways and special promo shoes presented by Under Armour for the current season, and Under Armour introduces new designs to Mr. Harper for the next season. Some meetings would also cover Under Armour accessories, including batting gloves and sleeves. Mr. Harper typically has provided feedback about cosmetic aspects of the Harper cleats, including his preference on certain colorway schemes, and his experience wearing the footwear. Mr. Harper was otherwise not involved in the design or development of the Harper cleats, including in the design or development of the shape, construction or technical aspects of the soles of the cleats, nor has he been involved in deciding what materials are used in the soles, or any other component, of the cleats. Mr. Harper was never asked to provide, and never did provide, any design suggestions or feedback to Under Armour regarding the accused features of the Harper cleats (i.e., the shape, construction or technical aspects of the soles of the cleats, or the materials used in the soles of the cleats), or any potential benefits regarding those features.

Employees of Under Armour that attended meetings with Mr. Harper include Spencer Hawkins - Sr. Design Lead Footwear, and Chris Warren - Lead Athlete Solutions, Marketing who attended all meetings with Mr. Harper. Other Under Armour employees who attended one or more meetings include Ryan Collins – Sports Marketing, Eric Mayes – former Sports Marketing, Colin Cornin – former Sports Marketing, Gulian Gary – Sports Marketing, Sarah Danforth - Sr. PLM, Diamond Sports, AM Football & Lax, and Bryan Heasley - PLM, Diamond Sports.

After a reasonable and diligent search, Under Armour has identified the following specific meetings with Mr. Harper:

- September 21, 2018

  o Location: Nationals Park in Washington, DC.

- o   Details: Discussed the Harper 4, confirmed early season colorways for the next season, may have introduced the Harper 5 concept.  Discussed the possibility of Mr. Harper going to Portland for biomechanical testing, which never occurred.

- March 13, 2019

  - o   Details: confirmed colorways and special events for Harper 4.  Introduction of storytelling/design for the Harper 5.

- July 2019

  - o   Location: Citizens Bank Park.

  - o   Details:   Design review of Harper 5 to get Mr. Harper's input on styles and colorways before salesmen samples were developed.

- January 14, 2020

  - o   Location: Under Armour Headquarters in Baltimore, Maryland.

  - o   Details: showed salesman sample of the Harper 5, as well as materials and options for player editions and special games.

- May 20, 2020

  - o   Location: Virtual.

  - o   Details: Discussed Harper 5 and product review of the Harper 6.

- January 21, 2021

  - o   Location: Virtual.

  - o   Details:  Discussed Harper 6 and Harper 7 design and theme.

- April 27, 2021

  - o   Location: Virtual.

  - o   Details:  Showed Mr. Harper first samples of Harper 7.

- August 11, 2021

  - o   Location: Virtual.

  - o   Details:  Showed Mr. Harper sample imagery, discuss colorways.

- First Quarter 2022

  o Location: Virtual.

  o Details: Showed Mr. Harper new design of Harper 8.

Under Armour introduced Mr. Spieth to the concept design of the Spieth 4 shoe in March of 2019 and Mr. Spieth provided initial feedback on the new design. In September of 2019, Mr. Spieth fit tested the Spieth 4. Mr. Spieth was not involved in the design or development of the shape, construction or technical aspects of the soles of the Spieth 4, nor has Mr. Spieth been involved in deciding what materials are used in the soles of the Spieth 4. Mr. Spieth has not provided any design suggestions to Under Armour regarding the accused features of the Spieth 4 (i.e. the shape, construction or technical aspects of the soles of the Spieth 4, or the materials used in the soles of the Spieth 4), or any potential benefits regarding the accused features of the Spieth 4.

Employees of Under Armour that attended meetings with Mr. Spieth include Mike Forsey - former Under Armour footwear developer, Mike Glancy - former Under Armour footwear designer, and Ryan Collins - Sr. Director, Global Sports Marketing. Representatives for Mr. Spieth would also have attended.

After a reasonable and diligent search, Under Armour has identified the following specific meetings with Mr. Spieth:

- March 2019

  o Location: Dallas National Golf Club, Dallas Texas.

  o Attendees: Jordan Spieth, Mike Glancy, Mike Forsey, Ryan Collins.

  o Details: discussed what Under Armour was planning for the Spieth 4, introduced and explained the shoe to Mr. Spieth. Gathered initial feedback on the new design from Mr. Spieth and likely discussed his current footwear.

- September 23, 2019

  o Location: Cave Valley Golf Club in Baltimore, Maryland.

  o Attendees: Jordan Spieth, Mike Glancy, Mike Forsey.

  o Details: Photoshoot and discussed Spieth 4.  Mr. Spieth fit tested the Spieth 4, likely provided comments on it.

- November 19, 2019

  o Location: Trinity Forest Golf Club in Dallas, Texas.

  o Attendees: Jordan Spieth, Mike Glancy, Mike Forsey, Ryan Collins.

  o Details: Introduced Mr. Spieth to the Spieth 5.  Mr. Spieth may also have worn the Spieth 4 and hit some balls.

Mr. Curry, Mr. Harper and Mr. Spieth are not responsible for the marketing, advertisement or sale of the Accused Products.  Under Armour creates marketing plans and marketing style guides for the accused Curry, Harper and Spieth products.  Mr. Curry, Mr. Harper and Mr. Spieth, and/or their associated teams, will review marketing imagery and copy and will approve the same. Mr. Curry, Mr. Harper and Mr. Spieth will participate in the creation of marketing imagery, but have no role in determining where or how the Under Armour products are marketed.

Under Armour has also produced responsive documents from which information responsive to this Interrogatory may be derived or ascertained pursuant to Rule 33(d) of the Federal Rules of Civil Procedure.

For Mr. Harper, see: UA0000046-51; UA0000244-48; UA0002753-56;     UA0002802-85;  UA0002886-959;  UA0002960-64;  UA0002965-3026;  UA0003031-36;  UA0006230-64; UA0006265-98; UA0006299-333; UA0006334-67; UA0006368; UA0006370-445; UA0006446; UA0006447-81;   UA0006482-515;   UA0006516-49;   UA0006550-89;   UA0006592-626; UA0006755;  UA0007303-06;  UA0007846-47;  UA0007849;  UA0007852;  UA0007853; UA0007854;  UA0007855;  UA0007894;  UA0007928-65;  UA0008033;  UA0008042-59;

UA0008066-94;    UA0008096-117;    UA0008128-66;    UA0008167-204;    UA0008205-43;

UA0008244-81;    UA0008286-307;    UA0008324-35;    UA0008336-58;    UA0008366-77;

UA0008420-25;    UA0008465-87;    UA0008491-502;    UA0008604-06;    UA0008617-29;

UA0008644;  UA0008893;  UA0008894-905;  UA0008906;  UA0008907;  UA0008949-9031;

UA0009102-07;  UA0011498;  UA0011499-581;  UA0011736;  UA0011751-53;  UA0011822;

UA0011826;  UA0011870;  UA0011871-932;  UA0011977-79;  UA0011985-87;  UA0011990;

UA0011991;  UA0011996;  UA0011997-2064;  UA0012065;  UA0012066;  UA0012067-69;

UA0012089-137.

For Mr. Curry see: UA0000078-86; UA0000111-39; UA0000143-57; UA0000422-31;

UA0000465-74; UA0000604-12; UA0000613-20; UA0000621-31; UA0000652-64; UA0003647-

711;  UA0005153-223;  UA0006041-69;  UA0006082-83;  UA0011627;  UA0011628-710;

UA0011740; UA0011824; UA0011825; UA0011865; UA0011867; UA0011869; UA0011981;

UA0011988; UA0011989; UA0011992; UA0011993; UA0011995; UA0012071; UA0012072-

75; UA0012076-77; UA0012088; UA0012138; UA0012141.

For Mr. Spieth see: UA0000091-97; UA0000229-38; UA0000683-91; UA0002370-407;

UA0002471-599; UA0010045; UA0010053; UA0010351-79; UA0011994; UA0012070.

Under Armour reserves all rights to supplement or amend its response to this Interrogatory

as discovery continues.

**INTERROGATORY NO. 7:**

Identify and describe the role and responsibilities of the three individuals most knowledgeable about each of the following areas for each individual Accused Product: i) design, ii) development, iii) manufacturing, iv) marketing, v) advertisement, and vii) sale.

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to its General Objections incorporated herein by reference, Under Armour objects to this Interrogatory as overly broad, unduly burdensome, vague and ambiguous, and

requiring Under Armour to speculate as to scope with respect to the phrase "identify … the three individuals most knowledgeable about each of the following areas…."  Under Armour further objects to this Interrogatory to the extent it calls for information irrelevant to any party's claims or defenses in this action and/or is not proportional to the needs of this case.  Under Armour further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product privilege.

Subject to and without waiving its foregoing General and Specific Objections, Under Armour responds as follows.  In footwear development, Under Armour assigns a designer and developer to specific footwear lines.  The assigned designer would have knowledge of the design of a specific model of footwear.  The assigned developer would be responsible for working with Under Armour's factory partners to develop tooling used in commercializing footwear designs and have knowledge of both the development and the manufacturing process.  Under Armour has provided a list of assigned designers and developers at UA0011472-96.

Regarding marketing, Ryan Drew, Vice President, Curry Brand, would have knowledge of marketing of footwear in the Curry line.  Jim Bel Bruno, Senior Director, Brand Marketing would have knowledge regarding marketing of golf, baseball, volleyball and training products.  Dimitrija Georgiev, Sr. Director, Brand Media & Acquisition Marketing, would have knowledge of channels used to advertise Under Armour products to consumers.  Katie Fink, Sr. Director, FP&A, Finance and Craig Costabile, Sr. Manager, FP&A, Finance, have knowledge of the sales of Under Armour products and reporting on the sales of Under Armour products.

Under Armour reserves all rights to supplement or amend its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 8:**

Identify and describe the structure of the team involved in designing each of the Accused Products, including identifying the separate groups within each team responsible for each allegedly separate feature of the Accused Products (e.g., upper section, insole, midsole, outsole, laces, cleats/bottom).

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to its General Objections incorporated herein by reference, Under Armour objects to this Interrogatory as overly broad, unduly burdensome, vague and ambiguous, and requiring Under Armour to speculate as to scope with respect to the phrase "the structure of the team involved in designing each of the Accused Products, including . . . the separate groups within each team responsible for each allegedly separate feature of the Accused Products (e.g., upper section, insole, midsole, outsole, laces, cleats/bottom)." Under Armour further objects to this Interrogatory to the extent it calls for information irrelevant to any party's claims or defenses in this action and/or is not proportional to the needs of this case. Under Armour further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product privilege.

Subject to and without waiving its foregoing General and Specific Objections, Under Armour responds as follows. Each footwear product that Under Armour develops for commercial sale is assigned a Product Line Manager ("PLM"), a designer, and a developer. The product line manager is tasked with the creation of a seasonal line plan for specific footwear lines and ensuring the timely delivery of Under Armour footwear products. A designer is tasked with creating the designs for footwear in the seasonal line plans. After a product is designed, developers work with Under Armour partner factories to create the specific tooling used to build Under Armour footwear. The triad of team members works together to produce and commercialize Under Armour footwear. While other PLMs, designers or developers or supervisory teammates may comment or

17

make suggestions on certain aspects of footwear products, the PLM, designers and developers assigned to specific footwear products are responsible for decisions in creating the product. A list of PLM, designers and developers related to the Accused Products is at UA0011472-96.

Under Armour reserves all rights to supplement or amend its response to this Interrogatory as discovery continues.

## INTERROGATORY NO. 9:

State Your contentions as to the relevant field of art and the level of education, work experience, and skill that You contend is applicable to the person of ordinary skill in the art of the subject matter of the Asserted Patents as of the priority date of each Asserted Patent, and the basis for Your description.

## RESPONSE TO INTERROGATORY NO. 9:

In addition to its General Objections incorporated herein by reference, Under Armour objects to this Interrogatory as overly broad, unduly burdensome, vague and ambiguous. Under Armour further objects to this Interrogatory as premature to the extent it seeks the disclosure of expert opinion before the date for such disclosure as set forth in the Court's Docket Control Order (Dkt. 35). Under Armour further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product privilege. Under Armour further objects to this Interrogatory to the extent it calls for legal conclusions.

Subject to and without waiving its foregoing General and Specific Objections, Under Armour responds as follows. A person of ordinary skill in the art of the subject matter of the Asserted Patents as of the priority date of each Asserted Patent would have (1) at least a B.S. or equivalent degree related to industrial or product design and at least two years' experience designing or developing athletic shoes; or (2) at least five years' experience designing or developing athletic shoes.

Under Armour reserves all rights to supplement or amend its response to this Interrogatory as discovery continues.

**INTERROGATORY NO. 10:**

Identify each individual Under Armour footwear product (including each and every version and release of each product) manufactured using the same last, insole mold, midsole mold, and/or outsole mold as any of the Accused Products.

**RESPONSE TO INTERROGATORY NO. 10:**

In addition to its General Objections incorporated herein by reference, Under Armour objects to this Interrogatory as overly broad, unduly burdensome, vague and ambiguous, and requiring Under Armour to speculate as to scope with respect to the phrase "each individual Under Armour footwear product (including each and every version and release of each product) manufactured using the same last, insole mold, midsole mold, and/or outsole mold as any of the Accused Products." Under Armour further objects to this Interrogatory to the extent it calls for information irrelevant to any party's claims or defenses in this action and/or is not proportional to the needs of this case. Under Armour further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product privilege. Under Armour further objects to this Interrogatory to the extent that it seeks documents or information that are outside of Under Armour's possession, custody, or control.

Subject to and without waiving its foregoing General and Specific Objections, Under Armour responds as follows. Under Armour has produced a list of styles built with the same tooling as the Accused Products at UA0011472-96.

Under Armour reserves all rights to supplement or amend its response to this Interrogatory as discovery continues.

Dated: April 1, 2024                         Respectfully submitted,

*/s/ Frank C. Cimino, Jr.*

Frank C. Cimino, Jr.
Megan S. Woodworth
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC  20001
202.344.4569
202.344.8300 – Facsimile
fccimino@Venable.com
mswoodworth@Venable.com

Robert E. Bugg
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas
New York, NY  10020
212.370.6241
212.307.5598 – Facsimile
rebugg@Venable.com

***Attorneys for Defendant Under Armour, Inc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certified that a true and correct copy of the above and foregoing document has been served by electronic mail on April 1, 2024 to all counsel for Athalonz.

*/s/ Robert E. Bugg*
Robert E. Bugg