**EXHIBIT 10**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| ATHALONZ, LLC, | § | |
| | § | Case No. 2:23-cv-0193-JRG |
| Plaintiff, | § | |
| | § | DEMAND FOR JURY TRIAL |
| v. | § | |
| | § | |
| UNDER ARMOUR, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF ATHALONZ, LLC'S FIRST AMENDED COMPLAINT

Plaintiff Athalonz, LLC ("Athalonz") files this First Amended Complaint against Defendant Under Armour, Inc. ("Defendant"), and respectfully shows the Court as follows:

## I.
## NATURE OF THE ACTION

1.     Athalonz's inventors developed breakthrough technology in sports footwear to immediately help athletes improve athletic performance. They did this with innovative footwear that shifts athletes' weight so that they naturally adopt an athletic stance that efficiently transfers force during movement. For example, a golfer wearing shoes equipped with Athalonz technology will adopt a more efficient athletic stance that results in greater driving distance and better accuracy. But Athalonz's technology goes far beyond golf—it is game-changing for all sports that require an athlete to adopt an athletic position, such as baseball, football, basketball, soccer, tennis, running, skiing, and athletic training. Athalonz's inventors were awarded patents for their innovations.

2.     Professional athletes and coaches lauded their designs. When Tommy Hunter, a pitcher for Major League Baseball's Baltimore Orioles switched to shoes with Athalonz technology, he experienced a 43% improvement in his Earned Run Average (ERA), a 29%

PLAINTIFF ATHALONZ, LLC'S FIRST AMENDED COMPLAINT

improvement in his Walks and Hits Per Innings Pitched (WHIP), and a 53% improvement in Home Runs Per Nine Innings (HR/9). Mr. Hunter remarked, "I don't know how the shoes work, I just know I throw 6 mph harder with better control." Other professional athletes agreed. Minor league pitcher Michael Peoples, minor league outfielder Royce Bollinger, softball player Eddie Chatham, softball player Vincent Sieckowski, and many others applauded the Athalonz technology as immediately improving their athletic abilities without sacrificing comfort.

3. Athalonz's technology was so compelling that Under Armour took Athalonz's ideas and intellectual property without authorization and incorporated Athalonz's patented technology into Under Armour shoes.

4. Athalonz has no recourse but to file this action to stop Under Armour's misuse of its intellectual property. Athalonz has invested millions of dollars and a decade of hard work to develop and commercialize products embodying its intellectual property. Athalonz cannot fairly compete against a behemoth like Under Armour unless its intellectual property is respected.

5. In the end, this case is about ensuring a level playing field so small competitors like Athalonz can compete fairly based on their hard work and protected innovations against larger companies like Under Armour.

## II.
## PARTIES

6. Athalonz, LLC (originally named AdMark Athletic Ventures) was formed in 2011 under the laws of the State of Texas. Athalonz's principal place of business is located at 2716 North Ogden Road, Suite 101 Mesa, AZ 85215. It filed patents describing and claiming the pioneering inventions in this case and owns the resulting patents. Timothy Markison and Michael "Rick" Adair, a former pitching coach for the Baltimore Orioles, are the named inventors. Mr. Markison serves as Athalonz's Chief Executive Officer.

7.     Upon information and belief, Under Armour, Inc. is a publicly traded corporation organized and existing under the laws of the State of Maryland, with a place of business at 1020 Hull Street, Suite 300, Baltimore, MD 21230-5358.

## III.
## JURISDICTION AND VENUE

8.     This is a civil action asserting claims of patent infringement of U.S. Patent Nos. 11,013,291 ("the '291 patent"); 11,064,760 ("the '760 patent"); 10,674,786 ("the '786 patent"); 11,510,456 ("the '456 patent"); and 11,375,768 ("the '768 patent") (collectively, the "Asserted Patents").

9.     This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

10.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).  Under Armour has offered and sold, and continues to offer and sell, its infringing products in this District.  For example, on information and belief, Under Armour sells and offers to sell the infringing products to partners or customers at the Under Armour Factory House at 820 West Stacy Road, Suite 518, Allen, TX 75013.  Under Armour has committed acts of patents infringement in this District and regularly does business in this District, including at the aforementioned Under Armour Factory House, which is a regular and established place of business of Under Armour.

11.     This Court has personal jurisdiction over Under Armour.  Under Armour has continuous and systemic business contacts with the State of Texas.  Under Armour, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products in the State of Texas and in this District.  Under Armour, directly and/or through subsidiaries or intermediaries, has purposefully and voluntarily placed its infringing products into this District and into the stream of

PLAINTIFF ATHALONZ, LLC'S FIRST AMENDED COMPLAINT – page 3

commerce with the intention and expectation that they will be purchased and used by consumers in this District, including at its Allen, TX store.

## IV.
## BACKGROUND

### A.    Athalonz and Its Patented Technology

12.    When a baseball player is up at bat, he has a lot on his mind: who is on base, how many outs there are, the pitcher's style, the blinding sun, signals from his manager, and so on. Thinking about athletic positioning cannot be one of those things.  If it is, the batter is at a severe disadvantage.

13.    Due to sub-optimal athletic positioning, many athletes do not live up to their full potential.  For example, a baseball player adopting optimal athletic positioning has his feet engaged through the balls of his feet, his knees slightly bent, his backside sticking out slightly, his core engaged, his spine elongated, and his chest over his toes.  An athlete in this stance can more efficiently transfer force from the ground to his body and then to the ball, producing more power and reducing his risk of injury.  But for all its benefits, most athletes struggle to consistently adopt this unnatural pose and require continuous training for it to become second nature.

14.    Athalonz was founded in 2011 to solve this problem.  Co-founders Tim Markison and Michael "Rick" Adair, then-pitching coach for the Baltimore Orioles, conceptualized footwear that encouraged an ideal stance for executing an athletic movement across multiple sports.  Mr. Markison and Mr. Adair knew that all athletes—from professionals to little leaguers—would benefit from more efficient form with their "Optimal Athletic Positioning" ("OAP") technology.

15.    To accomplish this, Athalonz's inventors developed footwear that naturally encourages athletes to adopt optimal athletic positions.  When an athlete wears the innovative footwear, the particularly three-dimensional sloped shape and compressibility of the shoe shifts

PLAINTIFF ATHALONZ, LLC'S FIRST AMENDED COMPLAINT – page 4

the athlete's weight into an ideal athletic stance. Optimal athletic positioning becomes one less thing competing for an athlete's attention.

16. Athalonz's inventors devised an embodiment of footwear with a flat heel from the inner to outer edge of the shoe, a first downward slope from heel to toe along the outer edge of the midfoot and toe sections, a second downward slope along the inner edge of the midfoot and toe sections, and a varying inward slope from the outer to inner edges of the midfoot and toe sections. A simplified block diagram of an example of this three-dimensional solution to the optimal athletic positioning problem is shown below in figures from the '786 patent.



*Figure 1. Figures from the '786 patent, which illustrate possible isometric and cross-sectional views of the inventions.*

17.     Additional figures from the '786 patent demonstrate this three-dimensional solution in the context of a specific embodiment.



*Figure 2.  Figures from the '786 patent, which illustrate possible embodiments of the inventions.*

18.     Athalonz's inventors also devised footwear with a gradient of compressible material in the forefoot, where the material is more compressible towards the inner edge (e.g., under the big toe) and less compressible towards the outer edge (e.g., the little toe).  The footwear may include a more compressible material in the heel section than in the inner toe section.  An

example of this is shown below in figures from the '786 patent, which illustrate possible cross-sectional views of the invention.



*Figure 3. Figures from the '786 patent, showing that Athalonz's inventions concerned footwear made of materials with different densities.*

19.     Athalonz invested heavily in developing and researching its OAP technology, conducting numerous studies of athletes at the collegiate and professional level, measuring safety, comfort, ease of use, and performance.  For example, Athalonz conducted a study of college baseball pitchers and found that 70% of players improved their pitching velocity when using shoes

equipped with Athalonz technology. Athalonz also studied how its technology could help soldiers in a counter-terrorism branch of the United States military; every single soldier reported some aspect of improvement in military training. Over years, Athalonz solicited and incorporated feedback from professional coaches, professional athletes, and experts in mechanical engineering, physical therapy, and orthopedics.

20. After years of research and development, Athalonz launched its own line of athletic footwear based on its proprietary and patented technology. Athalonz released the GF1 Baseball and Softball Shoe in 2015, the GF2 Baseball and Softball Shoe in 2017, and the EnVe Golf Shoe in 2018. These shoes incorporated one or more inventions claimed in Athalonz's patents. In 2019, Athalonz released the OAP insole kit to allow athletes to fine-tune the OAP fit of their Athalonz shoes. Some also used the kit to modify their existing shoes to contain Athalonz's technology.



*Figure 4. The Athalonz GF1 shoe*          *Figure 5. The Athalonz GF2 shoe*



*Figure 6. The Athalonz EnVe shoe*          *Figure 7. The Athalonz OAP insole kit*

21. Athalonz counts among its customers elite athletes, coaches, and recruiters, along with everyday sports enthusiasts. Minor league pitcher Michael Peoples reported that his deadlift increased forty pounds in one day from the shoes. Minor league outfielder Royce Bollinger found

that Athalonz shoes provide supportive functionality.  Softball player Eddie Chatham liked that Athalonz shoes reduced knee pain.  Professional trainer John Neel reported Athalonz shoes as comfortable and supportive.  Baseball scout Rafael Melchione found that Athalonz shoes helped with his chronic foot pain, saying, "Athalonz has something special and I recommend them to my clients."  Golf equipment website Golf WRX called Athalonz's EnVe "The best golf shoes you've never heard of."[1]

22.     Once the United States Golf Association approved Athalonz's EnVe Golf Shoe for use in competition, professional golfers quickly adopted the EnVe shoe.  For example, at the 2019 World Long Drive, 8 of the top 10 men, 8 of the top 10 women, and more than 50% of all competitors were wearing Athalonz golf shoes, including the men's and women's 2019 world champions.

23.     Athalonz's technology instantly improves athletic performance by increasing strength, balance, and efficiency.  It improves body alignment, which reduces an athlete's risk of injury.  It does so by applying principles of anatomy, physiology, and physics.  When an athlete stands still, the athlete is exerting force straight down to the ground, and the ground itself is exerting an equal and opposite force back up; this is called the ground reaction force.  But when the athlete, say, swings a baseball bat, the athlete is exerting forces on the ground from additional angles.  The ground, in turn, exerts equal and opposite forces to those additional angles, not just straight down.  Some athletic force is lost due to these different, competing angles.  This lost force, known as "leakage," is exacerbated when, for example, an athlete wears shoes with U-shaped midsoles, which are common in many athletic shoes, because these midsoles angle the ground

---

[1] Ex. A [Todd McGill, *WRX Spotlight: Athalonz EnVe—The best golf shoes you've never heard of*, GOLF WRX, (February 8, 2020), available at https://www.golfwrx.com/592854/wrx-spotlight-athalonz-enve-the-best-golf-shoes-youve-never-heard-of/].

reaction force away from the athlete's body. The more pronounced the U-shape, the more ground reaction force is directed away from the athlete's body and is lost to leakage.[2]



*Figure 8. Comparison of the various forces at play when an athlete wears a flat midsole, U-shaped midsole, or an Athalonz developed midsole.*

24.     Although researchers studied the effects of ground reaction force on athletic performance, they did not recognize the impact of an athlete's shoes on the ground-body force interaction and the role it plays in athletic performance. Athalonz's inventors appreciated this gap and developed footwear technology that directs more force towards the body, creating a more stable athletic base that enables increased power. Based on the laws of physics and mathematical principles, a six-foot-tall athlete can experience an 8.99% increase in athletic power just by switching to an Athalonz midsole.[3] For athletes switching from a less efficient U-shaped midsole, they can experience upwards of 30% increased force, simply by using Athalonz technology. In

---

[2] Ex. B [*The Three Key Aspects of a Golf Shoe: Part 2*, available at https://www.athalonz.com/blogs/news/the-three-key-aspects-of-a-golf-shoe-part-2].
[3] Ex. C [*Athalonz Shoes Improve Your Power by 9%*, available at https://www.athalonz.com/blogs/news/athalonz-shoes-improves-your-power-by-9].

PLAINTIFF ATHALONZ, LLC'S FIRST AMENDED COMPLAINT – page 10

addition to increasing the power transferred, Athalonz's design increases stability and thereby reduces the risk of ankle rollover by reducing ankle stress.[4]

25.     Athalonz has been recognized for its innovations and has been granted patents on its technologies by the U.S. Patent and Trademark Office ("PTO").

26.     On June 9, 2020, the PTO duly and legally issued U.S. Patent No. 10,674,786, entitled "Athletic positioning apparatus including a heel platform and applications thereof," with Mr. Markison and Mr. Adair as inventors.  The application giving rise to the '786 patent was filed on January 23, 2012 and claims priority to U.S. provisional patent application having a provisional application number of 61/450,485 and filed on March 8, 2011.  A true and correct copy of the '786 patent is attached as Exhibit E.

27.     On May 25, 2021, the PTO duly and legally issued U.S. Patent No. 11,013,291, entitled "Athletic positioning apparatus and applications thereof," with Mr. Markison and Mr. Adair as inventors.  The application giving rise to the '291 patent was filed on April 29, 2019 and claims priority to U.S. provisional patent application having a provisional application number of 61/450,485 and filed on March 8, 2011.  A true and correct copy of the '291 patent is attached as Exhibit F.

28.     On July 20, 2021, the PTO duly and legally issued U.S. Patent No. 11,064,760, entitled "Adjustable athletic positioning apparatus and applications thereof," with Mr. Markison and Mr. Adair as inventors.  The application giving rise to the '760 patent was filed on October 5, 2018 and claims priority to a U.S. provisional patent application having a provisional application

---

[4] Ex. D [*Athalonz Shoes – Leveraging the Laws of Physics*, available at https://www.athalonz.com/blogs/news/athalonz-shoes-leveraging-the-laws-of-physics-1].

number of 61/450,485 and filed on March 8, 2011. A true and correct copy of the '760 patent is attached as Exhibit G.

29. On November 29, 2022, the PTO duly and legally issued U.S. Patent No. 11,510,456, entitled "Athletic positioning apparatus and applications thereof," with Mr. Markison and Mr. Adair as inventors. The application giving rise to the '456 patent was filed on May 5, 2021 and claims priority to U.S. provisional patent application having a provisional application number of 61/450,485 and filed on March 8, 2011. A true and correct copy of the '456 patent is attached as Exhibit H.

30. On July 5, 2022, the PTO duly and legally issued U.S. Patent No. 11,375,768, entitled "Adjustable athletic positioning apparatus and applications thereof," with Mr. Markison and Mr. Adair as inventors. The application giving rise to the '768 patent was filed on August 29, 2019 and claims priority to U.S. provisional patent application having a provisional application number of 61/450,485 and filed on March 8, 2011. A true and correct copy of the '768 patent is attached as Exhibit N.

31. Athalonz is the sole and exclusive owner of all rights, title, and interest to the Asserted Patents, including the rights necessary to bring this action and to recover past and future damages.

32. The Asserted Patents are enforceable and valid.

**B.** **Under Armour Has Known About Athalonz's Patented Technology And Its Infringement Of The Asserted Patents**

33. Under Armour, including senior employees and executives, has known about Athalonz's patented technology since at least 2013. For example, on information and belief, Kevin Culley (then Director of Innovation), Don Gibadlo (Director of Footwear Development), David

Stakel (Senior Director – Team Sports Footwear), Joshua Rattet (VP of Team Sports Footwear, Accessories and Equipment Business Units) were familiar with Athalonz's Application No. 13/355,801, which would ultimately publish as the '786 patent, and Application No. 13/355,778, of which the '456, '291, '760, and '768 patents are continuations.

34.     Further, Under Armour, including senior employees and executives, has been additionally aware of the Asserted Patents since at least January 2022.  For example, on information and belief at least, Mr. Culley (then VP of Strategic Innovation Partnerships) and Craig Foster (Director of Corporate Development) were aware of the Asserted Patents since at least January 2022, as well as the potential applicability of the Asserted Patents to Under Armour's products.  Given such knowledge and awareness, on information and belief, Under Armour is and has been aware and knowledgeable of the applicability of the Asserted Patents to its Accused Products and the infringement of the Asserted Patents since the Asserted Products were first developed and sold.

### C.      Under Armour's Infringement of Athalonz's Intellectual Property

35.     Upon information and belief, Under Armour has infringed and continues to infringe one or more claims of the Asserted Patents by, at minimum, making, using, offering for sale, and selling infringing products in the United States and in this District.

36.     The accused products include, without limitation, athletic shoes provided by Under Armour, such as the HOVR Forge RC Spikeless Golf Shoe, Unisex Curry HOVR Splash Basketball Shoe, Unisex Curry 4 FloTro Basketball Shoe, Harper 7 Low Elite TPU Baseball Cleat, and the HOVR Drive 2 Spiked Golf Shoe (collectively, the "Accused Products").  Each of these shoes practice at least one claim of each Asserted Patent.

37. On information and belief, after Under Armour learned about Athalonz's technology, Under Armour released and began selling in the United States the Accused Products which infringe Athalonz's patented inventions.

38. As an example, Under Armour's HOVR Forge RC Spikeless Golf Shoe has "responsive" cushioning that "returns energy to help your game."[5]  Under Armour released the HOVR Forge RC Spikeless shoe in or around May 2021, marketing the shoe as providing better stability and more efficient transfer of force due to the shoe's sole.



*Figure 9. HOVR Forge RC Spikeless Golf Shoe.*

39. As another example, Under Armour's Unisex Curry HOVR Splash Basketball Shoe has "[r]esponsive" cushioning that "reduces impact, returns energy & helps propel you forward."[6] Under Armour released the Curry HOVR Splash shoe in or around June 2022, marketing the shoe as providing better stability and more efficient transfer of force due to the shoe's sole.

---

[5] Ex. I [*Men's UA HOVR Forge RC Spikeless Golf Shoes*, available at https://www.underarmour.com/en-us/p/golf/mens_ua_hovr_forge_rc_spikeless_golf_shoes/3024366.html].

[6] Ex. J [*Unisex Curry HOVR™ Splash Basketball Shoes*, available at https://www.underarmour.com/en-us/p/curry_brand_shoes_and_gear/unisex_curry_hovr_splash_basketball_shoes/3024719.html].



*Figure 10. Curry HOVR Splash Basketball Shoe.*

40.     As another example, Under Armour's Unisex Curry 4 FloTro Basketball Shoe has "cushioning technology" that is "super-light, bouncy & provides insane grip."[7]  Under Armour released the Curry 4 FloTro in or around July 2022, marketing the shoe as improving control, grip, and comfort.



*Figure 11. Curry 4 FloTro Basketball Shoe.*

41.     As another example, Under Armour's Harper 7 Low Elite TPU Baseball Cleat has a "zero gravity feel" "for more energy return, a stable base, and incredible comfort."[8]  Under

---

[7] Ex. K [*Unisex Curry 4 FloTro Basketball Shoes*, available at https://www.underarmour.com/en-us/p/curry_brand_shoes_and_gear/unisex_curry_4_flotro_basketball_shoes/3024861.html].

[8] Ex. L [Men's UA Harper 7 Low Elite TPU Baseball Cleat, available at https://www.underarmour.com/en-us/p/baseball/mens_ua_harper_7_low_elite_tpu_baseball_cleats/3025585.html].

Armour released the Harper 7 Low Elite in or around August 2022, marketing the shoe as improving energy return, stability, and comfort.



*Figure 12. Harper 7 Low Elite TPU Baseball Cleat.*

42.     As another example, Under Armour's HOVR Drive 2 Golf Shoe has "responsive" cushioning that "actually returns energy."[9]  Under Armour released the HOVR Drive 2 in or around April 2022, marketing the shoe as "support[ing] the natural motion of the foot in a golf swing & help[ing] eliminate impact."[10]



*Figure 13. HOVR Drive 2 Golf Shoes.*

43.     On information and belief, the Accused Products have a substantially flat heel from the inner edge to the outer edge, a first downward slope from heel to toe along the outer edge of the midfoot and toe sections, a second downward slope along the inner edge of the midfoot and toe sections, and a varying inward slope from the outer to inner edges of the midfoot and toe

---

[9] Ex. M [Men's UA HOVR™ Drive 2 Golf Shoe, available at https://www.underarmour.com/en-us/p/golf/mens_ua_hovr_drive_2_golf_shoes/3025070.html#index-0].
[10] *Id.*

sections. The Accused Products additionally have a gradient of compressible material in the forefoot where the material is more compressible near the inner edge and less compressible near the outer edge.

44. For at least these reasons, the Accused Products directly infringe at least claim 1 of the '786 patent, claim 1 of the '291 patent, claim 1 of the '760 patent, claim 10 of the '456 patent, and claim 1 of the '768 patent.

**V.**
**COUNT I: INFRINGEMENT OF THE '786 PATENT**

45. Athalonz incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

46. On information and belief, Under Armour has infringed and will continue to infringe the '786 patent. Under Armour directly infringes the '786 under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States and in this District, products covered by one or more claims of the '786 patent, including the Accused Products. As an example, the Accused Products directly infringe at least claim 1 of the '786 patent.

47. Claim 1 of the '786 patent is directed to an athletic positioning apparatus comprising a heel platform, a midfoot section juxtaposed to the heel platform, and a toe section juxtaposed to the midfoot section. The heel platform "has a uniform height from an outer edge to an inner edge of the apparatus at the rear edge of the apparatus," which establishes a "reference slope" that is "substantially parallel to a bottom surface of the apparatus." Claim 1 further recites that "the mid-foot section and the toe section form an angled support platform" with three slopes: "a first slope along the inner edge of the apparatus from a front edge of the apparatus to the heel platform section, a second slope along the front edge of the apparatus from the inner edge to the outer edge of the apparatus, and a third slope along the outer edge of the apparatus from the front

edge of the apparatus to the heel platform section." The three slopes are each greater than the reference slope, "wherein the toe section is lower than the heel platform section as a result."

48. On information and belief, the Accused Products practice every element of Claim 1 of the '786 patent. For example, on information and belief, the Under Armour Curry 4 FloTro has a heel platform, a midfoot section juxtaposed to the heel platform, and a toe section juxtaposed to the midfoot section.



*Figure 14. Medial view of the Curry 4 FloTro, showing a heel platform, midfoot section, and a toe section.*

49. On information and belief, the Curry 4 FloTro has a heel platform section with a uniform height from the outer edge to an inner edge, establishing a reference slope that is substantially parallel to a bottom surface of the apparatus. This is shown in the below cross-sectional view of the heel of a left shoe from a posterior perspective.



*Figure 15. Cross-cut of the heel platform of the Curry 4 FloTro shoe.*

PLAINTIFF ATHALONZ, LLC'S FIRST AMENDED COMPLAINT – page 18

50.     On information and belief, the Curry 4 FloTro has a midfoot section and a toe section that form an angled support platform with three slopes.  The first slope is along the inner edge from the front edge to the heel platform section.  The second slope is along the front edge from the inner edge to the outer edge.  The third slope is along the outer edge from the front edge to the heel platform section.

51.     On information and belief, the Curry 4 FloTro has a first, second, and third slope each greater than the reference slope, wherein the toe section is lower than the heel platform section.  The toe section has a height of approximately 22.2-24.1mm, which is lower than the heel platform height of 29.56-29.68mm.  The other Accused Products similarly practice every element of Claim 1 of the '786 patent.

## VI.
## COUNT II: INFRINGEMENT OF THE '291 PATENT

52.     Athalonz incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

53.     On information and belief, Under Armour has infringed and will continue to infringe the '291 patent.  Under Armour directly infringes the '291 under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States and in this District products covered by one or more claims of the '291 patent, including the Accused Products.  As an example, the Accused Products directly infringe at least claim 1 of the '291 patent.

54.     Claim 1 of the '291 patent is directed to a shoe with an upper section, a midsole, an insole, and a bottom outsole, which form an athletic positioning shape.  The athletic positioning shape is described as having "a first height at an inside edge and at an outside edge of the shoe along a heel section," "a second height on the outside edge of the shoe at a toe section of the shoe," and "a third height on the inside edge of the shoe at the toe section of the shoe."  Claim 1 further

recites that the first height is greater than the second height, which itself is greater than the third height. Further still, claim 1 recites that there is a first slope formed between the first and second heights, a second slope formed between the first and third heights, and a third slope formed between the second and third heights.

55. On information and belief, the Accused Products practice every element of Claim 1 of the '291 patent. For example, on information and belief, the Curry HOVR Splash has an upper section, a midsole coupled to the upper section, an insole positioned proximal to the midsole and within the upper section, and a bottom outsole coupled to the midsole.



*Figure 16. Showing the upper, midsole, and insole sections of a Curry HOVR Splash shoe, and how these parts are coupled.*

56.     On information and belief, the Curry HOVR Splash has a first height at an inside edge and at an outside edge of the shoe along a heel section of the shoe.  This is shown in the below cross-sectional view of the heel.



*Figure 17. Cross-sectional view of the heel section of a Curry HOVR Splash shoe.*

57.     On information and belief, the Curry HOVR Splash has a second height on the outside edge of the shoe at a toe section and a third height on the inside edge of the shoe at the toe section.  This is shown in the below cross-sectional view of the toe section.



*Figure 18. Cross-sectional view of the toe section of a Curry HOVR Splash shoe.*

PLAINTIFF ATHALONZ, LLC'S FIRST AMENDED COMPLAINT – page 21

58.     On information and belief, the first height is approximately 26mm, the second height is approximately 15mm, and the third height is approximately 12.5mm.  Thus, the first height is greater than the second height, which is itself greater than the third height.  This creates a first slope between the first and second heights, a second slope between the first and third heights, and a third slope between the second and third heights.  These measurements are represented in the below diagram.



*Figure 19. Representation of the three heights and three slopes in a Curry HOVR Splash shoe.*

59. As another example, on information and belief, the Curry 4 FloTro has an upper section, a midsole coupled to the upper section, an insole positioned proximal to the midsole and within the upper section, and a bottom outsole coupled to the midsole.





*Figure 20. Showing the upper, midsole, and insole sections of a Curry 4 FloTro shoe.*

60.     On information and belief, the Curry 4 FloTro has a first height at an inside edge and at an outside edge of the shoe along a heel section of the shoe. This is shown in the below cross-sectional view of the heel.



*Figure 21. Cross-sectional view of the heel section of a Curry 4 FloTro shoe.*

61.     On information and belief, the Curry 4 FloTro has a second height on the outside edge of the shoe at a toe section and a third height on the inside edge of the shoe at the toe section. This is shown in the below cross-sectional view of the toe section.



*Figure 22.  Cross-sectional view of the toe section of a Curry 4 FloTro shoe.*

62.     On information and belief, the first height is approximately 34mm, the second height is approximately 24mm, and the third height is approximately 22mm.  Thus, the first height is greater than the second height, which is itself greater than the third height.  This creates a first slope between the first and second heights, a second slope between the first and third heights, and a third slope between the second and third heights.  These measurements are represented below:



*Figure 20. Representation of the three heights and three slopes in a Curry 4 FloTro shoe.*

63.     The other Accused Products similarly practice every element of Claim 1 of the '291 patent.

## VII.
## COUNT III: INFRINGEMENT OF THE '760 PATENT

64.     Athalonz incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

65.     On information and belief, Under Armour has infringed and will continue to infringe the '760 patent.  Under Armour directly infringes the '760 under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States and in this District products covered by one or more claims of the '760 patent, including the Accused Products.  As an example, the Accused Products directly infringe at least claim 1 of the '760 patent.

66.     Claim 1 of the '760 patent is directed at a pair of shoes with soles that provide athletic positioning.  Each shoe contains an upper portion and a sole coupled to the upper portion.  For each shoe, claim 1 recites that the sole's foot platform positions the big toe area at a lower position than both the heel area and the outer small toe area.  Further, the heel area has substantially

no slope between the inner and outer edges. Further still, the bottom of the sole, at a cross section of the ball of the foot, is substantially linear from the inner to outer edges.

67. On information and belief, the Accused Products practice every element of Claim 1 of the '760 patent. For example, on information and belief, the Curry 4 FloTro is a pair of shoes with each shoe containing an upper portion and a sole coupled to the upper portion.



*Figure 23. A pair of Curry 4 FloTro shoes, showing the upper portion and a sole.*

68. On information and belief, each Curry 4 FloTro shoe has a sole with a foot platform that positions the big toe area at a lower position than both the heel area and the outer small toe area. For example, the big toe area has an approximate height of 15.0mm, which is lower than the approximate heights of the heel area (27.6mm) and the outer small toe area (16.6mm).



*Figure 24. Cross-section of a Curry 4 FloTro shoe, showing the measurements of the heel area (left) and toe area (right).*

PLAINTIFF ATHALONZ, LLC'S FIRST AMENDED COMPLAINT – page 26

69.     On information and belief, each Curry 4 FloTro shoe has a heel area that has substantially no slope between the inner and outer edges.



*Figure 23. Cross-section of the heel area of a Curry 4 FloTro shoe, showing substantially no slope from inner to outer edges.*

70.     On information and belief, the bottom of the sole of each Curry 4 FloTro shoe, at a cross-section of the ball of the foot, is substantially linear from the inner to outer edges.



*Figure 25.  Cross section of a Curry 4 FloTro shoe at the ball of the foot, showing that the bottom is substantially linear from inner to outer edges.*

71.     The other Accused Products similarly practice every element of Claim 1 of the '760 patent.

**VIII.**

**COUNT IV: INFRINGEMENT OF THE '456 PATENT**

72.     Athalonz incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

73.     On information and belief, Under Armour has infringed and will continue to infringe the '456 patent.  Under Armour directly infringes the '456 under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States and in this District, products covered by one or more claims of the '456 patent, including the Accused Products.  As an example, the Accused Products directly infringe at least claim 10 of the '456 patent.

74.     Claim 10 of the '456 patent is directed at an athletic shoe that has an upper section coupled to a sole section.  Claim 10 recites that the sole section includes a heel platform and a forefoot platform.  The heel platform has a first height that is substantially uniform from an inner edge to an outer edge and is constructed out of a first material.  Claim 10 further recites that the forefoot platform is constructed out of a second material such that when an athlete wears the athletic shoe, "the second material compresses to a first level near an outer edge of the sole section and the second material compresses to a second level near an inner edge of the sole section, wherein the second level of compression is greater than the first level of compression."

75.     On information and belief, the Accused Products practice every element of Claim 10 of the '456 patent.  For example, on information and belief, the HOVR Forge RC Spikeless is an athletic shoe with an upper section and a sole section coupled to the upper section.  This is shown in the below cross-cut of the shoe.



*Figure 265. Cross-cut of the HOVR Forge RC Spikeless shoe, showing upper and sole section.*

76.     On information and belief, the HOVR Forge RC Spikeless shoe has a sole section

that includes a heel platform and a forefoot platform.



*Figure 27. Cross-cut of the HOVR Forge RC Spikeless shoe, showing the heel and forefoot*
*platforms.*

77. On information and belief, the HOVR Forge RC Spikeless shoe has a heel platform with a first height that is substantially uniform from the inner edge to the outer edge of the sole section. The heel platform is constructed out of a first material.



*Figure 28. Cross-cut of the heel platform of a HOVR Forge RC Spikeless shoe.*



*Figure 28.  Cross-cut of the heel of a HOVR Forge RC Spikeless shoe.*

78.     On information and belief, the HOVR Forge RC Spikeless has a forefoot platform with a first level of compression proximal to the outer edge of the shoe and a second level of compression proximal to an inner edge of the shoe, wherein the second level of compression is greater than the first level of compression.



*Figure 29. Cross-section of the toe portion of a HOVR Forge RC Spikeless shoe.*

79.     On information and belief, the first level of compression proximal to the outer edge has a durometer reading of 43 and the second level of compression proximal to the inner edge has a durometer reading of 24.  A lower durometer reading corresponds to a softer, more compressible material.  Thus, the second level of compression (24) is more compressible than the first level of compression (43).  The other Accused Products similarly practice every element of Claim 10 of the '456 patent.

**IX.**
**COUNT V: INFRINGEMENT OF THE '768 PATENT**

80.     Athalonz incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

81. On information and belief, Under Armour has infringed and will continue to infringe the '768 patent. Under Armour directly infringes the '768 patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States and in this District, products covered by one or more claims of the '768 patent, including the Accused Products. As an example, the Accused Products directly infringe at least claim 1 of the '768 patent.

82. Claim 1 of the '768 patent is directed at an athletic shoe that has an upper section coupled to a sole section. Claim 1 recites that the sole section includes a heel platform having a first height that is substantially uniform around a perimeter of the heel platform. Claim 1 further recites that the heel platform is constructed of a first material having a first compression factor. Claim 1 further recites that the sole section includes a forefoot platform which is constructed out of a second material having a gradient compression factor such that when an athlete wears the athletic shoe, "the second material compresses to a first level near an outer edge of the sole section and the second material compresses to a second level near an inner edge of the sole section, wherein the second level of compression is greater than the first level of compression." Claim 1 further recites that the forefoot platform has a first thickness at the outer edge at a position proximal to the heel platform and a second thickness at a toe portion wherein the first thickness is greater than the second thickness.

83. On information and belief, the Accused Products practice every element of Claim 1 of the '768 patent. For example, on information and belief, the Harper 7 Low Elite ("Harper 7") is an athletic shoe with an upper section and a sole section coupled to the upper section. This is shown in the below image of the shoe.



*Figure 30. Showing the upper section and sole section of a Harper 7 shoe.*

84.    On information and belief, the Harper 7 sole section includes a heel platform and a forefoot platform.  This is shown in the below image of the shoe.



*Figure 31. Cross-cut showing forefoot platform and heel platform of Harper 7 shoe.*

85.    On information and belief, the Harper 7 heel platform has a first height that is substantially uniform around a perimeter of the heel platform. This is shown below.



*Figure 31. Cross-cut showing uniform height in heel platform in Harper 7 shoe.*

86.     On information and belief, the Harper 7 has a heel platform constructed of a first material having a first compression factor.



*Figure 32.  Cross-section of the heel portion of a Harper 7 shoe.*

87.     On information and belief, the Harper 7 has a sole section that includes a forefoot platform which is constructed out of a second material having a gradient compression factor such that when an athlete wears the athletic shoe, the second material compresses to a first level near an outer edge of the sole section and the second material compresses to a second level near an

inner edge of the sole section, wherein the second level of compression is greater than the first level of compression. A lower durometer reading corresponds to a softer, more compressible material. Thus, the second level of compression (56) is more compressible than the first level of compression (64).



*Figure 33. Cross-section of the toe portion of a Harper 7 shoe.*

88.     Claim 1 further recites that the forefoot platform has a first thickness at the outer edge at a position proximal to the heel platform and a second thickness at a toe portion wherein the first thickness (17.8mm) is greater than the second thickness (12.1mm).



*Figure 34. Cross-section of Harper 7 shoe showing first and second thicknesses.*

89.     The other Accused Products similarly practice every element of Claim 1 of the '768 patent.

**X.**
**DAMAGES**

90.     Athalonz incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

91.     As a result of Under Armour's acts of infringement, Athalonz has suffered actual and consequential damages; however, Athalonz does not yet know the full extent of the infringement and its extent cannot be ascertained except through discovery and special accounting. To the fullest extent permitted by law, Athalonz seeks recovery of damages for reasonable royalties, unjust enrichment, lost profits, and/or benefits received by Under Armour as a result of its past and ongoing infringement of the Asserted Patents. Athalonz further seeks any other damages to which Athalonz is entitled under law or in equity.

92.     On information and belief, to the extent applicable, Athalonz has complied with the notice and/or marking requirements of 35 U.S.C. § 287(a), to the extent they apply, with respect to each of the Asserted Patents.

93.     Athalonz is entitled to recover reasonable and necessary attorneys' fees under applicable law.

## XI.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Athalonz respectfully requests that this Court enter judgment in its favor and grant the following relief:

a) A judgment that the Accused Products infringe the Asserted Patents;

b) That such infringement is willful;

c) A judgment and order requiring Under Armour to pay Athalonz's damages in an amount adequate to compensate Athalonz for Under Armour's infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of judgment and beyond, with accounting, as needed;

d) An award of enhanced damages pursuant to 35 U.S.C. § 284;

e) A ruling finding that this case is exceptional and awarding Athalonz its reasonable attorneys' fees under 35 U.S.C. § 285;

f) A judgment and order requiring Under Armour to pay Athalonz's costs of this action (including all disbursements);

g) An order for accounting of damages;

h) A judgment and order requiring Under Armour to pay pre-judgment and post-judgment interest to the full extent allowed under the law; and,

    i)    A permanent injunction prohibiting Under Armour from continued infringement of the

             Asserted Patents.

Such other and further relief as the Court may deem just and proper under the circumstances.

## XII.
## <u>DEMAND FOR JURY TRIAL</u>

In accordance with Fed. R. Civ. P. 38(b), Athalonz hereby demands a trial by jury for all issues triable by jury.

Dated: September 15, 2023

Respectfully Submitted,

*/s/ Taylor N. Mauze*

Taylor N. Mauze (TX Bar No. 24102161)
tmauze@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
Telephone: (650) 623-1401
Facsimile: (650) 650-3501

Courtland L. Reichman (pending *pro hac vice*)
creichman@reichmanjorgensen.com
Jennifer Estremera (pending *pro hac vice*)
jestremera@reichmanjorgensen.com
Savannah Carnes (pending *pro hac vice*)
scarnes@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
Facsimile: (650) 560-3501

Christine E. Lehman (*pro hac vice*)
clehman@reichmanjorgensen.com
Connor S. Houghton (*pro hac vice*)
choughton@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Michael Matulewicz-Crowley (pending *pro hac vice*)
Mmatulewicz-
crowley@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
Facsimile: (650) 560-3501

PLAINTIFF ATHALONZ, LLC'S FIRST AMENDED COMPLAINT – page 40

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Attorneys for Plaintiff
*Athalonz, LLC*